IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DEKALB GENETICS CORPORATION, | Civil Action No. 04 C 50323 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SYNGENTA SEEDS, INC. and SYNGENTA BIOTECHNOLOGY, INC., | Judge Philip G. Reinhard |
| Defendants. | Magistrate Judge P. Michael Mahoney |

DOCKETED
+10-13-04

0 5 - 3 5 5

## DEKALB GENETICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIS CASE

### I.    INTRODUCTION

Plaintiff, DEKALB Genetics Corporation ("DEKALB") opposes Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.'s ("Defendants'") Motion To Dismiss.[1]    Contrary to Defendants' assertions, the allegations of DEKALB's complaint satisfy the Federal Rules of Civil Procedure and the pleading requirements in the Seventh Circuit.

Defendants argue that DEKALB's patent infringement Complaint does not satisfy the notice pleading requirements of the Federal Rules of Civil Procedure, and should therefore be dismissed, because:

(1)    DEKALB does not – purportedly – allege that Defendants use the processes claimed in the process patents-in-suit to make Defendants' glyphosate-resistant corn (Defendants' Motion at 1, 3, 6-7);

(2)    DEKALB has not alleged that Defendants' infringing activity occurred within the United States, an element that DEKALB supposedly needed to plead under § 271(a) of the Patent Code (Defendants' Motion at 8);

---

[1]    In addition to those reasons of opposition to Defendants' Motion To Dismiss, which DEKALB sets forth herein, DEKALB also objects to Defendants' Motion for failure to follow Local Rule 5.3(b), which required Defendants to obtain a date of presentment not more than 10 business days following the date the motion was delivered to the court.  Defendants filed their Motion on September 20, 2004 and set the date of presentment for October 13, 2004, more than the ten days required by the Local Rule.



(3)     DEKALB has not alleged that Defendants' infringing activity occurred during the term of the patents-in-suit, another element that DEKALB supposedly needed to plead under § 271(a) (Defendants' Motion at 8); and

(4)     DEKALB has not alleged the knowledge, intent and other elements of an inducement and contributory infringement claim under §§ 271(b) and (c), elements that DEKALB supposedly needed to plead under the notice pleading rules of the Federal Rules (Defendants' Motion at 9-14).

Defendants are wrong. They are wrong in what they contend DEKALB has and has not pleaded. More significantly, they are wrong on what the Federal Rules of Civil Procedure require DEKALB to plead to set forth a patent infringement claim.

Moreover, Defendants *know* their arguments summarized above are wrong. As shown later herein, Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. each recently filed separate patent infringement complaints, one against DEKALB and Monsanto and another against Monsanto, wherein they pled even fewer facts than those set forth in DEKALB's Complaint in this case. If Defendants believed that their complaints sufficiently apprised DEKALB (and Monsanto) of the nature of Defendants' patent infringement claims in those other cases so as to satisfy the Federal Rules, then Defendants cannot now, without being disingenuous, feign that they do not have sufficient notice of DEKALB's infringement claims from the allegations of the Complaint in this case.

## II.     STANDARD FOR REVIEWING DEKALB'S COMPLAINT AND DEFENDANTS' MOTION TO DISMISS

Defendants are correct that in reviewing Rule 12(b)(6) motions to dismiss, courts must apply the rules of law of the regional circuit. (Defendants' Motion at 5) *See Phonometrics v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 793 (Fed. Cir. 2000). The law in the Seventh Circuit thus applies in this case.

In the Seventh Circuit, a motion to dismiss "challenges the sufficiency of the complaint", not the merits of the lawsuit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th

2

Cir. 1998). On a Rule 12(b)(6) motion, the court presumes the allegations in the complaint are true and "must read the complaint liberally, evaluate all well-pleaded allegations, and draw all reasonable inferences in favor of the plaintiff." *Allen v. City of Zion*, 2003 WL 22078374 at *1 (N.D. Ill. 2003) (*citing Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996)); *see also Triad Associates, Inc. v. Robinson,* 10 F.3d 492, 495 (7th Cir. 1993) (in reviewing motion to dismiss, court must take the allegations raised as true). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

As to the sufficiency of the pleaded facts, the Supreme Court has held: "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff can meet this test by pleading conclusions and not facts, so long as the conclusions provide the defendant "with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995).

Finally, the United States Supreme Court in *Conley* specifically suggested that the sample complaint forms attached to the Federal Rules of Civil Procedure meet the pleading standard it enunciated in *Conley*. 355 U.S. at 47 ("The illustrative forms appended to the Rules plainly demonstrate this [the required pleading standard]."). This is consistent with Rule 84 of the Federal Rules of Civil Procedure, which expressly declares that the attached forms to the Federal Rules "are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."

DM_US\8063695.v1

III.    ARGUMENT

    A.    **DEKALB's Patent Infringement Complaint Satisfies The Federal Rules Of Civil Procedure And Should Not Be Dismissed Under Rule 12(b)(6)**

        1.    **DEKALB's Complaint Contains The Essential Allegations Of A Patent Infringement Claim**

Defendants are correct that the patents-in-suit contain process or method claims. Defendants are wrong, however, in arguing that DEKALB's Complaint limits the accused infringement only on Defendants' corn products and not also on Defendants' method of making its accused corn products. (Defendants' Motion at 1, 3, 6-7) Defendants further err by arguing that DEKALB's Complaint does not satisfy the pleading standards of the Federal Rules of Civil Procedure. DEKALB will show what its Complaint alleges, and how those allegations satisfy the pleading requirements in the Seventh Circuit.

At its simplest, DEKALB's Complaint asserts the following essential allegations:

*Ownership.* DEKALB's Complaint asserts that DEKALB owns and has the right to bring suit for infringement of the patents-in-suit, U.S. Patent Nos. 5,538,880 ("the '880 patent") and 6,013,863 ("the '863 patent"). (Complaint at ¶¶ 9 and 15)

*Defendants Named.* DEKALB's Complaint names the Defendants, Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (Complaint at ¶¶ 2-3)

*Infringed Patents Identified.* DEKALB's Complaint asserts that one or more claims of the '880 patent and the '863 patent are infringed by Defendants. (Complaint at ¶¶ 11, 16, Defendants do not have the right to practice the claims of the patents-in-suit; and ¶¶ 12, 17, Defendants have infringed and continue to infringe one or more claims of the patents-in-suit)

DM_US\8063695.v1

*Means of Infringement Stated.*    DEKALB's Complaint asserts the means by which Defendants infringe: infringement through *making and using* corn without a license to the patent claims.  (Complaint at ¶¶ 7, 12-13, 17-18)

On this point, Defendants are clearly wrong in arguing DEKALB's Complaint does not accuse Defendants' processes of infringing DEKALB's patents.  (Defendants' Motion at 1) DEKALB's allegation that the infringement consists in Defendants' *making* glyphosate-resistant corn without a license under the patents-in-suit clearly brings within the scope of the Complaint Defendants' *method* or process of so making the corn.  Equally as clear, DEKALB's allegation that the infringement also consists in Defendants' *using* corn made without a license under the patents-in-suit also brings within the scope of the Complaint infringement through use of the corn product itself that was made using the patented processes under 35 U.S.C. § 271(g), a provision that Defendants' Motion completely ignores.  *See, e.g., Eli Lilly and Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1572 (Fed. Cir. 1996) (it is an act of infringement to sell or use within the United States a product that is made by a process patented in the United States); *SGS-Thomson Microelectronics, Inc. v. International Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. 1994) (concurring opinion) (it is an act of infringement to import or sell in the United States a product made within or without the United States by a patented process).  Both the method of making corn and use of Defendants' corn product are at issue in DEKALB's Complaint.

Defendants also are clearly wrong in arguing that "Syngenta has not and will not use such processes."  (Defendants' Motion at 1)  As a matter of law, this argument has no place or relevance in a motion to dismiss because the Court must assume the truth of the matters asserted by DEKALB in its Complaint.  *See Triad Associates*, 10 F.3d at 495 (in reviewing motion to dismiss, court must take the allegations raised as true).  DEKALB has asserted, as shown above,

that Defendants infringe by their making – i.e., the methods used in making – and using glyphosate-resistant corn. For purposes of Defendants' Motion, therefore, Defendants cannot contest this allegation.[2]

*Patent Laws Cited.*    DEKALB's Complaint asserts that Defendants' infringing acts violate the Patent Laws of the United States, Title 35. (Complaint at ¶ 4) These laws include 35 U.S.C. §§ 271(a) (direct infringement), 271(b) (inducing infringement), 271(c) (contributory infringement), and 271(g) (direct infringement by using a product made by a patented process).

As shown below, Seventh Circuit law does not require DEKALB to plead anything beyond the five elements noted above, although DEKALB's Complaint certainly includes additional facts beyond those needed to raise a patent infringement claim. (Complaint at ¶¶ 6-19)

## 2.    DEKALB's Infringement Allegations Satisfy Seventh Circuit Law For A Patent Infringement Complaint

Courts in the Seventh Circuit follow the recent Federal Circuit decision of *Phonometrics v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 793 (Fed. Cir. 2000), which outlines the

---

[2] While not necessary to the resolution of Defendants' Motion to Dismiss, DEKALB also notes that Defendants cannot deny their infringement with the simple argument that they did not make the original R0 plant tissue (i.e., the first plant tissue transformed with the gene that conferred glyphosate resistance). This is because the claims in both the '880 patent and the '863 patent not only cover the method of making R0 plant tissue, but also the method of creating glyphosate-resistant progeny corn plants derived from R0 plant tissue. (See, e.g., claim 4 of the '880 patent and claim 5 of the '863 patent) In the prior litigation in this court, brought by DEKALB, Defendants' predecessors Ciba-Geigy and Northrup King argued that the term progeny in the patents-in-suit (including the '880 patent) should be limited to the R1 generation, which was made before the patents-in-suit issued. This Court, however, held that "'progeny' in the claims of the patents in suit, [ ] means the R1 and succeeding generations." (*See* Exhibit 1, Report and Recommendation of Special Master Regarding Claim Construction at 43; Exhibit 2, Order Adopting Recommendation)

Defendants admit that they intend to introduce for commercial sale glyphosate-resistant corn seed in 2005. (Defendants' Motion at 1) This necessarily means that they are now engaged in the process of making glyphosate-resistant progeny in order to produce sufficient quantities of corn seed for commercial sale next year. This constitutes infringement of the patents-in-suit. While the claims of the patents-in-suit may also cover other activities of Defendants, the extent of Defendants' infringement is not relevant to the Motion to Dismiss.

DM_US\8063695.\1

basic allegations needed to state a patent infringement claim. *See One World Technologies, Ltd. v. Robert Bosch Tool Corporation,* 2004 WL 1576696 at *2 (N.D. Ill. July 13, 2004) (following *Phonometrics*); *Jackson v. Illinois Bell Telephone Co.,* 2002 WL 1466796 at *3 (N.D. Ill. July 8, 2002) (same).

Specifically, in the Seventh Circuit, a patent infringement plaintiff need only allege the following "to state a claim for patent infringement" and "to put the defendant on notice":

(1)    ownership of the asserted patent;

(2)    the names of the accused defendants;

(3)    the patent numbers that defendant allegedly infringes;

(4)    the means by which defendants infringe; and

(5)    a statement showing the infringement claim is brought under the patent laws of the United States.

*One World,* 2004 WL 1576696 at *2. *See also Jackson,* 2002 WL 1466796 at *3.

For example, the plaintiff in *One World* alleged the above five elements, and nothing more, in its patent infringement suit. 2004 WL 1576696 at *2. The defendant, Robert Bosch Tool, in a motion to dismiss argued that the complaint was deficient because the only thing the plaintiff alleged under the fourth element (i.e., the means element) was that defendant was "directly infringing, inducing infringement by others, and/or contributorily infringing ... by making, using, selling, and/or offering to sell products falling within the scope of such claims...." *Id.* The court rejected the motion to dismiss, holding that no specific facts were needed to further describe the means of infringement under *Phonometrics,* and that the basic five assertions found in One World's complaint satisfied the Federal Rules for a complaint asserting direct infringement, infringement by inducement and contributory infringement. *Id.*

7

The accused infringer in *Jackson* made the same unsuccessful Rule 12(b)(6) motion against a similar patent infringement complaint. There, the court specifically found that the plaintiff's allegation that the "defendants …infringed the patent in suit either directly or through acts of contributory infringement or inducement" by selling voice mail systems satisfied the fourth element (i.e., the means element) of the *Phonometrics* test and was sufficient to defeat defendant's Rule 12(b)(6) motion. 2002 WL 1466796 at *2-3. *See also Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2001 WL 184804 at *3 (N.D. Ill. Feb. 20, 2001) (court rejected defendant's argument that plaintiff's failure to state facts supporting an infringement by inducement claim rendered the claim futile; court held plaintiff's assertion of infringement by inducement – albeit a legal conclusion -- was sufficient under the federal pleading standards without any further asserted facts).

Defendants do not disagree that – as already outlined above – DEKALB's Complaint contains each of these five *Phonometrics* elements (i.e., DEKALB's Complaint states DEKALB is the owner of the patents-in-suit, names the Defendants, identifies the relevant patent numbers that Defendants infringe, states the means of infringement, and states that the suit is brought under the United States patent laws).

The Syngenta Defendants, however, attempt to side-step the *Phonometrics* test and the guiding *One World* and *Jackson* cases by arguing that (1) these cases do not apply to DEKALB's Complaint because DEKALB is asserting process or method patent claims and the patents involved in One World and Jackson were apparatus, not method, claims, and (2) opinions from other circuits and opinions from older Northern District of Illinois decisions allegedly require a plaintiff to plead facts to support all the elements a patentee must prove at trial to show inducement and contributory infringement. (Defendants' Motion at 7 n.3 & 9-14)

8

Defendants' distinctions are unpersuasive and not controlling. First, asserting a process or method patent instead of an apparatus patent is not a distinction of any relevance to Rule 8 of the Federal Rules of Civil Procedure or to the *Phonometrics* rule. Neither *Phonometrics* nor any other case that DEKALB could find holds that the Federal Rules of Civil Procedure impose a higher burden on a plaintiff patentee when asserting a process patent as opposed to an apparatus patent. That argument raised by Defendants is not persuasive or rational.

Moreover, Defendants know that the apparatus-process patent distinction has no legal merit. They cite in their Motion an older Northern District of Illinois case (decided before *Phonometrics*), *Coolsavings.com v. Catalina Marketing Corp.*, 1999 WL 342431 (N.D. Ill. May 14, 1999), which expressly held that a patent plaintiff sufficiently pleads a case of direct infringement of a process or method patent by simply asserting that defendant infringes such patent by making and using a system – without including all the other factual detail that Defendants would have this Court impose upon DEKALB. (Defendants' Motion at 10 n.5) Clearly, the *Phonometrics* rule applies in the Seventh Circuit, regardless of whether the plaintiff is asserting an apparatus or process patent.

Second, Defendants' argument that cases from other circuits or pre-*Phonometrics* opinions from the Northern District of Illinois requiring a more detailed factual pleading for inducement or contributory infringement claims also do not help Defendants now.[3] As stated earlier, decisions from other circuits do not govern this Court's review of Defendants' 12(b)(6)

---

[3] Defendants cite a District of Minnesota case, a District of Nevada case, a District of Massachusetts case, and an Eastern District of New York as well as older cases from the Northern District of Illinois (*Coolsavings*, *Ristvedt-Johnson, Inc. v. Peltz*, 1991 WL 255691 (N.D. Ill. 1991) and *Waters v. Solarex Corp.*, 1992 WL 4454 (N.D. Ill. 1992). (Defendants' Motion at 10-13.) Most of these older cases appear to require more detailed allegations of inducement or contributory infringement. The exception, however, is the *Waters* case, which is entirely inapplicable as it concerned the inducement of trademark infringement, not patent infringement.

9

motion and are not controlling. *See Phonometrics*, 203 F.3d at 793 (in reviewing Rule 12(b)(6) motion, courts should apply law of regional circuit). Further, the standard of apparently more detailed pleadings for inducement and contributory infringement claims required by the older Northern District of Illinois cases has been effectively renounced by the more recent Northern District of Illinois cases issued since *Phonometrics.* Those recent cases have clearly adopted *Phonometrics'* holding as the law applicable to patent infringement pleadings for inducement and contributory infringement claims. *Cf. Alexander v. Missouri State Life Ins. Co.*, 68 F.2d 1, 3 (7th Cir. 1933) (where inconsistencies exist between court opinions, the later adjudications should be followed in preference to the earlier ones).

Thus, this leaves Defendants without any controlling authority to challenge DEKALB's Complaint, and therefore, this Court should deny Defendants' Motion. This result should especially apply when considering (1) the patent infringement forms attached to the Federal Rules of Civil Procedure and approved by the United States Supreme Court and the Federal Rules of Civil Procedure, and (2) the patent infringement complaints that Defendants themselves recently filed against DEKALB and Monsanto. These are discussed below.

## B. Form 16 Of The Federal Rules Of Civil Procedure Further Shows That DEKALB's Complaint Satisfies The Federal Rule Pleading Requirements

As stated earlier, the United States Supreme Court in *Conley* specifically stated that the sample complaint forms attached to the Federal Rules of Civil Procedure meet the pleading standard it enunciated in *Conley.* 355 U.S. at 47 ("The illustrative forms appended to the Rules plainly demonstrate this [the required pleading standard]."). Rule 84 of the Federal Rules of Civil Procedure expressly says this.

The Federal Rules include Form 16, which is styled "Complaint for Patent Infringement," a copy of which is appended below:

10

---

**FORM 16.   COMPLAINT FOR INFRINGEMENT OF PATENT**

1.  Allegation of jurisdiction.

2.  On May 16, 1934, United States Letters Patent No. _____ were duly and legally issued to plaintiff for an invention in an electric motor; and since that date plaintiff has been and still is the owner of those Letters Patent.

3.  Defendant has for a long time past been and still is infringing those Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court.

4.  Plaintiff has placed the required statutory notice on all electric motors manufactured and sold by him under said Letters Patent, and has given written notice to defendant of his said infringement.

Wherefore plaintiff demands a preliminary and final injunction against continued infringement, an accounting for damages, and an assessment of interest and costs against defendant.

[Amended January 21, 1963, effective July 1, 1963.]

---

The Court will note that Form 16 is similar to the elements that the Federal Circuit said were sufficient for a patent infringement pleading in *Phonometrics* – except Form 16 does not contain any reference to the U.S. patent laws under which the complaint is filed.  Nor does Form 16 include all of the other allegations that Defendants' Motion argues to be necessary in DEKALB's Complaint, including allegations that Defendants' infringement occurred within the United States, during the term of the patent, or with knowledge and intent, etc.

Nonetheless, Rule 84 of the Federal Rules of Civil Procedure and the United States Supreme Court in *Conley* both support the proposition that Form 16, although barebones in what it alleges, satisfies the Federal Rules pleading requirements.  That being so, DEKALB's more detailed Complaint, which at least contains all the elements found in Form 16, must necessarily also satisfy the Federal Rules.

**C.    Defendants Recently Filed Patent Infringement Complaints Against DEKALB and Monsanto in Other Courts That Were More Sparsely Pleaded Than DEKALB's Complaint**

If all of the above were not enough to discredit Defendants' arguments, DEKALB has attached as Exhibits 3 and 4 to this Opposition the complaints filed by Syngenta Biotechnology,

11

Inc. and Syngenta Seeds, Inc., respectively, against Monsanto and DEKALB in Delaware. The Court will observe that in both of these complaints, Defendants' allegations of direct infringement, infringement by inducement, and contributory infringement are sparser than DEKALB's Complaint in this case. In both complaints Defendants recite identical language to assert infringement:

> Upon information and belief, each of the Defendants is directly infringing one or more of the claims of the [patents] by making, using, selling or offering to sell the claimed subject matter, and is contributing to and actively inducing the infringement of one or more claims of the [patents] by others.

(Exhibit 3, First Amended Complaint For Patent Infringement in Civil Action No. 02-1326-GMS, at ¶ 11; Exhibit 4, Complaint for Patent Infringement in Civil Action No. 02-1331, at ¶¶ 16-18) Indeed, Defendants' complaints do not identify any particular product that relates to the "claimed subject matter" for the patent infringement claim they raise. They also do not plead that (1) any alleged infringing activity occurred in the United States, (2) the alleged infringing activities occurred during the term of the patents, or (3) the knowledge, intent and other elements a plaintiff must prove at trial for inducement or contributory infringement claims.

The Court will also observe that Defendants asserted method claims in both complaints. (Exhibit 5, U.S. Patent No. 6,051,757, all of claims 1-20; Exhibit 6, U.S. Patent No. 6,075,185, claims 11-12 and 24-25)[4]

If Defendants believed that their allegations in Exhibits 3 and 4 – which asserted infringement of method claims – satisfied the Federal Rules of Civil Procedure, and if Defendants believed that those allegations apprised Monsanto and DEKALB of the nature of Defendants' patent infringement claims in those cases, then Defendants' attack against

---

[4] DEKALB has attached only the first page and the claims of each asserted patent from each case, but has omitted the voluminous other material contained within the patents.


DEKALB's Complaint now can be nothing less than disingenuous. For this additional reason, this Court should deny Defendants' Motion.

## IV.    CONCLUSION

This Court should deny Defendants' Motion to Dismiss. DEKALB has adequately pleaded infringement under Title 35 of the United States Code, including infringement that would fall under §§ 271(a), (b), (c) and (g). DEKALB's infringement allegations *exceed* those required in the Seventh Circuit. Indeed, DEKALB's Complaint has more detailed allegations than the sample patent infringement complaint found in Form 16 to the Federal Rules of Civil Procedure and Defendants' own patent infringement complaints recently filed against DEKALB and Monsanto. In short, Defendants' Motion to Dismiss is legally unsound, at best, and disingenuous, at worst, and should be denied.

Dated: _10/13/04_                          Respectfully submitted,

                                           By _____
                                              John J. Holevas
                                              Illinois Bar No. 06193197
                                              WILLIAMS & MCCARTHY
                                              321 West State Street
                                              Rockford, IL  61101
                                              (815) 987-8900

                                              John F. Lynch
                                              Thomas A. Miller
                                              Susan K. Knoll
                                              HOWREY SIMON ARNOLD & WHITE, LLP
                                              750 Bering Drive
                                              Houston, TX  77057
                                              (713) 787-1400

                                              ATTORNEYS FOR PLAINTIFF
                                              DEKALB GENETICS CORPORATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of DEKALB GENETICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIS CASE were served on this the 13th day of October, 2004, as follows:

David C. Van Dyke                                   **VIA HAND DELIVERY**
Ronald D. Fiet
CASSIDAY, SCHADE & GLOOR, LLP
20 N. Wacker Drive, Suite 1040
Chicago, IL 60606


Don O. Burley                                       **VIA FEDERAL EXPRESS**
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315

DM_US\8063695.v1

TAB

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | Civil Actions 96 C 50112 |
| | ) | 96 C 50114 |
| Plaintiff, | ) | 96 C 50169 |
| | ) | 96 C 50239 |
| v. | ) | 96 C 50241 |
| | ) | 96 C 50284 |
| PIONEER HI-BRED INTERNATIONAL, INC., | ) | 98 C 50186 |
| MYCOGEN CORPORATION, including its | ) | |
| Operating subsidiaries AGRIGENETICS, INC. and | ) | Judge Philip G. Reinhard |
| MYCOGEN PLANT SCIENCES, INC., | ) | Magistrate P. Michael Mahoney |
| CIBA-GEIGY CORPORATION, and NORTHRUP | ) | Special Master Robert L. Harmon |
| KING CO. (formerly Sandoz Seeds Co.), | ) | |
| | ) | Transgenic Corn Patent Litigation |
| Defendants. | ) | |

**DOCKETED**

JUL 01 1999

**REPORT AND RECOMMENDATION
OF SPECIAL MASTER
REGARDING CLAIM CONSTRUCTION**

These seven civil actions are related by the fact that each involves an assertion of

infringement of one or more of four United States patents owned by plaintiff DeKalb Genetics

Corporation (DeKalb). The patents are in the field of genetic engineering and address the

production of transgenic corn. The four principal defendants are Pioneer Hi-Bred International,

Inc. (Pioneer), Northrup King Co. (NK), Ciba Geigy Corporation (Ciba), and Mycogen

Corporation (Mycogen).

In an Order of Reference dated January 4, 1999, the Court appointed the undersigned as

Special Master (SM) in these cases pursuant to Rule 53, FRCP. The specific purpose of the

reference was to have the SM provide a recommended construction of the claims of the patents

in suit. Under the express terms of the Order, the SM has "all of the powers described in Rule 53

of Fed. R. Civ. P., to conduct an evidentiary hearing on the record to hear and recommend to the

**PTX 1555**

C.A. # 96-C-50112

Case 1:05-cv-00355-SLR    Document 87-19    Filed 06/03/2005    Page 17 of 32

Report and Recommenda__ _ of Special Master Regarding Claim Constr___on                Page 38
Transgenic Corn Patent Litigation (N.D. Illinois – Judge Reinhard)

The '520 claims recite the steps of "establishing a regenerable culture" and then

transforming the culture by bombarding it.  The defendants argue for essentially the same

construction as the other patents.  Pioneer neatly summarizes its position, in the context of this

claim language, as an immature embryo "is not a culture."  DeKalb asserts that the language

means any corn cell, tissue or organ which is capable of regenerating into a mature plant and has

been grown or is growing on or in a culture medium.  The plain language of the claims and the

specification of the '520 patent are consistent with DeKalb's position.

Moreover, nothing in the prosecution history of either the '520 patent or its parent

application compels a contrary construction.  Although the Klein reference was cited in a

rejection against the parent, there was no effort to distinguish the pending claims on the basis of

either "regenerable" or "culture."  Klein was not made the basis for a rejection in the '520

prosecution.

It is recommended that the jury be instructed that "regenerable culture" means that the

transformation target in the second step of the '520 claims is any corn cell, tissue or organ that is

capable of regenerating into a mature plant and has been grown or is growing on or in a culture

medium.  As with the '877 patent, the jury needs no instruction as to the word "establishing."

**Meaning of the Term "Progeny"**

All claims of the patents in suit employ the word "progeny," except for the '956 patent,

which uses the term only in dependent claim 6.  The parties hotly contest the meaning of the

word as used in the claims.  DeKalb construes progeny to mean any and all generations of

Case 1:05-cv-00355-SLR    Document 87-19    Filed 06/03/2005    Page 18 of 32

Report and Recommenda...  of Special Master Regarding Claim Constru...ion          Page 39
Transgenic Corn Patent Litigation (N.D. Illinois – Judge Reinhard)

descendants from a transgenic plant. Basically, defendants argue that the term refers to the

immediate offspring of a particular sexual cross of the transformed plant.[54]

Neither the claims nor the specification provide any real support for defendants' position.

The logical, grammatical construction of the claim language itself is that, unless used in a

specifically different context (see discussion of '880 claims below), "progeny" can refer to any

generation but R0, and is certainly not limited to R1. The specifications do not alter this

conclusion. Often, when the term is used, it is apparent that the reference is to the R1 generation,

but that is because the experiments exemplified in the patents had only been carried to the R1

generation. At other times, however, it is clear that the usage of the word is much broader. For

example, the Lundquist patents state:

> The present invention is directed to the production of fertile transgenic plants and
> seeds of the species *Zea mays* and to the plants, plant tissues, and seeds derived from
> such transgenic plants, as well as the subsequent progeny and products derived therefrom.
> (E.g., '956 patent, C4L48-52)

Similarly, in the Adams '520 patent:

> Furthermore, it would be of particular significance to provide novel approaches to
> monocot transformation, such as transformation of maize cells, which would allow for
> the production of stably transformed, fertile corn plants and progeny into which desired
> exogenous genes have been introduced. (C3L14-19)

---

[54] Claim scope is determined without regard for the accused product or process. E.g., Young Dental Mfg. Co. v. Q3 Special Prods., Inc., 112 F.3d 1137, 42 USPQ2d 1589, 1592 (Fed. Cir. 1997). Nonetheless, one might wonder what the fuss is about. As Ciba points out, under defendants' proposed construction of "progeny," "DeKalb could preclude anyone from making R0 and R1 plants with the claimed methods – and therefore any new plant products – during the patent term." (Post-Markman Hearing Memorandum, p. 10) Apparently, however, some of the accused activity involves descendants of R0 plants that pre-date the patents' issuance. This circumstance may present a nice question of infringement, but it does not invoke claim construction. As the Federal Circuit took pains to point out in SRI, supra note 20, 227 USPQ at 583, "claims are not construed 'to cover' or 'not to cover' the accused device. That procedure would make infringement a matter of judicial whim. It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement." (Emphasis present.)

Case 1:05-cv-00355-SLR    Document 87-19    Filed 06/03/2005    Page 19 of 32

Report and Recommenda... of Special Master Regarding Claim Construction    Page 40
Transgenic Corn Patent Litigation (N.D. Illinois – Judge Reinhard)

This varied use of a term in the written description demonstrates its breadth rather than providing a limited definition.[55]

More importantly, it is clear from the patents that there was no intention to limit the invention to plants of the R1 generation. Indeed, the intent was expressed to the contrary. The Lundquist patents expressed it this way:

> Fertile, transgenic plants may then be used in a conventional maize breeding program in order to incorporate the introduced heterologous DNA into the desire lines or varieties. Conventional breeding programs employ a conversion process (backcrossing). Methods and references for convergent improvement of corn are given by Hallauer et al., (1988) incorporated herein by reference. Briefly, conversion is performed by crossing the initial transgenic fertile plant to normal elite inbred lines. The progeny from this cross will segregate such that some of the plants will carry the heterologous DNA whereas some will not. The plants that do carry the DNA are then crossed again to the normal plant resulting in progeny which segregate once more. This backcrossing process is repeated until the original normal parent has been converted to a line containing the heterologous DNA and also possessing all other important attributes originally found in the parent. Generally, this will require about 6-8 generations. A separate backcrossing program will be generally used for every elite line that is to be converted to a genetically engineered elite line. (E.g., '956 patent, C13L43-62; emphasis added)

There is no mistaking the import of this passage. The intention is to incorporate the transgene into hybrid corn lines through a conventional breeding program, a process that will take several generations. That message is also clear in the '520 patent, which hypothesizes that "the development of these and other techniques for the preparation of stable genetically transformed monocots such as maize could potentially revolutionize approaches to monocot breeding." (C3L22-25) These statements are clearly inconsistent with any limitation of the claim scope to only two or three generations. As DeKalb correctly summarized the matter (Post-Markman Hearing Brief, pp. 34-35):

> Defendants have asserted that under DEKALB's construction of "progeny" as meaning any and all generations of descendants, it would never be possible to demonstrate that the claimed subject matter was enabled, since there would always be future generations of progeny to which transmission of the foreign gene had not yet been

---

[55] Johnson Worldwide Assoc. v. Zebco Corp., supra note 27, 50 USPQ2d at 1611.

Case 1:05-cv-00355-SLR    Document 87-19    Filed 06/03/2005    Page 20 of 32

Report and Recommenda. _ of Special Master Regarding Claim Construction          Page 41
Transgenic Corn Patent Litigation (N.D. Illinois – Judge Reinhard)

demonstrated. Such an argument is unrealistic. No patentee would limit claims to transgenic plants of potential commercial value to a single generation of transformant. No matter how a claim is worded, any language that was not limited to a single generation of descendent must have a scope similar to DEKALB's construction of progeny. Defendants' argument implies that a patentee could never draft a valid claim covering more than one generation of descendant, or alternatively must wait for many years after production of the R0 transformant to file a patent application which demonstrated transmission to as many generations of descendants as were claimed. This would present an insurmountable barrier to any patents directed to production of transgenic progeny.

Accordingly, if defendants' restrictive interpretation is to rule, it must be mandated by some clear and unequivocal transaction in the prosecution histories.

During prosecution of the '880 patent, the Examiner rejected application claims 33 and 35 as indefinite on the grounds that they were substantial duplicates of claim 31. (SM10-52) These claims correspond to claims 5(31), 7(33), and 9(35) of the '880 patent. In response, the applicants pointed out that the claims were not duplicative, in that claim 31 results in an R1 progeny, claim 33 an R2 progeny, and claim 35 an R3. (SM1055) Defendants seize upon this transaction as representing a concession on the part of the applicants that the claims were limited to those generations. This, in the opinion of the SM, is not a fair assessment of the transaction. It is much more likely that a person of ordinary skill in the art, having read and understood the '880 patent, and having gained an appreciation that the intent of the applicants was to establish a transgenic line through a conventional breeding program, would have reached a different conclusion. Such a person would, in the opinion of the SM, have understood that the applicants were merely pointing out how the claims differed, rather than attempting to define their complete scope. The differences were correctly noted: claim 33 did not cover R1 and claim 35 did not cover R1 and R2. But to transmute that showing into a concession that claim 31 covered only R1 and claim 33 only R2 and claim 35 only R3, is more than the language or circumstances can support.

Pioneer points out that, in claim 5 of the '956 patent, an R1 plant is said to be "derived

from" the R0 plant. It argues from this that claim 6, which recites a progeny plant "derived from

the plant of claim 5," must likewise be limited to the R2 generation. But claim 6, unlike claim 5,

does not expressly call out an R2 plant. Indeed, unless the phrase "derived from" is narrowly

interpreted to cover only a single generation derivation, this claim structure supports DeKalb's

interpretation of progeny. But "derived from" cannot be read that narrowly. During the '956

prosecution, application claim 16 as originally filed was "The R1 and subsequent generations

derived from the plant of claim 1." (SM74) This clearly supports a broader reading of "derived

from." Later, new claims 36 and 37 were submitted as corresponding to claim 16, and the term

"progeny" was used in place of "subsequent generations." This transaction provides strong

support for DeKalb's position that progeny means the R1 and subsequent generations.

Pioneer also argues that, under this interpretation of "progeny," claims 4-9 and 13-18 of

the '880 patent are "non-sensical and duplicative." It argues that there "would be no need for

claims 5-9 and 11[sic:14]-18 if progeny covered all generations." (Post-*Markman* Hearing Brief,

p. 11) This argument seems to misapprehend the fundamental purpose of multiple claims,

particularly dependent claims that successively narrow the claimed invention. For example, a

necessarily narrower dependent claim may be valid when the broader claim from which it

depends is not.[56] Thus there might very well be a "need" for narrower claims, and patent

applicants routinely – almost invariably – submit and pursue such claim programs. Moreover,

claims are not presumed to have an identical scope merely because they can cover the same

accused product or process. As the Federal Circuit explained in Tandon Corp. v. United States

ITC, 831 F.2d 1017, 4 USPQ2d 1283, 1288 (Fed. Cir. 1987):

---

[56] Wahpeton Canvas Co. v. Frontier Inc., 870 F.2d 1546, 10 USPQ2d 1201, 1207n.10 (Fed. Cir. 1989).

Case 1:05-cv-00355-SLR    Document 87-19    Filed 06/03/2005    Page 22 of 32

Report and Recommendation of Special Master Regarding Claim Construction          Page 43
Transgenic Corn Patent Litigation (N.D. Illinois – Judge Reinhard)

There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant. D.M.I ., 755 F.2d at 1574, 225 USPQ at 239; Autogiro , 384 F.2d at 404, 155 USPQ at 708. At the same time, practice has long recognized that "claims may be multiplied . . . to define the metes and bounds of the invention in a variety of different ways." Bourns, Inc. v. United States , 537 F.2d 486, 492 (Ct. Cl. 1976), 187 USPQ 174, 178 (Ct. Cl. 1975), aff'd. per curiam , 199 USPQ 256 (Ct. Cl. 1976). Thus two claims which read differently can cover the same subject matter.

There is no doubt that claims 4-9 and 13-18 are of differing scope, even employing the proper definition of progeny. However, in view of the apparent misunderstanding, at least on the part of one defendant, it may be that the Court will wish to consider instructing the jury on exactly how the dependency and interrelationship of these claims is to be sorted out. To that end, the following analysis of claims 4-9 could provide the framework for such an instruction (claims 13-18 mirror 4-9 and would be read the same way).

> Claim 4 covers the R1 and succeeding generations, no matter how they are obtained from the R0 plant of claim 1

> Claim 5 covers the R1 and succeeding generations, which must be obtained by crossing the R0 plant of claim 1 with an inbred line

> Claim 6 covers the same plants as claim 4 except for R1 plants

> Claim 7 covers a plant obtained by back crossing a plant covered by claim 5 with the inbred line used in claim 5 and thus does not cover R1 plants

> Claim 8 covers the same plants as claim 4 except for R1 and R2 plants

> Claim 9 covers a plant obtained by back crossing a plant covered by claim 7 with the inbred line used in claim 5 and thus does not cover R1 or R2 plants

It is recommended that the jury be instructed that, in all other occurrences of the term "progeny" in the claims of the patents in suit, it means the R1 and succeeding generations.

Respectfully submitted,

Robert L. Harmon

Robert L. Harmon

Special Master

TAB

2

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge ,or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 50112 | **DATE** | 9/17/1999 |
| **CASE TITLE** | DeKalb Genetics Corp. vs. Pioneer Hi-Bred Int'l Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   The court hereby adopts all of the findings in the special master's Report and Recommendation as the findings of the court.  Pioneer's request for an oral hearing on the issue of claim construction is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | date docketed |
| Docketing to mail notices. | |
| Mail AO 450 form. | docketing deputy initials |
| Copy to judge/magistrate judge. | |
| | date mailed notice |
| SW | courtroom deputy's initials |
| | Date/time received in central Clerk's Office | mailing deputy initials |

(Reserved for use by the Court)

## ORDER

Seven patent infringement suits, in which DeKalb Genetics Corporation is the plaintiff, were referred on January 4, 1999, to Special Master Robert L. Harmon, who was approved by all the parties, pursuant to Fed. R. Civ. P. 53. The order of reference specified that the special master would "report to this court and the parties his conclusions, and the reasons for them, regarding the meaning of any disputed term in any allegedly infringed claim of the following patents: U.S. Patent Nos. 5,484,956; 5,489,520; 5,538,877; and 5,538,880." Order of Reference, ¶ 3, DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc., 96 C 50112 (N.D. Ill. Jan. 4, 1999). The special master held an evidentiary hearing on May 25-28, 1999, in which six expert witnesses testified and extensive attorney argument was heard. The parties filed extensive briefs both before and after the hearing. The special master's lengthy and comprehensive Report and Recommendation regarding claim construction was received by the court on June 30, 1999. All parties have filed objections to various aspects of the Report and Recommendation, but it is not necessary for the court to specifically address each objection. Suffice it to say, all counsel for all parties are knowledgeable and have been very thorough in presenting their arguments to the court.

The court, not the jury, has the power and obligation to construe as a matter of law the meaning of language used in patent claims. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) aff'., 517 U.S. 370 (1996). This court has reviewed *de novo* the thorough Report and Recommendation, the objections thereto filed by the parties, the transcripts of the evidentiary hearing and the patents and their prosecution histories. The court hereby adopts all of the findings in the special master's Report and Recommendation as the findings of the court. See Fed. R. Civ. P. 52.

Mycogen and Pioneer's requests for oral hearings on the issue of claim construction are denied as neither seek to submit additional evidence, but rather to argue legal positions already clear to the court.

TAB

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNGENTA BIOTECHNOLOGY, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY;<br>DELTA AND PINE LAND COMPANY;<br>and<br>D&M PARTNERS<br><br>    Defendants. | Case No. 02-1326-GMS<br><br><br>TRIAL BY JURY<br>DEMANDED |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SYNGENTA BIOTECHNOLOGY, INC. ("Syngenta"), alleges the following in support of its complaint for patent infringement against defendants MONSANTO COMPANY ("Monsanto"), DELTA AND PINE LAND COMPANY ("Delta"), and D&M PARTNERS ("D&M"), (collectively "the Defendants"):

### THE PARTIES

1.      Plaintiff Syngenta is a corporation organized and existing under the laws of the State of Delaware, with offices located at 3054 Cornwallis Road, Research Triangle Park, North Carolina, 27709-2257.

2.      Upon information and belief, defendant Monsanto is a corporation organized and existing under the laws of the State of Delaware, with offices located at 800 North Lindbergh Blvd., St. Louis, Missouri, 63167.

-1-

3.      Upon information and belief, defendant Delta is a corporation organized and existing under the laws of the State of Delaware, with offices located at 1 Cotton Row, Scott, Mississippi, 38772.

4.      Upon information and belief, defendant D&M is a partnership having a place of business at 1 Cotton Row, Scott, Mississippi, 38772.

### JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285.

6.      Subject-matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over the Delaware corporations Monsanto and Delta, both of whom may be properly served pursuant to 8 Del.C. § 321. This Court has personal jurisdiction over the partnership D&M because it has personal jurisdiction over each of the partners to the partnership, Monsanto and Delta.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

OPERATIVE FACTS

9.      On April 18, 2000, U.S. Patent 6,051,757 (the '757 patent), entitled
"Regeneration of Plants Containing Genetically Engineered T-DNA," was duly and
legally issued by the United States Patent and Trademark Office (attached hereto at tab
A).

10.     The entire right, title and interest in and to the '757 patent is assigned to
Washington University, St. Louis, Missouri.  Syngenta is the exclusive licensee of the
'757 patent with the right to enforce the patent.

11.     Upon information and belief, each of the Defendants is directly infringing
one or more of the claims of the '757 patent by making, using, selling, or offering to sell
the claimed subject matter, and is contributing to and actively inducing infringement of
one or more claims of the '757 patent by others.

12.     Upon information and belief, each of the Defendants will continue
infringing the '757 patent unless enjoined by this Court.

13.     Defendants' infringement of the '757 patent will cause Syngenta
irreparable harm, for which there is no adequate remedy at law.

14.     Upon information and belief, Defendants' infringement of the '757 patent
has been and will continue to be willful and deliberate.

-3-

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Syngenta prays that this Court enter judgment:

a.      That each of the Defendants has infringed the '757 patent;

b.      That each of the Defendants' infringement of the '757 patent has been willful and deliberate;

c.      Preliminarily and permanently enjoining each of the Defendants and its respective directors, officers, employees, agents and all persons in active concert or participation with them from further acts of infringement, contributory infringement and inducement of infringement of the '757 patent;

d.      Awarding to plaintiff Syngenta damages adequate to compensate plaintiff Syngenta for Defendants' infringement of the '757 patent with interest as fixed by the Court, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of Defendants' willful infringement;

e.      Declare this case exceptional under 35 U.S.C. § 285 and award plaintiff Syngenta its costs and attorney's fees;

f.      Awarding plaintiff Syngenta such other and further relief as this Court

deems just and proper.

PRICKETT, JONES & ELLIOTT, P.A.

BY: _____ (2o1) for

PAUL M. LUKOFF (I.D. No. 96)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
(302) 888-6520

*Attorneys for Plaintiff*

DATE:  July 2, 2003

Of Counsel:

Dimitrios T. Drivas, Esq.
**WHITE & CASE, LLP**
1155 Avenue of the Americas
New York, NY  10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113