IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

0 5 - 3 5 5

|  |  |  |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | |
| | ) | NOV 1 5 2004 |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04 C 50323 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| SYNGENTA SEEDS, INC. and | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |

## SYNGENTA'S CONTINGENT MOTION TO TRANSFER

Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc., by and through their attorneys David C. Van Dyke and Ronald D. Fiet, respectfully move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of Delaware, where a closely related first-filed patent infringement case involving the same allegedly infringing activity is already pending. *See Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-305-SLR (D. Del. filed May 12, 2004).

As of the filing of this motion to transfer, Syngenta's motion to dismiss this action in its entirety is still pending before the Court. If the motion to dismiss is granted, the present motion to transfer would be moot. However, Syngenta is filing this transfer motion prior to a decision on the motion to dismiss in view of the status conference on November 12, 2004, during which scheduling of the case and commencement of discovery are expected to be discussed.

A memorandum in support of the present motion is attached.

Respectfully submitted,

CASSIDAY, SCHADE & GLOOR

David C. Van Dyke
Ronald D. Fiet
20 N. Wacker Dr.
Suite 1040
Chicago, Illinois 60606
(312) 641-3100
Attorney No. 6204705

Of counsel:

Don O. Burley
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
(202) 408-4000

Attorneys for Defendants
Syngenta Seeds, Inc. and
Syngenta Biotechnology, Inc.

Dated: November 12, 2004

is personal jurisdiction in Delaware over all corporations that are incorporated in Delaware. *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech., Inc.*, 232 F. Supp. 2d 294, 296 (D. Del. 2002).

Here, the complaint in this case states that DeKalb is incorporated in Delaware (Ex. 1, ¶ 1), and Syngenta is also incorporated in Delaware. As a result, the Delaware Court has personal jurisdiction over both DeKalb and Syngenta, both companies reside in Delaware, and venue is proper in Delaware.

Indeed, in another litigation filed by Monsanto against Syngenta, a court in the Eastern District of Missouri transferred the case to the District of Delaware based in part on the fact that "all parties are organized under the laws of Delaware and can reasonably expect to sue and be sued there." *Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1104 (E.D. Mo. 2002).

## IV.    CONCLUSION

For all the above reasons, Syngenta respectfully urges that if this Court denies its motion to dismiss, the Court should transfer this action to the District of Delaware.

Respectfully submitted,

CASSIDAY, SCHADE & GLOOR

David C. Van Dyke
Ronald D. Fiet
20 N. Wacker Dr.
Suite 1040
Chicago, Illinois 60606
(312) 641-3100
Attorney No. 6204705

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04 C 50323 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| SYNGENTA SEEDS, INC. and | ) | |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | Magistrate Judge P. Michael Mahoney |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |

## MEMORANDUM IN SUPPORT OF SYNGENTA'S
## CONTINGENT MOTION TO TRANSFER

On September 20, 2004, Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (collectively "Syngenta") filed a motion to dismiss the present case for failure to state a claim. At the same time, however, if this Court denies Syngenta's motion to dismiss, it would be in the interests of justice to transfer the case to the District of Delaware, where another patent infringement case relating to the *same* allegedly infringing activity by Syngenta had already been filed. Accordingly, Syngenta has filed a contingent motion to transfer the case to Delaware under 28 U.S.C. § 1404(a), and submits this memorandum in support of that motion.

## I.    INTRODUCTION

In an obvious example of forum shopping, plaintiff DeKalb Genetics Corporation ("DeKalb") sued Syngenta in this jurisdiction *after* Monsanto Co. ("Monsanto")—DeKalb's corporate parent—had already sued Syngenta on the basis of the same allegedly infringing activity in the District of Delaware. As will be discussed in more detail below, except for the recitation of the patents at issue, the infringement allegations in the complaint filed in the present

case (a copy of which is attached as Ex. 1) are virtually identical to the infringement allegations in the complaint previously filed in Delaware (a copy of Monsanto's amended complaint in Delaware is attached as Ex. 2). Both complaints allege that Syngenta has infringed the patent(s) in suit through the *same* activity—making and using corn containing a gene that confers resistance to the herbicide glyphosate. *Compare* Ex. 1 at ¶ 12, 17 *with* Ex. 2 at ¶ 11.

There can also be no question that Monsanto is the real party in interest, both here and in Delaware. DeKalb has identified itself in the present case as "a wholly owned subsidiary of Monsanto." Ex. 1, ¶ 1. Further, Monsanto issued a press release in connection with *this* case (attached as Ex. 3) in which it stated that "in the U.S. District Court in Rockford . . . *Monsanto via DEKALB* is requesting an injunction preventing Syngenta and its agents from further infringement of these patents, which cover inventions relating to glyphosate-tolerant transgenic corn."[1] Ex. 3 at ¶ 6 (emphasis added). Both DeKalb (here) and Monsanto (in Delaware) are also represented by the same law firm—Howrey Simon Arnold & White, LLP.

Syngenta should not be forced to litigate disputes concerning the *same* allegedly infringing activity in different jurisdictions. Indeed, having two courts manage the same discovery and separately try closely related patent cases would not only burden Syngenta, but also waste significant judicial resources and raise the real prospect of inconsistent decisions. Accordingly, that result should be avoided if at all possible. Additionally, as discussed below, all requirements for transfer under 28 U.S.C. § 1404(a) are satisfied here. Monsanto, DeKalb, and Syngenta are all incorporated in Delaware, and Monsanto could have brought this action

---

[1] Accordingly, Syngenta will hereafter refer to Monsanto and DeKalb collectively as "Monsanto."

there. Syngenta thus urges that if this Court denies Syngenta's motion to dismiss, the Court

should transfer this action to the District of Delaware.

## II.     FACTUAL BACKGROUND

On May 12, 2004, Syngenta issued a press release (copy attached as Ex. 4) announcing

its intention to enter into the herbicide-resistant corn business.    The same day, Monsanto

(through Monsanto Co. and Monsanto Technologies, LLC) filed its first suit against Syngenta in

the District of Delaware, asserting that Syngenta had infringed U.S. Patent No. 4,940,835 ("the

'835 patent").   *Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-305-SLR (D. Del. filed May 12,

2004).  Monsanto then filed its amended complaint in Delaware (Ex. 2) on June 9, 2004.

On July 27, 2004 (over two months after Monsanto first sued Syngenta in Delaware),

Monsanto filed its second patent complaint against Syngenta—the complaint filed in this Court

in DeKalb's name (Ex. 1).  Both cases, Delaware and Illinois, are still in the earliest stages of

discovery, and Monsanto has served no discovery requests in either case.

The Delaware and Illinois cases involve the same field of biotechnology—herbicide-

resistant transgenic (genetically altered) corn—and four closely related patents.  The Delaware

case involves the '835 patent as well as a related patent that Syngenta brought into the case

through a declaratory judgment counterclaim, U.S. Patent No. 5,188,642 ("the '642 patent").[2]

The present case involves two patents, U.S. Patents Nos. 5,538,880 ("the '880 patent") and

---

[2] Claim 1 of the '835 patent (the only independent claim) recites "[a] chimeric plant gene . . . adapted to . . . enhance the glyphosate resistance of a plant cell transformed with the gene." '835 patent, col. 32, lines 31-47.  Similarly, claim 1 of the '642 patent claims a method of controlling weeds in a crop field by (1) planting crop seeds or plants that were transformed with a chimeric gene that enhances glyphosate resistance, and (2) applying glyphosate to the crop and weeds in the field in an amount that kills the weeds but not the crop.  '642 patent, col. 37, lines 14-43.

6,013,863 ("the '863 patent"), which are directed to processes for producing herbicide-resistant transgenic corn.[3]

Moreover, the infringement allegations in the Delaware and Illinois complaints are virtually identical, except for the recitation of the particular patents.  In Delaware, the complaint asserts that Syngenta infringes the '835 patent "by at least making, using, selling and offering for sale corn products exhibiting resistance to glyphosate herbicides."  Ex. 2  at ¶ 11.  Similarly, in Illinois, the complaint asserts that Syngenta infringes the '880 and '863 patents "by at least making and using corn containing genes that confer resistance to the herbicide glyphosate."  Ex. 1 at ¶¶ 12, 17.  Thus, in each of these actions, Monsanto asserts that Syngenta has infringed claims relating to making and using corn containing genes that confer resistance to the herbicide glyphosate.  For this reason, the discovery sought by Monsanto from Syngenta in both cases will likewise be identical in terms of documents, individuals deposed, and written discovery seeking the nature of Syngenta's product.

Syngenta filed an antitrust complaint against Monsanto in the District of Delaware on July 28, 2004, alleging that Monsanto has engaged in a wide range of conduct, such as pressuring customers not to deal with Syngenta, bundling financial incentives and enforcing exclusive dealing contracts, for the purpose of preventing Syngenta from competing with Monsanto.  Syngenta's antitrust complaint alleges that Monsanto's anticompetitive conduct

---

[3] Claim 1 of the '880 patent (the only independent claim) recites "[a] process for producing a . . . *Zea mays* [corn] plant comprising the steps of  [transforming corn cells with DNA through a biolistic process] . . . wherein said DNA is transmitted . . . to its progeny, and imparts herbicide resistance thereto."  '880 patent, col. 22, lines 48-55.  And claim 1 of the '863 patent recites "[a] process for producing a . . . *Zea mays* [corn] plant comprising the steps of [transforming corn cells with DNA through a biolistic process] . . . wherein said DNA is expressed so as to impart glyphosate resistance . . . and is transmitted . . . to progeny plants."  '863 patent, cols. 29-30, lines 26-5.

includes the filing of these two patent infringement cases knowing that its patents are invalid or not infringed. The antitrust case was assigned to the same judge as the patent infringement litigation. On September 28, 2004, Monsanto filed a motion to dismiss the antitrust complaint as a compulsory counterclaim or, in the alternative, to consolidate the antitrust case with the Delaware patent case. Monsanto argued that consolidation "plainly is appropriate" because "[c]ommon questions of law and fact abound," and also asserted that consolidation would "encourage orderly pretrial discovery, save witness time and expense, avoid duplicitous filings, and eliminate the risk of inconsistent results between two proceedings." Brief in Support of Defendant's Motion to Dismiss at 11-12 (attached as Ex. 5).

In fact, in seeking dismissal or consolidation of Syngenta's antitrust case, Monsanto *admitted* that the two patent cases are interrelated: "[I]f any of three patents (the Shah Patent or either of the two patents at issue in Illinois) are valid and enforceable, Syngenta has no antitrust claim as alleged since it would have no right to make, use or sell GA21® corn seed." *Id*. at 5.[4] Indeed, Monsanto argued that Syngenta's antitrust case is "wholly dependent" on Monsanto's patent cases lacking merit and made it clear that its Delaware *and* Illinois patent cases are based on the *same* allegedly infringing activity—the "making, using or selling of GA21® [glyphosate-resistant] corn." *Id*. at 4 ("If . . . Syngenta infringes the Shah ['835] Patent (or either of two other patents being asserted against Syngenta by Monsanto's subsidiary DeKalb Genetics Corp. in a pending suit in Illinois) *by making, using or selling GA21® corn*, then Syngenta has no antitrust claim . . . .") (emphasis added) (footnotes omitted).

---

[4] While the point here is that Monsanto's argument recognized the related nature of its patent cases, Syngenta must also note that Monsanto's assertion is wrong legally. Obviously, to prevent Syngenta from making, using, or selling GA21® corn, Monsanto must do more than show that one of its patents is "valid and enforceable"—it must also show that the patent is infringed.

There was, additionally, a prior action in this jurisdiction, *DeKalb Genetics Corp. v. Pioneer Hi-Bred Intl., Inc.,* No. 96 C 50112 (N.D. Ill.) ("the *Pioneer* case"), that concerned *one* of the two patents involved in the present Illinois action. Specifically, the '880 patent was involved in the *Pioneer* case, but not the '863 patent. Further, while the Court issued a claim construction ruling in the *Pioneer* case, there are a number of potentially dispositive claim interpretation issues regarding the '880 patent in the present case that were not addressed in the *Pioneer* case.

The final facts relevant to Syngenta's motion to transfer concern where the parties reside or are incorporated, *i.e.*, whether the action could have been brought in the transferee forum. Monsanto, DeKalb, and Syngenta are all incorporated in Delaware, and so there is no question that Delaware is a suitable forum for this lawsuit.

## III.    ARGUMENT

### A.    The Principal Factor Here Is the Interests of Justice, and That Factor Strongly Favors Transfer to the District of Delaware

District courts have broad discretion under 28 U.S.C. § 1404(a) to transfer actions "[f]or the convenience of parties and witnesses, in the interest of justice." The purpose of the transfer statute is "to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against inconvenience and expense." *Hess v. Gray*, 85 F.R.D. 15, 23 (N.D. Ill. 1979).

In deciding whether transfer is appropriate, the Seventh Circuit and the Northern District of Illinois have looked at whether venue is proper in both the transferor and transferee court, whether transfer is for the convenience of the parties and witnesses, and whether transfer is in the interest of justice. *See, e.g., Barnes v. Rollins Dedicated Carriage Servs., Inc.*, 976 F. Supp. 767,

768 (N.D. Ill. 1997); *Illinois Blower, Inc. v. Deltak, L.L.C.*, No. 04 C 0341, 2004 WL 765187, at *3 (N.D. Ill. Apr. 7, 2004).

Moreover, in *Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986), the court held that the "interest of justice" factor (which is described as relating "to the efficient functioning of the courts, not to the merits of the underlying dispute," *id.* at 221) "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Id.* at 220. *See also Ellis Corp. v. Jensen USA, Inc.*, No. 02 C 7380, 2003 WL 22111100, at *2, **3-4 (N.D. Ill. Sept. 9, 2003) (granting transfer to venue where related patent litigation involving similar legal, technical, and infringement issues was already pending); *Clear Lam Packaging, Inc. v. Rock-Tenn Co.*, No. 02 C 7491, 2003 WL 22012203, at **4-6 (N.D. Ill. Aug. 22, 2003) (granting transfer to venue where related patent cases were pending, finding that the interests of justice outweighed any inconvenience).

Here, transfer of this action to the District of Delaware would greatly increase the efficient administration of justice. In particular, the potential consolidation (or at least coordination) of discovery and trial of closely related patent cases would increase efficiency, conserve judicial resources, and avoid potentially conflicting decisions. *See A.P.T. Inc. v. Quad Envtl. Tech. Corp., Inc.*, 698 F. Supp. 718, 724 (N.D. Ill. 1988).

### 1.    Transfer Would Obviate Duplicative Discovery and the Possibility of Inconsistent Decisions

Transfer is "heavily" favored in patent infringement actions involving related patents which involve complex legal and technical issues. *Carus Corp. v. Greater Texas Finishing Corp.*, No. 91 C 2560, 1992 WL 22691, at *2 (N.D. Ill. Jan. 31, 1992); *see also Ellis*, 2003 WL 22111100, at *4. This consideration is particularly compelling here, where Monsanto will undoubtedly seek essentially the same discovery from Syngenta in each case, *since both lawsuits*

*involve the same allegedly infringing activity.* Moreover, although different individual patents are involved in the two actions, they all relate to similar subject matter, and, in fact, the claims of all four patents involve the technology of transforming plants by introduction of the same type of plant gene and achieving enhanced resistance to the herbicide glyphosate. Transfer of this action to the District of Delaware would therefore eliminate duplicative discovery and conserve the resources of the judiciary and parties. *See, e.g., Abbott Labs. v. Selfcare Inc.*, No 98 C. 7102, 1999 WL 162805, at *2 (N.D. Ill. Mar. 15, 1999) (granting transfer even though the two actions involved different patents because they involved "the same parties and substantially similar technology"); *Ellis,* 2003 WL 22111100, at *4 (granting transfer for reasons of judicial economy and finding that transfer was "logical and strongly favored" because the pending patent litigation involved "the same parties and similar legal, technical and infringement issues.").

Further, transferring this action to the District of Delaware would reduce the risk of inconsistent judgments. *See, e.g., Abbott Labs.*, 1999 WL 162805, at *2; *Conseco Life Ins. Co. v. Reliance Ins. Co.*, No. 99 C 5020, 2001 WL 1631873, at *4 (N.D. Ill. Dec. 14, 2001). If one judge were in charge of all the pretrial proceedings, discovery disputes, and trial, the risk for inconsistent judgments would be eliminated. When there is a "potential to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, counsel and judiciary" the interests of justice weigh in favor of transfer. *Dean Foods Co. v. Eastman Chem. Co.*, No. 00 C 3675, 2000 WL 1557915, at *5 (N.D. Ill. Oct. 19, 2000).

As this case sits now, there is a real potential for inconsistent decisions. It is distinctly possible, for example, that both the Delaware and Illinois courts could be asked to resolve the same (or similar) discovery disputes affecting both cases. Moreover, if two judges or juries were to concurrently consider the same or substantially the same technology and alleged infringing

8

conduct, there would be a risk that they would make conflicting findings concerning Syngenta's activities, the state of the art, the knowledge in the art, and other questions concerning the issues of patent validity and infringement.

In addition, the District of Delaware has a practice of coordinating related actions. Under the Local Rules of the District of Delaware, a case is "related" to a case currently filed in the District if both cases "arise from the same or substantially identical transactions, happenings, or events," involve the "same or substantially the same parties or property," or "for other reasons would entail substantial duplication of labor if heard by different judges." *See* Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, Rule 3.1(b). This case would certainly be considered a "related action" if transferred to Delaware. Then, all the patent litigations between the parties that pertain to glyphosate-resistant corn would be before the same judge, and the possibility of inconsistent decisions would be eliminated.

### 2.    Transfer to the District of the First-Filed Action, Delaware, Is in the Interests of Justice

Under the first-to-file rule, the forum of a first-filed patent action is typically favored over later-filed actions relating to the same subject matter. *See, e.g., Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *vacated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).[5] Here, it is especially appropriate to transfer to Delaware, where the

---

[5] Seventh Circuit law is essentially in accord. The Seventh Circuit does not rigidly follow the "first-to-file" rule. *See Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). However, the Seventh Circuit recognizes the "general proposition" that "cases should be transferred to the district where related actions are pending" and that "[t]ransfer is even more appropriate where the suit in the other district was the first one filed." *A.P.T.*, 698 F. Supp. at 723-24 (citations omitted). *See also Carus*, 1992 WL 22691, at *2.

first action against Syngenta was filed. This is not an instance where a defendant attempted to forum shop by filing a declaratory judgment action in a second jurisdiction. Rather, Monsanto's decision to sue Syngenta on the '880 and '863 patents in Illinois, *after* having sued Syngenta on the '835 patent in Delaware, reflects a blatant attempt on Monsanto's part to litigate the same allegedly infringing activity in different jurisdictions based on where it believes it would have the best chance for success on particular patents irrespective of the relatedness of the actions, judicial economy, or the impact on the parties.

In particular, it appears that Monsanto views this jurisdiction as preferable for the litigation concerning the '880 and '863 patents—*but only for those patents*—because of a claim construction ruling this Court made in the now-closed *Pioneer* case. Indeed, this is not conjecture on Syngenta's part—Monsanto attached this Court's claim construction ruling as an exhibit to its memorandum opposing Syngenta's motion to dismiss.

### 3. That This Court Issued a Claim Construction Ruling in the *Pioneer* Case Does Not Mean That the Interests of Justice Weigh Against Transfer

Monsanto will undoubtedly argue that the interests of justice weigh against transfer here because this Court (adopting the "Report and Recommendation of the Special Master Regarding Claim Construction") issued a claim construction ruling relating to the '880 patent in the *Pioneer* case. The Court's prior claim construction ruling in that case, however, does not control the outcome of the present case.

The claims of the '880 and '863 patents are process claims directed not to any corn product itself, but to processes for transforming corn plants. As explained in connection with Syngenta's motion to dismiss, however, Monsanto has not, and cannot, allege that Syngenta has ever practiced the claimed processes.

10

From the position it has taken in opposing Syngenta's motion to dismiss, it appears that Monsanto will argue that the claims of the '880 and '863 patents cover Syngenta's product *even if Syngenta never practiced the claimed processes*. *See* Ex. 6 at 6 n.2. That issue, however (i.e., whether the claims can be construed to cover activity not involving practicing the claimed processes), was neither addressed nor decided by the Special Master, or this Court, in the *Pioneer* case. Moreover, the '863 patent was not even involved in the *Pioneer* case. Accordingly, any claim construction issues involving that patent were not addressed there.

Syngenta's point, in short, is that Monsanto must demonstrate infringement in the present case based on *Syngenta's* activity, and that is in no way resolved (or even helped) by what happened in the prior *Pioneer* litigation. Accordingly, that this Court previously construed certain terms of the '880 patent in the *Pioneer case* does not outweigh the other considerations favoring transfer.

In sum, the interests of justice significantly favor proceeding with respect to the patents now involved both here and in Delaware in one district rather than two. Moreover, because Delaware is the first forum where Monsanto filed suit against Syngenta, and it is also the forum where each party in question is incorporated, transferring the present case to Delaware is in the interests of justice.

**B.    The Relative Speed to Trial and Familiarity with Patent Law Do Not Weigh Against Transfer**

Another factor relevant to transfer is the speed at which the case would proceed to trial in the transferor and transferee forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). Here, this factor does not clearly favor either district. When determining speeds, this Court looks to the Federal Court Management Statistics concerning "(1) the median months from filing to disposition and (2) the median months from filing to trial." *Id.* The latest

11

statistics calculated for the 12-month period ending September 30, 2003, show that the median time from filing to disposition in Illinois is 5.5 months compared to 11.2 months in Delaware. However, the median time from filing to trial in Illinois is 26.2 months, while in Delaware it is 21 months. *See* www.uscourts.gov/judbus2003/contents.html (table C-5).

As a result, the parties would be more likely to go to trial sooner in Delaware (trial already is scheduled in the Delaware case in about 18 months). Since disposition statistically would be more likely to happen sooner in Illinois, however, it appears that this factor does not clearly favor either district.

In deciding transfer motions, this Court also considers the familiarity of each forum with the applicable law. *Amoco Oil*, 90 F. Supp. 2d at 962. Here, both districts are equally familiar with federal patent law. Thus, this factor similarly does not favor one forum over the other.

## C.    The Overall Convenience to the Parties and Witnesses Favors Transfer

In deciding transfer motions, this Court may consider not just public equities but also the private interests of the parties. *Anchor Wall Sys., Inc. v. R & D Concrete Prod., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999). Factors considered in this analysis include the plaintiff's choice of forum, the location of the material events, the relative ease of access to sources of proof for each forum, and convenience to the parties. *Id.*; *Heil Co. v. Curotto Can Co.*, No. 02 C 782, 2004 WL 725737, at *1 (N.D. Ill. Mar. 30, 2004).

Here, Monsanto's choice of *this* forum should hold little or no weight because it chose to bring suit *first* in Delaware, and then chose to file its *second* suit in a different forum, Illinois. Indeed, in analyzing the issue of convenience to the parties, it makes little sense to compare the convenience of trying a case in Delaware with the convenience of trying a case in Illinois. As things stand now, the parties are litigating in *both* districts, which (among other things) makes

12

no sense and is grossly inefficient. This case should be transferred so that the parties' dispute can be resolved in one forum, Delaware.

Simply put, a single forum is more convenient than two. Among other things, if witnesses and documents could be brought to one location instead of two, efficiency would be increased, the litigation costs of both parties would be reduced, and the disruption of both sides' businesses would be minimized. Transferring the present case to Delaware would thus increase the overall convenience of *both* parties.

Finally, even if Delaware and Illinois were compared directly, neither forum would be particularly more convenient than the other. Syngenta's witnesses and documents are in North Carolina and Minnesota, and Monsanto's witnesses and documents are in Missouri and Illinois. Certainly, Monsanto cannot argue that Delaware is an inconvenient forum, given that it filed the first suit against Syngenta on the '835 patent in Delaware. In fact, the Delaware district court has specifically held that "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001); *see also Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D. Del. 1993) ("Absent some showing of a unique or unexpected burden, these [Delaware] corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient.").

### D.    Venue Is Proper in Both the Transferor and Transferee Court

There is no dispute that venue is proper both in this Court (the transferor jurisdiction) and in Delaware (the transferee jurisdiction). Under 28 U.S.C. § 1400(b), venue is proper in patent infringement actions, among other places, in any "district where the defendant resides." Further, under 28 U.S.C. § 1391(c), a corporate defendant is "deemed to reside in any jurisdiction in which it is subject to personal jurisdiction at the time the action is commenced." Finally, there

13

Of counsel:

Don O. Burley
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C.  20005-3315
(202) 408-4000

Attorneys for Defendants
Syngenta Seeds, Inc. and
Syngenta Biotechnology, Inc.

Dated:  November 12, 2004

27477/10588/DVD/CMW/JH                                                        ARDC# 6230902

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04 C 50323 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| SYNGENTA SEEDS, INC., et al., | ) | Judge Michael P. Mahoney |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |

## NOTICE OF FILING

TO:     See Attached Service List

**PLEASE TAKE NOTICE** that we have on November 12, 2004 filed Syngenta's Contingent Motion to Transfer and Memorandum in Support of Syngenta's Contingent Motion to Transfer with the Clerk of the United States District Court for the Northern District of Illinois, a copy of which is herewith served upon you.

By: _____

One of the Attorneys for SYNGENTA SEEDS, INC. and
SYNGENTA BIOTECHNOLOGY, INC.

David C. Van Dyke
Ronald D. Fiet
CASSIDAY, SCHADE & GLOOR, LLP, LLP
120 W. State Street - Ste. 401
Rockford, Illinois   61101
(815) 962-8301

STATE OF ILLINOIS       )
                        ) SS
COUNTY OF WINNEBAGO )

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn upon oath deposes and states that he served a copy of the foregoing document to whom it is directed via hand delivery in open court on November 12, 2004.

_____



27477/10588/DVD/CMW/JH
DeKalb Genetics Corporation v. Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.

## SERVICE LIST

John J. Holevas, Esq.
Williams and McCarthy
321 West State Street
Rockford IL 61101
(815) 987-8900
(815) 968-0019 (Fax)

Thomas A. Miller
Howrey Simon Arnold
 & Whire, LLP
750 Bering Drive
Houston TX 77057
(713) 787-1400
(713) 787-1440 (Fax)

Michael J. Flibbert
Finnegan, Hnderson, Farabow
  Garrett & Dunner, L.L.P.
1300 I STreet, N.W.
Washington DC 20005
(202) 408-4493
(202) 408-4400 (Fax)
E-Mail: michael.flibbert@finnegan.com

6652789 WRANARD;BLANEGRA

TAB

1

RECEIVED

JUL 2 7 2004

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS 0 4 C 5 0 3 2 3
WESTERN DIVISION

04050328

| | |
|---|---|
| DEKALB GENETICS CORPORATION, | C.A. NO. _____ |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SYNGENTA SEEDS, INC. and SYNGENTA BIOTECHNOLOGY, INC., | Judge Philip G. Reinhard |
| Defendants. | Magistrate Judge P. Michael Mahoney |

## COMPLAINT

Plaintiff, DEKALB Genetics Corporation ("DEKALB") brings this action against Defendants Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (collectively "Syngenta" or "Defendants") and alleges as follows:

## THE PARTIES

1.      Plaintiff DEKALB Genetics Corporation is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 3100 Sycamore Road, DeKalb, Illinois 60115. DEKALB is a wholly owned subsidiary of Monsanto Company.

2.      On information and belief, Defendant Syngenta Seeds, Inc. ("Syngenta Seeds") is a corporation organized and existing under the laws of the State of Delaware, with offices located at 7500 Olson Memorial Highway, Golden Valley, Minnesota 55427.

3.      On information and belief, Defendant Syngenta Biotechnology, Inc. ("Syngenta Biotechnology") is a corporation organized and existing under the laws of the State of Delaware, with offices located at 3054 Cornwallis Road, Research Triangle Park, North Carolina 27709-2257.

Complaint

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35, United States Code § 1 et seq. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

5.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND

6.     Plaintiff DEKALB, a leader in the development of crops that have been genetically engineered to express new traits of value to farmers, such as herbicide resistance, has developed corn containing genes that confer resistance to the herbicide glyphosate. Glyphosate is a commercial herbicide that kills plants by binding to a critical enzyme in the plant called "EPSPS." Monsanto Company sells a glyphosate herbicide under the trademark Roundup®. Genetically engineered products made by Monsanto Company that have the glyphosate resistance trait, including DEKALB branded corn, are sold under the trademark Roundup Ready®. Roundup Ready® products have been a recognized commercial success. Since the introduction of Roundup Ready® crops in 1996, farmers have consistently increased the number of acres they plant in the United States with Roundup Ready® products.

7.     Recognizing the value of DEKALB's glyphosate resistance technology, Defendants have attempted to make and use glyphosate resistant genes and corn and have conspired with others to make glyphosate resistant corn in violation of DEKALB's patent rights.

## THE INFRINGEMENT

8.     Plaintiff realleges and incorporates by reference each of paragraphs 1-7 above as if set forth herein.

9.      DEKALB has been the owner of all right, title and interest to and under United States Patent No. 5,538,880 entitled "Method for Preparing Fertile Transgenic Corn Plants" and naming Ronald C. Lundquist and David A. Walters as inventors. U.S. Patent No. 5,538,880 ("the '880 Patent") was duly and legally issued to DEKALB on July 23, 1996. A copy of the patent is attached as Exhibit 1 to this Complaint.

10.     DEKALB previously brought actions in 1996 in this Court against two Syngenta predecessor companies, Northrup King Co. (Civil Action No. 96 C 50169) and Ciba-Geigy Corporation (Civil Action No. 96 C 50241), for infringement of the '880 patent. Both actions were resolved and dismissed in 1999, after three years of litigation, including extensive fact and expert discovery and construction of the claims by the Court. That litigation did not involve the Syngenta products that are the subject of this action.

11.     Defendants do not have any license or other right to practice the claims of U.S. Patent No. 5,538,880 for the products that are the subject of this action.

12.     Upon information and belief, Defendants have infringed and continue to infringe one or more of claims 1-9 of the '880 Patent by at least making and using corn containing genes that confer resistance to the herbicide glyphosate, and will continue to do so unless enjoined by this Court.

13.     Upon information and belief, Defendants have infringed one or more of claims 1-9 of the '880 Patent by at least inducing others and contributing to the infringement by others.

14.     Defendants' acts of infringement of the '880 Patent, upon information and belief, have been carried out in deliberate and willful disregard of DEKALB's patent rights.

15.     DEKALB has been the owner of all right, title and interest to and under United States Patent No. 6,013,863 entitled "Fertile Transgenic Corn Plants" and naming Ronald C. Lundquist

3

and David A. Walters as inventors. U.S. Patent No. 6,013,863 ("the '863 Patent") was duly and legally issued to DEKALB on January 11, 2000 from a series of continuation applications relating back to the parent application that led to the '880 patent. A copy of the patent is attached as Exhibit 2 to this Complaint.

16.    Defendants do not have any license or other right to practice the claims of U.S. Patent No. 6,013,863 for the products that are the subject of this action.

17.    Upon information and belief, Defendants have infringed and continue to infringe one or more claims of the '863 Patent by at least making and using corn containing genes that confer resistance to the herbicide glyphosate, and will continue to do so unless enjoined by this Court.

18.    Upon information and belief, Defendants have infringed one or more of the claims of the '863 Patent by at least inducing others and contributing to the infringement by others.

19.    Defendants' acts of infringement of the '863 Patent, upon information and belief, have been carried out in deliberate and willful disregard of DEKALB's patent rights.

## JURY DEMAND

20.    Pursuant to Rule 38(b), Fed. R. Civ. P., Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

WHEREBY PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

A.    A judgment that Defendants have infringed claims 1-9 of the '880 Patent and the claims of the '863 Patent;

B.    A judgment that Defendants have willfully and deliberately infringed claims 1-9 of the '880 Patent and the claims of the '863 Patent;

C.    A declaration by the Court that any making, using, selling or offering for sale by Defendants of glyphosate resistant corn products that are within the scope of claims 1-9

4

of the '880 Patent and the claims of the '863 Patent would constitute an act of infringement of the '880 and '863 Patents;

D.   A preliminary and final injunction enjoining Defendants and all those in privy with them from infringing, from inducing infringement, and from contributing to the infringement of claims 1-9 of the '880 Patent and the claims of the '863 Patent;

E.   An award of compensatory and exemplary damages, but not less than a reasonable royalty, resulting from Defendants' infringement, including allowance of multiplied damages based on Defendants' willful and deliberate infringement;

F.   An award of interest, costs, and attorneys' fees; and

G.   Such other and further relief as this Court shall deem just and proper.

Dated: ___7/27/04___

Respectfully submitted,

By _____
John J. Holevas
Illinois Bar No. 06193197
WILLIAMS & McCARTHY
321 West State Street
Rockford, IL  61101
(815) 987-8900


John F. Lynch
Thomas A. Miller
Susan K. Knoll
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057
(713) 787-1400

ATTORNEYS FOR PLAINTIFF
DEKALB GENETICS CORPORATION

US005538880A

# United States Patent [19]

## Lundquist et al.

[11]    Patent Number:    5,538,880

[45]    Date of Patent:    * Jul. 23, 1996

[54] METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

[75] Inventors: Ronald C. Lundquist, Minnetonka; David A. Walters, Bloomington, both of Minn.

[73] Assignee: DeKalb Genetics Corporation, St. Paul, Minn.

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,538,877.

[21] Appl. No.: 249,458

[22] Filed: May 26, 1994

### Related U.S. Application Data

[63] Continuation of Ser. No. 974,379, Nov. 10, 1992, which is a continuation of Ser. No. 467,983, Jan. 22, 1990, abandoned.

[51] Int. Cl.⁶ ............... C12N 15/00; C12N 15/05; A01H 1/06; A01H 4/00

[52] U.S. Cl. ............... 435/172.3; 435/172.1; 435/240.48; 435/240.49; 935/52; 935/55; 935/67; 935/85; 800/205; 800/235; 800/DIG. 56

[58] Field of Search ............... 435/172.3, 172.1, 435/240.4, 240.45, 240.49, 287; 800/205, 235; 935/52, 53, 55, 67, 85

## [56] References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,370,160 | 1/1983 | Ziemelis | 71/117 |
| 4,559,302 | 12/1985 | Ingolia | 435/172.3 |
| 4,581,847 | 4/1986 | Hibberd et al. | 47/58 |
| 4,665,030 | 5/1987 | Close | 435/240 |
| 4,666,844 | 5/1987 | Cheng | 435/240 |
| 4,727,028 | 2/1988 | Santerre et al. | 435/240.2 |
| 4,806,483 | 2/1989 | Wang | 435/240.49 |
| 4,940,835 | 7/1990 | Shah et al. | 800/205 |
| 5,049,500 | 9/1991 | Arntzen et al. | 435/172.3 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 0126537A2 | 4/1983 | European Pat. Off. | A61K 9/52 |
| 0141373A3 | 5/1985 | European Pat. Off. | A01G 7/00 |
| 0154204A2 | 9/1985 | European Pat. Off. | C12N 15/00 |
| 0160390A2 | 11/1985 | European Pat. Off. | A01H 15/10 |
| 0204549A2 | 10/1986 | European Pat. Off. | C12N 15/00 |
| 0202068A2 | 11/1986 | European Pat. Off. | C12N 5/02 |
| 0242236A1 | 10/1987 | European Pat. Off. | C12N 15/00 |
| 0242246A1 | 11/1987 | European Pat. Off. | C12N 15/00 |
| 0299552A1 | 1/1988 | European Pat. Off. | C12N 15/00 |
| 0262971A2 | 5/1988 | European Pat. Off. | A01H 1/02 |
| 0270356A2 | 6/1988 | European Pat. Off. | C12N 15/00 |
| 0275069A2 | 7/1988 | European Pat. Off. | C12N 15/00 |
| 0280400A2 | 8/1988 | European Pat. Off. | A01C 1/06 |
| 0282164A2 | 9/1988 | European Pat. Off. | C12N 15/00 |
| 0292435A1 | 11/1988 | European Pat. Off. | C12N 15/00 |
| 0289479A2 | 11/1988 | European Pat. Off. | C12N 15/00 |
| 0290395A2 | 11/1988 | European Pat. Off. | C12N 15/00 |
| 0301749A2 | 2/1989 | European Pat. Off. | C12N 15/00 |
| 0334539A2 | 9/1989 | European Pat. Off. | C12N 15/00 |
| 0331855A2 | 9/1989 | European Pat. Off. | C12M 3/00 |
| 0348348A2 | 12/1989 | European Pat. Off. | A01N 65/00 |
| 04421741 | 4/1991 | European Pat. Off. | C12N 15/82 |

| | | | |
|---|---|---|---|
| 3738874A1 | 11/1988 | Germany | A01H 1/06 |
| 8801444 | 1/1990 | Netherlands | C12N 15/87 |
| 2159173 | 11/1985 | United Kingdom | C12N 15/00 |
| WO85/01856 | 5/1985 | WIPO | A01B 76/00 |
| WO85/02972 | 7/1985 | WIPO | A01C 1/06 |
| WO87/05629 | 9/1987 | WIPO | C12N 15/00 |
| WO89/04371 | 5/1989 | WIPO | C12N 21/00 |
| WO89/12102 | 12/1989 | WIPO | C12N 15/00 |
| WO90/10691 | 8/1990 | WIPO | C12N 5/00 |

### OTHER PUBLICATIONS

"Bullets" Transform Plant Cells, *Agricell Report*, 9, 5 (Jul. 1987).

"Shotgunning DNA into Cells," *Genetic Engineering News*, (Jul./Aug. 1987).

Ahokes, H. "Electrophoretic transfection of cereal grains with exogenous nucleic acid," Soc. Biochem. Biophys. Microbio. Fen., Biotieteen Paivat (Bioscience Days), Technical University of Helsinki, Espoo, p. 2 (1989).

Armstrong, C. L., et al., "Genetic and cytogenetic variation in plants regenerated from organogenic and friable, embryonic tissue cultures of maize," *Biological Abstracts*, vol. 85, Abstract No. 117662 (1988).

Barker, R. F., et al., "Nucleotide Sequence of the T-DNA Region from the *Agrobacterium tumefaciens* Octopone Ti Plasmid pTi5955," *Plant Mol. Biol.*, 2, 335–350 (1983).

Bevan, M., et al., "A Chimaeric Antibiotic Resistance Gene as a Selectable Marker for Plant Cell Transformation," *Nature*, 304, 184–187 (1983).

Bevan, M., et al., "Structure and Transcription of the Nopaline Synthase Gene Region of T-DNA," *Nuc. Acids Res.*, 11, 369–385 (1983).

Booy, G., et al., "Attempted Pollen-Mediated Transformation of Maize," *J. Plant Physiol.*, 135, 319–324 (1989).

Callis, J., et al., "Introns Increase Gene Expression in Cultures Maize Cells," *Genes and Development*, 1, 1183–1200 (1987).

Cao, J., et al., "Transformation of Rice and Maize using the Biolistic Process," In: *Plant Gene Transfer*, Alan R. Liss, Inc., pp. 21–33 (1990).

Chandler, V. L., et al., "Two Regulatory Genes of the Maize Anthocyanin Pathway are Homologous Isolation of B Utilizing R Genomic Sequences," *The Plant Cell*, 1, 1175–1183 (1989).

Christou, P., et al., "Cotransformation Frequencies of Foreign Genes in Soybean Cell Cultures," *Theor. Appl. Genet.*, 79, 337–341 (1990).

(List continued on next page.)

*Primary Examiner*—Gary Benzion
*Attorney, Agent, or Firm*—Schwegman, Lundberg, Woessner & Kluth

## [57]    ABSTRACT

Fertile transgenic *Zea mays* (corn) plants which stably express heterologous DNA which is heritable are disclosed along with a process for producing said plants. The process comprises the microjectile bombardment of friable embryogenic callus from the plant to be transformed. The process may be applicable to other graminaceous cereal plants which have not proven stably transformable by other techniques.

18 Claims, 10 Drawing Sheets

5,538,880

Page 2

OTHER PUBLICATIONS

Christou, P., et al., "Stable Transformation of Soybean Callus by DNA–Coated Gold Particles," *Plant Physiol.*, 87, 671–674 (1988).

Cocking, F., et al., "Gene Transfer in Cereals," *Science*, 236, 1259–1262 (1987).

Creissen, G., et al., "*Agrobacterium*– and Microprojectile–Mediated Viral DNA Delivery into Barley Microspore Derived–Cultures," *Plant Cell Rep.*, 8, 680–683 (Apr. 1990).

Crossway, A., et al., "Integration of foreign DNA following microinjection of tobacco mesophyll protoplasts," *Mol. Gen. Genet.*, 202, 179–185 (1986).

De Block, M., et al., "Engineering herbicide resistance on plants by expression of a detoxifying enzyme," *EMBO J.*, 6, 2513–2518 (1987).

De Greef, W., et al., "Evaluation of herbicide resistance in transgenic crops under field conditions," *Bio/Technol.*, 7, 61–64 (1989).

Dekeyser, R. A., et al., "Evaluation of Selectable Markers for Rice Transformation," *Plant Physiol.*, 90, 217–223 (1989).

DeWald et al., "Plant regeneration from inbred maize suspensions," VIIth International Congress on Plant Tissue and Cell Culture, p. 12, Abstract No. A1–36 (Jun. 24–29, 1990).

DeWet, J. R. et al., "Cloning of Firefly Luciferase cDNA and the Expression of Active Luciferase in *Escherichia coli*," *Proc. Nat. Acad. Sci, USA*, 82, 7870–7873 (1985).

Evans, D. A., et al., "Somaclonal Variation—Genetic Basis and Breeding Applications," *Trends Genet.*, 5, 46–50 (1989).

Fransz, P., et al., "Cytodifferentiation during callus initiation and somatic embryogenesis in *Zea mays* L.," Ph.D. thesis, U. of Wageningen Press, The Netherlands (1988).

Fromm, M. E., et al., "Stable Transformation of Maize after Gene Transfer by Electroporation," *Nature*, 319, 791–793 (1986).

Fromm, M., et al., "Expression of Genes Transfected into Monocot and Dicot Plant Cells by Electroportion," *Proc. Nat. Acad. Sci. USA*, 82, 5824–5828 (1985).

Gould, O., et al., "Shoot Tip Culture as a Potential Transformation System," Abstracts, Beltwide cotton production research conferences, New Orleans, LA, p. 91 (1988).

Graves, A., et al., "The transformation of *Zea mays* seedlings with *Agrobacterium tumefaciens*", *Plant Mol. Biol.*, 7, 43–50 (1986).

Green, C., et al., "Plant Regeneration from Tissue Cultures of Maize," *Crop. Sci.*, 15, 417–421 (1975).

Green, C., et al., "Plant Rengeneration in Tissue Cultures of Maize," In: *Maize for Biological Research*, Sheridan, W. F., (ed.) Plant Mol. Biol. Assoc., pp. 367–372 (1982).

Green, C., et al., "Somatic Cell Genetic Systems in Corn," In: *Advances in Gene Technology: Molecular Genetics Plant and Animals*, Academic Press, Inc., pp. 147–157 (1983).

Grimsley, N., et al., "DNA Transfer from Agrobacterium to *Zea mays* or *Brassica* by Agroinfection is Dependent on Bacterial Virulence Functions," *Mol. Gen. Genet.*, 217, 309–316 (1989).

Gritz, L., et al., "Plasmid–Encoded Hygromycin B Resistance: The Sequences of Hygromycin B Phosphotransferase Gene and Its Expression in *Escherichia coli* and *Saccharomyces cerevisiae*," *Gene*, 25, 179–188 (1983).

Guilley, H., et al., "Transcription of Cauliflower Mosaic Virus DNA: Detection of Promotor Sequences, and Characterization of Transcripts," *Cell*, 30, 763–773 (Oct. 1982).

Hooykass, P. J. J., "Transformation of plant cell via *Agrobacterium*," *Plant Mol. Biol.*, 13, 327–336 (1989).

Horn, M., et al., "Transgenic Plants of Orchard Grass (*Dactylis glomerata* L.) from Protoplasts," *Chem. Abstracts*, 110, p. 208, Abstract No. 89869a (1989).

Jefferson, R., et al., "β–Glucuronidase from *Escherichia coli* as a Gene–Fusion Marker," *Proc. Nat. Acad. Sci. USA* 83, 8447–8451 (1986).

Jefferson, R., et al., "GUS Fusions: β–Glucuronidase as a Sensitive and Versatile Gene Fusion Marker in Higher Plants," *EMBO J.* 6, 3901–3907 (1987).

Jefferson, R., "Assaying chimeric genes in plants: the GUS gene fusion system," *Plant Mol. Biol. Rep.*, 5, 387–405 (1987).

Kamo, K., et al., "Establishman and Characterizatio of Long–Term Embryonic Maize Callus and Cell Suspension Cultures," *Plant Sci.*, 45, 111–117 (1986)

Kartha, K., et al., "Transient Expression of Chloramphenicol Acetyl Transferase (CAT) Gene in Barley Cell Cultures and Immature Embryos Through Microprojectile Bombardment," *Plant Cell Rep.*, 8, 429–432 (1989).

Klein, T., et al., "Transfer of Foreign Genes into Intact Maize Cells with High–Velocity Microprojectiles," *Proc. Nat. Acad. Sci. USA*, 85, 4305–4309 (1988).

Klein, T. M., et al., "Factors Influencing Gene Delivery into *Zea mays* Cells by High Velocity Microprojectiles," *Bio/Technol.*, 6, 559–563 (1988).

Klein, T. M., et al., "High–Velocity Microprojectiles for Delivering Nucleic Acids to Living Cells," *Nature*, 327, 70–73 (1987).

Klein, T., et al., "Genetic Transformation of Maize Cell by Particle Bombardment and the Influence of Methylation on Foreign Gene Expression," in: *Gene Manipulation in Plant Improvement II*, Gustafson, J. P. (ed.), Plenum Press, NY, pp. 265–266 (1990).

Klein, T., et al., "Genetic transformation of Maize Cells by Particle Bombardment," *Plant Physiol*, 91, 440–444 (1989).

Klein, T., et al., "Regulation of Anthocyanin Biosynthetic Genes Introduced into Intact Maize Tissue by Microprojectiles," *Proc. Nat. Acad. Sci. USA*, 86, 6682–6685 (1989).

Kozak, M., "Point Mutations Define a Sequence Flanking the AUG Initiator Codon that Modulates Translation by Eukaryotic Ribosomes," *Cell*, 44, 283–292 (1986).

Lazzeri, P., et al., "In Vitro Genetic Manipulation of Cereals and Grasses," *Ad. Cell Culture* 6, 291–293 (1988).

Lorz, H., et al., "Advances in Tissue Culture and Progress Towards Genetic Transformation of Cereals," *Plant Breeding*, 100, 1–25 (1988).

Lu, C., et al., "Improved Efficiency of Somatic Embryogenesis and Plant Regeneration on Tissue Cultures of Maize (*Zea mays* L.)," *Theor. Appl. Genet.*, 66, 285–289 (1983).

Ludwig, S., et al., "A Regulatory Gene as a Novel Visible Marker for Maize Transformation," *Science*, 247, 449–450 (1990).

Ludwig, S., et al., "High Frequency Callus Formation from Maize Protoplasts," *Theor. Appl. Genet.*, 71, 344–350 (1985).

Ludwig, S., et al., "Lc, a Member of the Maize R Gene Family Responsible for Tissue–Specific Anthocyanin Production, Encodes a Protein Similar to Transcriptional Activators and Contains the myc–Homology Region," *Proc. Nat. Acad. Sci. USA*, 86, 7092–7096 (1989).

Ludwig, S., et al., "Maize R Gene Family: Tissue–Specific Helix–Loop–Helix Proteins," *Cell* 62, 849–851 (1990).

5,538,880

Page 3

Lutcke, H., et. al., "Selection of AUG Initiation Codons Differs in Plants and Animals," *EMBO J.*, 6, 43–48 (1987).

McDaniel, C., et al., "Cell-Lineage Patterns in the Shoot Apical Meristem of the Germinating Maize Embryo," *Planta, 175*, 13–22 (1988).

Meadows, M., "Characterization of Cells and Protoplasts of the B73 Maize Cells Line," *Plant Sci. Lett.*, 28, 337–348 (1982/83).

Mendel, R., et al., "Delivery of Foreign Genes to Intact Barley Cell by High–Velocity Microprojectiles," *Theor. Appl. Genet.*, 78, 31–34 (1989).

Murakami, T., et al., "The Bialaphos Biosynthetic Genes of *Streptomyces hygrosopicus*: Molecular Cloning and Characterization of the Gene Cluster," *Mol. Gen. Genet.*, 205, 42–50 (1986).

Nelson, T., "New Horses for Monocot Gene Jockeys," *The Plant Cell*, 2, 589 (1990).

Neuffer, "Growing Maize for Genetic Purposes," Maize for Biological Research, Plant Mol. Biol. Assoc., pp. 19–30 (1988).

Odell, J., et al., "Identification of DNA Sequences Required for Activity of the Cauliflower Mosaic Virus 35S Promoter," *Nature, 313*, 810–811 (1985).

Ohta, Y., "High–Efficiency Genetic Transformation of Maize by a Mixture of Pollen and Exogenous DNA," *Proc. Nat. Acad. Sci. USA, 83*, 715–719 (1986).

Ozias–Akins, P., et al., "In vitro regeneration and genetic manipulation of grasses," *Physiol. Plant*, 73, 565–569 (1988).

Ozias–Akins, P., et al., "Progress and Limitations in the Culture of Cereal Protoplasts," *Trends in Biotechnol.*, 2, 119–123 (1984).

Phillips, R. L., et al., "Cell/Tissue Culture and In Vitro Manipulation," In: *Corn and Corn Improvement*, 3rd edition, Sprague, G. F., et al., (eds.), Agronomy Soc. Amer., pp. 345–387 (1988).

Pochlman, J. "Breeding Corn (Maize)," In: *Breeding Field Crops*, 3rd edition, AVI Publishing Co., Westport CN, pp. 469–471, 477–481 (1988).

Potrykus, I., "Gene Transfer to Cereals: An Assessment," Bio/Technol., 8, 535–542 (Jun. 1990).

Potrykus, I., "Gene Transfer to Cereals: an Assessment," *Trends Biotechnol.*, 7, 269–273 (Oct. 1989).

Potrykus, I., et al., "Callus formation from stem protoplasts of corn (*Zea mays L.*)" *Mol. Gen. Genet.*, 156, 347–350 (1977).

Prioli, L. M., et al., "Plant Regeneration and Recovery of Fertile Plants from Protoplasts of Maize (*Zea mays L.*)," Bio/Technol, 7, 589–594 (Jun. 1989).

Rhodes, C. A., et al., "Genetically Transformed Maize Plants from Protoplasts." *Science, 240*, 204–207 (Apr. 8, 1988).

Rhodes, C. A., et al., "Plant Regeneration from Protoplasts Isolated from Embryogenic Maize Cell Cultures," *Bio/Technol.*, 6, 56–60 (Jan. 1988).

Rhodes, C. A., "Corn: From Protoplasts to Fertle Plants," Bio/Technol, 7, 548 (Jun. 1989).

Sanford, J. C., et al., "Biolistic Plant Transformation," *Physiol. Plant*, 79, 206–209 (1990).

Sanford, J. C., et al., "Attempted Pollen–Mediated Plant Transformation Employing Genomic Donor DNA," *Theor. appl. Genet.*, 69, 571–574 (1985).

Sanford, J. C., et al., "Delivery of Substances into Cells and Tissues using a Particle Bombardment Process," *Paticulate Sci. Technol.*, 5, 27–37 (1987).

Schmidt, A., et al., "Media and environmental effects of phenolics production from tobacco cell cultures," *Chem. Abstracts, 110*, p. 514, Abstract No. 230156z (1989).

Shillito, R. D., et al., "Regeneration of Fertile Plants From Protoplasts of Elite Inbred Maize," *Bio/Technol.* 7, 581–587 (Jun. 1989).

Smith, R., et al., "Shoot apex explant for transformation," *Plant Physiol.*, 86, p. 108, Abstract No. 646 (1988).

Spencer et al., "Bialaphos Selection of Stable Transformations from Maize Cell Culture," *Theor. Appl. Genet.*, 79, 625–631 (May 1990).

Spencer, T. M., et al., "Selection of Stable Transformants from Maize Suspension Cultures using the Herbicide Bialophos," Poster presentation, FASEB Plant Gene Expression Conference, Copper Mountain, Colorado (Aug. 8, 1989).

Thompson, C., et al., "Characterization of the Herbicide–Resistance Gene *bar* from *Streptomyces hygroscopicus*," *EMBO J.*, 6, 2519–2523 (1987).

Tomes, D. T., et al., "Transgenic Tobacco Plants and their Progeny Derived by Microprojectile Bombardment of Tobacco Leaves," *Plant Mol. Biol.*, 14, 261–268 (Feb. 1990).

Twell, D., et al., "Transient Expression of Chimeric Genes Delivered into Pollen by Microprojectile Bombardment of *Plant Physiol.*, 91, 1271–1274 1989).

Ulian, E., et al., "Transformation of Plants via the Shoot Apex," *In Vitro Cell. Dev. Biol.*, 9, 951–954 (1988).

Vasil, V., et al., "Plant Regeneration from Friable Embryonic Callus and Cell Suspension Cultures of *Zea mays L.*," *J. Plant Physiol.*, 124, 399–408 (1986).

Walbot, V., et al., "Molecular genetics of corn," In: *Corn and Corn Improvement*, 3rd edition, Sprauge, G. F. et al., (eds.), American Soc. Agronomy, Madison, WI, pp. 389–430 (1988).

Wang, Y., et al., "Transient Expression of Foreign Genes in Rice, Wheat and Soybean Cells Following Particle Bombardment," *Plant Mol. Biol.*, 11, 433–439 (1988).

Weising, K., et al., "Foreign Genes in Plants: Transfer, Structure, Expression and Applications," *Ann. Rev. Genet.*, 22, 421–478 (1988).

White, J., et al., "A Cassette Containing the bar Gene for *Streptomyces hygroscopicus*: a Selectable Marker for Plant Transformation," *Nuc. Acid. Res.*, 18, 1062 (1989).

Armstrong et al. *Plants* "Establishment & maintenance of friable, embryogenic maize callus & the involvement of L–proline." vol. 164 pp. 207–214 (1985).

Klein et al. *Biotechnology* "Factors influencing Gene Delivery into *Zea Mays* cells by High–velocity Microprojectiles" vol. 6 pp. 559–563 (1988).



FIG. 1A

FIG. 1B



FIG. 2A

FIG. 2B

FIG. 3A



1.6Kb ⟶

1Kb ⟶

FIG. 3B

**U.S. Patent**          Jul. 23, 1996          Sheet 5 of 10          5,538,880

PH1  Ro  PLANTS

PROBES:

PHYGI1: 35S Pm  Adh INT      HYG        NOS

Bam HI  Pst I  Bam HI

FIG.  4A



FIG. 4B

**U.S. Patent**          Jul. 23, 1996          Sheet 7 of 10          **5,538,880**

PH1 R1 GENERATION

PROBES:

PHYGI1:   35S Pm   Adh INT   HYG   NOS

Bam HI  Pst I  Bam HI

## FIG. 5A



FIG. 5B



FIG. 5C

**U.S. Patent**    Jul. 23, 1996    Sheet 9 of 10    **5,538,880**

FIG. 6A







**FIG. 6B**

5,538,880

| 1 | 2 |

# METHOD FOR PREPARING FERTILE TRANSGENIC CORN PLANTS

This is a division of application Ser. No. 07/974,379, filed Nov. 10, 1992, which is a continuation of application Ser. No. 07/467,983, filed Jan. 22, 1990, abandoned.

## BACKGROUND OF THE INVENTION

This invention relates to fertile transgenic plants of the species *Zea mays* (oftentimes referred to herein as maize or corn). The invention further relates to producing transgenic plants via particle bombardment and subsequent selection techniques which have been found to produce fertile transgenic plants.

Genetic engineering of plants, which entails the isolation and manipulation of genetic material (usually in the form of DNA or RNA) and the subsequent introduction of that genetic material into a plant or plant cells, offers considerable promise to modern agriculture and plant breeding. Increased crop food values, higher yields, feed value, reduced production costs, pest resistance, stress tolerance, drought resistance, the production of pharmaceuticals, chemicals and biological molecules as well as other beneficial traits are all potentially achievable through genetic engineering techniques. Once a gene has been identified, cloned, and engineered, it is still necessary to introduce it into a plant of interest in such a manner that the resulting plant is both fertile and capable of passing the gene on to its progeny.

A variety of methods have been developed and are currently available for the transformation of various plants and plant cells with DNA. Generally these plants have been dicotyledonous, and some success has been reported with certain of the monocotyledonous cereals. However, some species have heretofore proven untransformable by any method. Thus, previous to this discovery, no technology had been developed which would permit the production of stably transformed *Zea mays* plants in which the transforming DNA is heritable thereof. This failure in the art is well documented in the literature and has been discussed in a number of recent reviews (Potrykus, 1989; Weising et al., 1988; Cocking et al., 1987).

European Patent Publns. 270,356 (McCabe et al.) and 275,069 (Arntzen et al.) describe the introduction of DNA into maize pollen followed by pollination of maize ears and formation of seeds. The plants germinated from these seeds are alleged to contain the introduced DNA, but there is no suggestion that the introduced DNA was heritable, as has been accomplished in the present invention. Only if the DNA introduced into the corn is heritable can the corn be used in breeding programs as required for successful commercialization of transgenic corn.

Graves et al. (1986) claims *Agrobacterium*-mediated transformation of *Zea mays* seedlings. The alleged evidence was based upon assays known to produce incorrect results.

Despite extensive efforts to produce fertile transformed corn plants which transmit the transforming DNA to progeny, there have been no reported successes. Many previous failures have been based upon gene transfer to maize protoplasts, oftentimes derived from callus, liquid suspension culture cells, or other maize cells using a variety of transformation techniques. Although several of the techniques have resulted in successful transformation of corn cells, the resulting cells either could not be regenerated into corn plants or the corn plants produced were sterile (Rhodes et al.

1988). Thus, while maize protoplasts and some other cells have previously been transformed, the resulting transformants could not be regenerated into fertile transgenic plants.

On the other hand, it has been known that at least certain corn callus can be regenerated to form mature plants in a rather straightforward fashion and that the resulting plants were often fertile. However, no stable transformation of maize callus was ever achieved, i.e. there were no techniques developed which would permit a successful stable transformation of a regenerable callus. An example of a maize callus transformation technique which has been tried is the use of Agrobacterium mediated transfer.

The art was thus faced with a dilemma. While it was known that corn protoplast and suspension culture cells could be transformed, no techniques were available which would regenerate the transformed protoplast into a fertile plant. While it was known that corn callus could be regenerated into a fertile plant, there were no techniques known which could transform the callus, particularly while not destroying the ability of the callus both to regenerate and to form fertile plants.

Recently, a new transformation technique has been created based upon the bombardment of intact cells and tissues with DNA-coated microprojectiles. The technique, disclosed in Sanford et al. (1987) as well as in EPO Patent Publication 331,855 of J. C. Sanford et al. based upon U.S. Ser. No. 161,807, filed Feb. 29, 1988, has been shown effective at producing transient gene expression in some plant cells and tissues including those from onion, maize (Klein et al. 1988a), tobacco, rice, wheat, and soybean, and stable expression has been obtained in tobacco and soybeans. In fact, stable expression has been obtained by bombardment of suspension cultures of *Zea mays* Black Mexican Sweet (Klein et al. 1989) which cultures are, however, non-regenerable suspension culture cells, not the callus culture cells used in the process of the present invention.

No protocols have been published describing the introduction of DNA by a bombardment technique into cultures of regenerable maize cells of any type. No stable expression of a gene has been reported by means of bombardment of corn callus followed by regeneration of fertile plants and no regenerable fertile corn has resulted from DNA-coated microprojectile bombardment of the suspension cultures. Thus, the art has failed to produce fertile transformed corn plants heretofore.

A further stumbling block to the successful production of fertile transgenic maize plants has been in selecting those few transformants in such a manner that neither the regeneration capacity nor the fertility of the regenerated transformant are destroyed. Due to the generally low level of transformants produced by a transformation technique, the need for selection of the transformants is self-evident. However, selection generally entails the use of some toxic agent, e.g. herbicide or antibiotic, which can effect either the regenerability or the resultant plant fertility.

It is thus an object of the present invention to produce fertile, stably transgenic, *Zea mays* plants and seeds which transmit the introduced gene to progeny. It is a further object to produce such stably transgenic plants and seeds by a particle bombardment and selection process which results in a high level of viability for a few transformed cells. It is a further object to produce fertile stably transgenic plants of other graminaceous cereals besides maize.

## REFERENCES CITED

Armstrong, C L, et al. (1985) J Planta 164:207–214

Callis, J, et al. (1987) Genes & Develop 1:1183–1200

5,538,880

3

M. Bouan et al., (1983) Nuc Acids Res., 11:369(1983)

Chu, C C, et al. (1975) Sci Sin (Peking) 18:659–668

Cocking, F, et al. (1987) Science 236:1259–1262

DeWet et al. (1985) Proc Natl Sci USA 82:7870–7873

Freeling, J C, et al. (1976) Maydica XXI:97–112

Graves, A, et al. (1986) Plant Mol Biol 7:43–50

Green, C, et al. (1975) Crop Sci 15:417–421

Green, C E, (1982) Plant Tissue Culture, A Fujiwara ed. Maruzen, Tokyo, Japan pp 107–8

Green, C, et al. (1982) Maize for Biological Research, Plant Mol Biol Assoc, pp 367–372

Gritz, L, et al. (1983) Gene 25:179–188

Guilley, H, et al. (1982) Cell 30:763–773

Jefferson, R, et al. (1987) EMBO J 6:3901–3907)

Kamo, K, et al. (1985) Bot Gaz 146:327–334

Klein, T, et al. (1989) Plant Physiol 91:440–444

Klein, T, et al. (1988a) Proc Natl Acad Sci USA 85:4305–9

Klein, T, et al. (1988b) Bio/Technology 6:559–563

Lu, C, et al. (1982) Theor Appl Genet 62:109–112

McCabe, D, et al. (1988) Bio/Technology 6:923–926

Murashige, T, et al. (1962) Physiol Plant 15:473–497

Neuffer, M, (1982) Maize for Biological Research, Plant Mol Biol Assoc, pp 19–30

Phillips, R, et al. (1988) Corn and Corn Improvement, 3rd ed., Agronomy Soc Amer, pp 345–387

Potrykus, I (1989) Trends in Biotechnology 7:269–273

Rhodes, C A, et al. (1988) Science 240:204–7

Sambrook, J, et al (1989) Molecular Cloning: A Laboratory Manual, 2nd ed., Cold Spring Harbor Laboratory Press

Sanford, J, et al. (1987) J Part Sci & Techn 5:27–37

Weising, K, et al., (1988) Ann Rev of Genetics 22:421–478

Yanisch-Perron, L, et al. (1985) Gene 33:109–119

## SUMMARY OF THE INVENTION

The present invention relates to fertile transgenic *Zea mays* plants containing heterologous DNA, preferably chromosomally integrated heterologous DNA, which is heritable by progeny thereof.

The invention further relates to all products derived from transgenic *Zea mays* plants, plant cells, plant parts, and seeds.

The invention further relates to transgenic *Zea mays* seeds stably containing heterologous DNA and progeny which inherit the heterologous DNA.

The invention further relates to a process for producing fertile transgenic *Zea mays* plants containing heterologous DNA. The process is based upon microprojectile bombardment, selection, and plant regeneration techniques.

The invention further relates to a process for producing fertile transformed plants of graminaceous plants other than *Zea mays* which have not been reliably transformed by traditional methods such as electroporation, *Agrobacterium*, injection, and previous ballistic techniques.

The invention further relates to regenerated fertile mature maize plants from transformed embryogenic tissue, transgenic seeds produced therefrom, and R1 and subsequent generations.

4

In preferred embodiments, this invention produces the fertile transgenic plants by means of a DNA-coated microprojectile bombardment of clumps of friable embryogenic callus, followed by a controlled regimen for selection of transformed callus lines.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1A shows a map of plasmid vector pHYGI1 utilized in Example I. FIG. 1B shows the relevant part of pHYGI1 encompassing the HPT coding sequence and associated regulatory elements. The base pair numbers start from the 5' nucleotide in the recognition sequence for the indicated restriction enzymes, beginning with the EcoRI site at the 5' end of the CaMV 35S promoter.

FIG. 2A shows a map of plasmid vector pBII221 utilized in Example I.

FIG. 2B shows the relevant part of pBII221 encompassing the GUS coding sequence and associated regulatory elements.

FIG. 3A depicts the pHYGI-containing fragments employed as probes in a Southern blot analysis of PH1 callus.

FIG. 3B is a Southern blot of DNA isolated from the PH1 callus line and an untransformed control callus line.

FIG. 4A depicts the pHYGI-containing fragments employed as probes in a Southern blot analysis of PH1 RO plants.

FIG. 4B is a Southern blot of leaf DNA isolated from Ro plants regenerated from PH1 and untransformed callus.

FIG. 5A depicts the pHYGI-containing fragments employed as probes in a Southern blot analysis of PH1 R1 plants.

FIG. 5B and 5C are Southern blots of leaf DNA isolated from R1 progeny of PH1 Ro plants and untransformed Ro plants.

FIG. 6A depicts the pHYGI-containing fragments employed as probes in a Southern blot analysis of PH2 callus.

FIG. 6B is a Southern blot of DNA isolated from the PH2 callus line and an untransformed control callus line.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is directed to the production of fertile transgenic plants and seeds of the species *Zea mays* and to the plants, plant tissues, and seeds derived from such transgenic plants, as well as the subsequent progeny and products derived therefrom. The transgenic plants produced herein include all plants of this species, including field corn, popcorn, sweet corn, flint corn and dent corn.

"Transgenic" is used herein to include any cell, cell line, callus, tissue, plant part or plant which contains heterologous DNA that was introduced into plant material by a process of genetic engineering, or which was initially introduced into a plant species by such a process and was subsequently transferred to later generations by sexual or asexual cell crosses or cell divisions.

By "heritable" is meant that the DNA is capable of transmission through a complete sexual cycle of a plant, i.e. passed from one plant through its gametes to its progeny plants in the same manner as occurs in normal corn.