TAB

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SYNGENTA SEEDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C. A. No. 04-908 (SLR) |
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:

Peter E. Moll
John DeQ. Briggs
Scott E. Flick
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

John Lynch
Susan Knoll
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated: September 28, 2004

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market St.
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 facsimile

*Attorney for Monsanto Company and
Monsanto Technology LLC*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

NATURE AND STAGE OF THE PROCEEDING...................................................1

SUMMARY OF ARGUMENT ....................................................................................2

SUMMARY OF FACTS .............................................................................................2

ARGUMENT ...............................................................................................................6

I.    SYNGENTA'S AMENDED COMPLAINT IS A COMPULSORY
      COUNTERCLAIM AND SHOULD BE DISMISSED........................................6

      A.    Federal Rule of Civil Procedure 13(a) and Principles of *Res
            Judicata* Provide That Compulsory Counterclaims That Are Not
            Alleged in the First-Filed Litigation Must Be Dismissed...........................6

      B.    Syngenta's Antitrust Complaint is Logically Related to the Shah
            Patent Case And Must Be Dismissed..........................................................8

II.   IN THE ALTERNATIVE, SYNGENTA'S ANTITRUST CASE
      SHOULD BE CONSOLIDATED WITH THE SHAH PATENT CASE..............11

CONCLUSION............................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Applera Corp. v. Micromass UK Ltd.*, 204 F. Supp. 2d 724 (D. Del. 2002) .................... 11

*Arthrocare Corp. v. Smith & Nephew, Inc.*, C. A. No. 01-504-SLR, 2004
U.S. Dist. LEXIS 4579 (D. Del. Mar. 10, 2004) ................................... 10

*ASM America, Inc. v. Genus, Inc.*, C.A. No. 01-2190-EDL, 2002 WL
24444, (N.D. Cal. Jan. 9, 2002) .......................................................... 11

*Bell Telephone Laboratories, Inc. v. Int'l Bus. Machines Corp.*, 630 F.
Supp. 373 (D. Del. 1984) ................................................................ 9, 10

*Bristol Farmers Market and Auction Co. v. Arlen Realty & Development
Corp.*, 589 F.2d 1214 (3d Cir. 1978) ........................................ 6

*Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673
(3d Cir. 1964), *cert. denied*, 382 U.S. 812 (1965) ................................. 11

*Genentech, Inc. v. Regents of Univ. of California,* 143 F.3d 1446 (Fed. Cir.
1998), *vacated on other grounds*, 527 U.S. 1031 (1999) ..................................... 10

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3d Cir.
1961) ....................................................................................... 6, 7, 9

*Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S.
826 (2002) ................................................................................... 10

*In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314 (3d Cir. 2002) ............................... 4

*LaChemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164 (D. Del. 1973) ........................ 12

*Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661 (1944) ........................................ 7

*Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985) ................................................. 8

*Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928 (D. Del. 1991) .............................. 7

*Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298 (D. Del. 1981) ...................... 12

*S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, C. A.
No. 96-357-SLR, 1997 WL 86413 (D. Del. Feb. 14, 1997) .................................. 6

*Southern Constr. Co. v. Pickard*, 371 U.S. 57 (1962) ........................................ 6

*Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.*,
292 F.3d 384 (3d Cir. 2002) ................................................................... 6

*U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592 (Fed. Cir. 1995) ........................ 7

*Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380
     (Fed. Cir. 1983) ...................................................................................................... 12

*Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897 (D. Me. 1983) ...................... 11

*Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977) ........................................................... 8

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.,* 775
     F. Supp. 759 (D. Del. 1991) .................................................................................. 12

## RULES

Fed. R. Civ. P. 13(a) ............................................................................................. 2, 6, 9, 10

Fed. R. Civ. P. 42 ..................................................................................................... 2, 11, 12

## TREATISES

8 James W. Moore, *Moore's Fed. Practice* § 42.10[6] (3d ed. 1999) .............................. 12

9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2384 (2d ed.
     1995) ....................................................................................................................... 12

Defendants Monsanto Company and Monsanto Technology LLC (together "Monsanto") respectfully submit this brief in support of their motion to dismiss this action.

## INTRODUCTION

On May 12, 2004, Monsanto filed a patent-infringement action in this Court alleging that defendant Syngenta Seeds, Inc. ("Syngenta") has infringed U.S. Patent No. 4,940,835 by making, using, selling or offering for sale corn products exhibiting resistance to glyphosate herbicides. *Monsanto Co. v. Syngenta Seeds, Inc.*, C. A. No. 04-305-SLR, D.I. 1 at ¶ 11 (the "Shah Patent Case"). Syngenta has now filed this antitrust case, alleging that Monsanto's patent suit is "sham" and "baseless" and contending that Monsanto has monopolized or attempted to monopolize with respect to glyphosate resistant corn and certain other products.

Syngenta's antitrust claims are compulsory counterclaims that can be asserted only in the patent case; this antitrust case must therefore be dismissed. Alternatively, the Court should consolidate this case with the Shah Patent Case.

## NATURE AND STAGE OF THE PROCEEDING

The Shah Patent Case is the first filed action; the Complaint was filed on May 12, 2004. *See id.* D.I. 1. On June 9, 2004, Monsanto filed its First Amended Complaint. *See id.* D.I. 9. On July 1, 2004, Syngenta answered the Amended Complaint and asserted counterclaims. *See id.* D.I. 10. Monsanto replied to the counterclaims on July 21, 2004. *See id.* D.I. 12. This Court held a scheduling conference on September 23, 2004, and set the Shah Patent Case for trial in May 2006.

This Sherman Act § 2 antitrust case was filed on July 28, 2004. *See* D.I. 1. The Court granted the parties' stipulated motion extending to September 17, 2004, Monsanto's time to answer or otherwise respond to the complaint. *See* D.I. 6. On September 14, 2004, Syngenta filed its Amended Complaint. *See* D.I. 8.

## SUMMARY OF ARGUMENT

1.      Syngenta has filed its Sherman Act § 2 monopolization and attempted monopolization antitrust action in apparent retaliation to Monsanto's suit seeking to enforce its rights under the Shah Patent.  Inasmuch as Syngenta's antitrust claims are logically related to the Shah Patent Case, they should have been brought as compulsory counterclaims in that case pursuant to Federal Rule of Civil Procedure 13(a).  Because the antitrust claims improperly were filed as a separate suit, the Amended Complaint must be dismissed.

2.      If, for any reason, the Court finds that the Sherman Act § 2 claims that make up Syngenta's Amended Complaint are not compulsory counterclaims, it should exercise its broad discretion to consolidate this antitrust litigation with the Shah Patent Case pursuant to Federal Rule of Civil Procedure 42.  Such a course would promote the efficient administration of justice by avoiding duplicative litigation and the possibility of inconsistent judgments.

## SUMMARY OF FACTS[1]

Monsanto Company and Monsanto Technology LLC (together "Monsanto") are leading suppliers of agricultural products.  Amended Complaint, D.I. 8 at ¶ 18.  Among other things, Monsanto uses biotechnology to introduce into plant seeds new genetic traits with desirable characteristics.  *Id.* at ¶¶ 22–23.  Monsanto's patented glyphosate tolerance technology produces seed to which farmers can apply glyphosate herbicide for weed control without damage to their crops.  Without Monsanto's patented technology, farmers would be unable to use glyphosate for weed control because the herbicide would substantially impair crop yield.  *Id.* at ¶ 24.  Another Monsanto trait produces corn

---

[1]    This statement is based on Syngenta's complaint, the allegations of which are accepted as true for purposes of this motion only, and for no other purpose.

resistant to the European Corn Borer, a common corn pest ("ECB-resistant corn"). *Id*. at ¶¶ 34, 43.

On May 12, 2004, Syngenta AG, parent company of Syngenta Seeds, Inc., issued a press release stating that it had acquired intellectual property rights relating to "GA21"® glyphosate-resistant corn and claimed that the acquisition gave Syngenta "fast-track entry" into the glyphosate-resistant corn seed business. C. A. No. 04-908-SLR, D.I. 8 at ¶ 8. *See* Exhibit 1 hereto.[2]  Because GA21® corn cannot be produced without practicing Monsanto's Shah Patent (notwithstanding any GA21® intellectual-property rights Syngenta has or may have acquired), Monsanto filed suit in this Court alleging that Syngenta has infringed the Shah Patent. C. A. No. 04-305-SLR, D.I. 9 at ¶ 11.

In response, Syngenta filed the present action, alleging that Monsanto has engaged in monopolization or attempted monopolization relating to glyphosate-tolerant corn, European corn borer-resistant corn, and foundation corn seed.[3]  The first substantive allegation of Syngenta's antitrust complaint is that Monsanto's Shah Patent Case is "baseless" because certain statements alleged to have been made by Monsanto or its affiliates in prior patent litigation supposedly render the Shah Patent invalid or unenforceable against Syngenta with respect to GA21® glyphosate-tolerant corn.[4]  C. A. No. 04-908-SLR, D.I. 8 at ¶¶ 71–74. Syngenta's answer to Monsanto's First Amended Complaint in the Shah Patent Case makes the same contention as an alleged affirmative defense. C. A. No. 04-305-SLR, D.I. 10 at ¶¶ 17–24.[5]

---

[2]   The press release is also available at < http://www.syngenta.com/en/downloads/040512_e_GA21.pdf>.

[3]   According to the Amended Complaint, foundation corn seed lines are crossed to produce hybrid corn seed, which is planted by growers to produce commercial corn crops. D.I. 8 at ¶¶ 29–30.

[4]   GA21® is a registered trademark of Monsanto Technology LLC.

[5]   Monsanto is confident that the Court will reject both Syngenta's affirmative defense in the Shah Patent Case and its so-called "baseless litigation" claim in the antitrust case, but consideration of the merits is not necessary for purposes of the present motion.

The contention that the Shah Patent is invalid or unenforceable pervades Syngenta's antitrust Amended Complaint. In addition to the so-called "baseless litigation" claim, Syngenta alleges that statements made in Monsanto press releases and communications with seed companies concerning the Shah Patent suit and Monsanto's and Syngenta's respective intellectual property rights misrepresented Monsanto's patent position and disparaged Syngenta's. C. A. No. 04-908-SLR, D.I. 8 at ¶¶ 79–81; *see also id.* at ¶ 100. Notably, however, the Amended Complaint makes no allegation as to how the filing of a "sham" lawsuit has or would deter Syngenta, part of a company with $11 billion in assets and $6.6 billion in 2003 sales,[6] from proceeding with its business plans.

At an even more fundamental level, Syngenta's glyphosate-tolerant corn antitrust claim is wholly dependent on an initial determination that Syngenta's commercialization of GA21® corn would not violate Monsanto's patent rights. *See* C. A. No. 04-908-SLR, D.I. 8 at ¶ 64. If, as Monsanto has asserted and will show, Syngenta infringes the Shah Patent (or either of two other patents being asserted against Syngenta by Monsanto's subsidiary DeKalb Genetics Corp. in a pending suit in Illinois)[7] by making, using or selling GA21® corn, then Syngenta has no antitrust claim because none of the activity alleged in the Amended Complaint could possibly cause injury to Syngenta (or to competition).[8]

---

[6]    *See* Form 20-F of Syngenta AG for the Year Ending December 31, 2003, *available at* http://www.sec.gov/Archives/edgar/data/1123661/000095010304000439/mar1804_20f.ht m. A court may properly take judicial notice of documents filed with the Securities and Exchange Commission without converting a motion to dismiss into a motion for summary judgment. *See In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1331 (3d Cir. 2002); *see also* Exhibit 1.

[7]    *DeKalb Genetics Corp. v. Syngenta Seeds, Inc.*, C. A. No. 04 C 50323 (N.D. Ill., filed July 27, 2004); *see also* D.I. 8 at ¶¶ 75–77.

[8]    Syngenta is not selling a glyphosate tolerance trait and does not allege that it is. In addition, while Syngenta does allege that it intends to compete with Monsanto in the future, it does not allege that – even apart from its lack of licenses under Monsanto patents – it is able to do so. As Syngenta acknowledges, before it could enter the market, its products would need to pass several regulatory hurdles, likely having to pass muster

- 4 -

The patent issues likewise bear heavily on the second and third counts of Syngenta's antitrust Amended Complaint, relating to European corn-borer (ECB) resistant corn and corn foundation seed. The principal allegation of Syngenta's ECB-resistant corn claim[9] is that the license from Monsanto under which Syngenta produces ECB-resistant corn prevents Syngenta from offering "stacked" GA21®/ECB corn seed that is both glyphosate-tolerant and ECB-resistant. C. A. No. 04-908-SLR, D.I. 8 at ¶¶ 120–122. This Court's determination that Syngenta cannot make, use or sell GA21® corn without the right to practice Monsanto's Shah Patent (or the Illinois court's determination to the same effect regarding the patents there in suit) will require rejection of this contention without regard to any other circumstances. Similarly, Sygnenta's corn foundation seed claim specifically incorporates allegations concerning GA21® corn. C. A. No. 04-908-SLR, D.I. 8 at ¶¶ 126–27. Again, a determination that Syngenta cannot make, use or sell GA21® corn would require rejection of these claims.

In sum, if any of three patents (the Shah Patent or either of the two patents at issue in Illinois) are valid and enforceable, Syngenta has no antitrust claim as alleged since it would have no right to make, use or sell GA21® corn seed.

---

with the U.S. Department of Agriculture and the U.S. Environmental Protection Agency. Am. Compl. D.I. 8 at ¶ 141. Syngenta nowhere alleges that it has secured regulatory authorization to market any new product

[9]    Corn yields are adversely impacted by a number of insect pests. The European corn borer is a pest that ranges from the Atlantic Coast to the Rocky Mountains and from southern Canada to the Gulf Coast. It is very common and causes the greatest economic impact in the western Corn Belt, from Iowa and Minnesota through South Dakota and Nebraska. Crop damage is done by the larval stage insects, which feed on all parts of the corn plant except the roots. Monsanto's corn genetics that contain resistance to the European corn borer are sold under the trademark YieldGard® Corn Borer Corn. YieldGard® Corn Borer Corn was introduced by Monsanto in 1997.

## ARGUMENT

I.     **SYNGENTA'S AMENDED COMPLAINT IS A COMPULSORY COUNTERCLAIM AND SHOULD BE DISMISSED**

A.     **Federal Rule of Civil Procedure 13(a) and Principles of *Res Judicata* Provide That Compulsory Counterclaims That Are Not Alleged in the First-Filed Litigation Must Be Dismissed**

Federal Rule of Civil Procedure 13(a) requires that a party assert as counterclaims all claims that arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a); *see also Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). The Rule is "particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962). "A compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Bristol Farmers Market and Auction Co. v. Arlen Realty & Development Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978). Rule 13(a) "prevent[s] multiplicity of actions and … achieve[s] resolution in a single lawsuit of all disputes arising out of common matters." *Southern Constr. Co.*, 371 U.S. at 60.

The Third Circuit employs an expansive interpretation of the Rule 13(a) transaction or occurrence standard "to give effect to the policy rationale of judicial economy underlying Rule 13." *Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.*, 292 F.3d 384, 391 (3d Cir. 2002); *see S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, C. A. No. 96-357-SLR, 1997 WL 86413, *10 (D. Del. Feb. 14, 1997) (Exhibit 2 hereto) (noting Third Circuit's "liberal interpretation of the 'transaction or occurrence' standard"). The Third Circuit set forth the test in *Transamerica* as follows:

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." The concept

> of a "logical relationship" has been viewed liberally to promote judicial
> economy.    Thus, a logical relationship between claims exists where
> separate trials on each of the claims would "involve a substantial
> duplication of effort and time by the parties and the courts."

292 F.3d at 389–90 (internal citation and footnotes omitted); *see also Great Lakes*, 286

F.2d at 634.

A counterclaim is logically related to the opposing party's claim "[w]here

multiple claims involve many of the same factual issues, or the same factual and legal

issues, or where they are offshoots of the same basic controversy between the parties."

*Great Lakes*, 286 F.2d at 634.  This principle is particularly true at the intersection of the

patent and antitrust laws:  a subsequent action raising Sherman Act claims relating to a

party's enforcement of its intellectual-property rights will be barred.  The Federal Circuit

has held unambiguously that "the place to challenge litigation as sham is in the asserted

sham litigation." *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed. Cir.

1995).  This Court, too, has held so previously, distinguishing the ill-fitting *Mercoid*

*Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661 (1944).[10]  *See Rohm & Haas Co. v.*

*Brotech Corp.*, 770 F. Supp. 928, 933 (D. Del. 1991) ("the earlier suit has been brought

by the patent holder alleging infringement, and the subsequent suit has been filed by the

alleged infringer claiming antitrust violations and fraud. … [W]e find that the later filed

antitrust and fraud claims alleging fraud on the PTO are logically related to the patent

claims at issue in the earlier filed suit").[11]

---

[10]    In *Mercoid*, the Supreme Court held that where Mercoid had assisted another party in
defending against an earlier patent misuse claim without being a party to that case, it was
not thereafter precluded from bringing its own antitrust claim when it was sued on the
same patent, because the antitrust claim was merely a permissive counterclaim in the
earlier action.  Judge Roth noted that "*Mercoid* has been widely and severely criticized,
and most courts have narrowed it to its facts," distinguishing it as involving a claim of
patent *misuse*, rather than a dispute over patent *validity*, and pointing to the fact that
Mercoid was never an actual party to the first action.  *Rohm & Haas Co. v. Brotech
Corp.*, 770 F. Supp. 928, 931–32 (D. Del. 1991).

[11]    Moreover, the bar on claim splitting requires that Syngenta's antitrust claims be
dismissed in their entirety.  Principles of judicial economy bar Syngenta from pursuing

**B.    Syngenta's Antitrust Complaint is Logically Related to the
Shah Patent Case And Must Be Dismissed**

Syngenta's Amended Complaint is logically related to the Shah Patent Case. As

described above, the very first substantive allegation of Syngenta's Amended Complaint

is that Monsanto's first-filed patent suit is "baseless" and "sham" litigation. *See* D.I. 8 at

¶¶ 71–74, 162, 165. This contention is based on the very same (erroneous) theory

asserted by Syngenta as an affirmative defense in the Shah Patent Case.

Moreover, Syngenta's antitrust complaint acknowledges that its GA21® claims

critically depend on whether the GA21® intellectual property rights it alleges it has

acquired are sufficient to enable it to market GA21® corn. *See* D.I. 8 at ¶ 64 (claiming

that, as a result of its purchase of IPR from Bayer CropScience, "Syngenta now has the

right to introduce and market its own GA21[®] product and to license others"). Thus, as

Syngenta's own Amended Complaint makes clear, Syngenta's ability to market and

license GA21® corn – already at issue in the Shah Patent Case – is a central issue in its

antitrust case as well.

As discussed above, the second and third counts of Syngenta's Amended

Complaint (relating to ECB-resistant corn and corn foundation seed) similarly depend to

a substantial degree on a determination whether Syngenta can market and license GA21®

---

antitrust claims based upon sham litigation in one case, while pursuing identical antitrust
claims based on other factual allegations as defenses or counterclaims in another. It
would be duplicative and unreasonable for two juries to address common issues (such as
market definition and market power) in two different actions. Accordingly, the Third
Circuit has made clear that a plaintiff has "no right to maintain two separate actions
involving the same subject matter at the same time in the same court and against the same
defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). The proper remedy
to prevent such claim splitting here must be dismissal of the duplicative case without
prejudice, allowing Syngenta to assert its counterclaims in the patent action. *See id.*; *see
also Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) ("When a plaintiff files a
second complaint alleging the same cause of action as a prior, pending, related action, the
second complaint may be dismissed.").

corn notwithstanding the Shah Patent Case. Syngenta alleges that "Monsanto's intention in filing its two patent, infringement cases was to maintain its monopolies in glyphosate-tolerant and ECB-resistant corn traits and further its attempt to monopolize the market for foundation corn seeds." *See* D.I. 8 at ¶ 78. The claim of sham litigation (and the related disparagement claim) forms thus not only the heart of Syngenta's first count, but also bears heavily on the second and third, counts of Syngenta's Amended Complaint.

Finally, the logical relationship between the two lawsuits is further evident from the Amended Complaint's prayer for relief. Syngenta seeks "injunctive relief prohibiting defendants ... from continuing violations of Section 2 of the Sherman Act," by which it can only refer to its sole allegation of such a § 2 violation: Monsanto's filing of the Shah Patent Case. *See* D.I. 8 at ¶ D.

In these circumstances, there is no doubt that Monsanto's first-filed patent case and Syngenta's antitrust case involve "many of . . . the same factual and legal issues" and "are offshoots of the same basic controversy between the parties." *Great Lakes*, 286 F.2d at 634; *see Brotech*, 770 F. Supp. at 933. As a result, Syngenta's antitrust claims are compulsory counterclaims in the Shah Patent Case, and Syngenta's antitrust suit must be dismissed.

Furthermore, "[a]ll of the parties necessary for complete adjudication were not only within the [this] court's jurisdiction, they were already before the court as parties in the [first-filed patent] action," thus further favoring the conclusion that the present claims should have been raised as counterclaims under Rule 13(a) in Monsanto's previous action. *Bell Telephone Labs., Inc. v. Int'l Bus. Machines Corp.*, 630 F. Supp. 373, 378 (D. Del. 1984) (holding that Rule 13(a) is "fully applicable" to patent interference proceedings).

Finally, Syngenta's strategic decision to file the case at bar as a separate action is aimed at avoiding the appellate forum in Monsanto's Shah Patent Case. As this Court noted in *Bell*, "[w]hen a party violates Rule 13(a) by bringing a second action rather than

filing a compulsory counterclaim in the first action, '[n]ormally, the first suit should have priority, absent a showing of a balance of convenience in favor of the second action.'" *Bell Telephone*, 630 F. Supp. at 679 (concluding that "the interests of justice favor awarding RCA [plaintiff in the first-filed patent suit], not Bell, its choice of forum").

Syngenta can point to no such "convenience" factor in its favor for purposes of the *trial* forum, for the fora of Monsanto's and its own action are identical. With respect to the *appellate* forum, the Supreme Court's mandate against forum-shopping at the appellate level – especially in connection with patent suits – weighs strongly in Monsanto's favor. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 840 (2002) ("At that appellate level, Congress sought to eliminate forum shopping and to advance uniformity in the interpretation and application of federal patent law").

Were Syngenta's present suit not dismissed and permitted to go forward separately from Monsanto's underlying patent action, there would be a significant likelihood that both judgments would be appealed to *different* Circuits, *i.e.*, to the Third and Federal Circuits, respectively. *See Genentech, Inc. v. Regents of Univ. of California*, 143 F.3d 1446, 1456 (Fed. Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999) (noting that "the underlying event is the validity and infringement of the patent," and holding district court did not exceed its discretionary authority in treating antitrust claims arising from alleged patent infringement as compulsory counterclaims, thereby prohibiting party from bringing antitrust claims in other courts). The potential for two contradictory and irreconcilable outcomes in each appeal presents an additional reason for dismissing the present suit for failure to bring it as a Rule 13(a) counterclaim.

If Monsanto prevails in the Shah Patent Case, there will be no need for discovery or other proceedings relating to Syngenta's GA21® claims – a ruling in Monsanto's favor will eliminate the claim altogether. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, C. A. No. 01-504-SLR, 2004 U.S. Dist. LEXIS 4579, *3–4 (D. Del. Mar. 10, 2004)

- 10 -

(Exhibit 3 hereto) (dismissing antitrust "sham litigation" counterclaims following determination in patent trial that patents were valid and enforceable and that patent suit was therefore not baseless). It is inconceivable to Monsanto what Syngenta expects to argue or litigate as a remaining claim if the Shah Patent is held valid and enforceable in the concurrent infringement action. *See Applera Corp. v. Micromass UK Ltd.*, 204 F. Supp. 2d 724 (D. Del. 2002) (dismissing similar antitrust counterclaims after jury verdict of patent validity and infringement, based upon argument that verdict proved objective merit of the litigation).

Moreover, a ruling in Monsanto's favor in the patent litigation would eliminate all or virtually all of Syngenta's ECB corn and corn foundation seed claims. *See ASM America, Inc. v. Genus, Inc.*, C. A. No. 01-2190-EDL, 2002 WL 24444, *7 (N.D. Cal. Jan. 9, 2002) (Exhibit 4 hereto) ("Resolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether"); *Ventrex Laboratories, Inc v. AB Fortia*, 223 U.S.P.Q. 897, 899 (D. Me. 1983) (finding it "very probable that decision concerning the validity, enforceability of the ... patent will resolve many of the questions presented by the antitrust complaint and quite clearly those related to allegations of patent misuse").

## II.    IN THE ALTERNATIVE, SYNGENTA'S ANTITRUST CASE SHOULD BE CONSOLIDATED WITH THE SHAH PATENT CASE

If, for any reason, the Court were to conclude that Syngenta's antitrust claims are not compulsory counterclaims in the Shah Patent Case, the Court should exercise its broad discretion to consolidate the cases pursuant to Federal Rule of Civil Procedure 42. *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964), *cert. denied*, 382 U.S. 812 (1965) (district courts have broad powers to consolidate actions involving common questions of law or fact if, in their discretion, such consolidation would facilitate the administration of justice).

Consolidation plainly is appropriate. Common questions of law and fact abound, as set forth in detail above. Legally and factually, the antitrust suit is wholly dependent

upon questions at issue in the Shah Patent Case – circumstances strongly favoring consolidation. *See* 8 James W. Moore, *Moore's Fed. Practice* § 42.10[6] (3d ed. 1999); 9 C. Wright & A. Miller, *Federal Practice and Procedure* at § 2384 (2d ed. 1995).

"Consolidation will encourage orderly pretrial discovery, save witness time and expense, avoid duplicitous filings, and eliminate the risk of inconsistent results between two proceedings." *Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991). On the other hand, if the two cases were to proceed separately, the inevitable result would be inconvenience and additional expense of the type that the power to consolidate cases is intended to avoid. *See Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (D. Del. 1981); *LaChemise Lacoste v. Alligator Co., Inc.*, 60 F.R.D. 164, 175 (D. Del. 1973); *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380 (Fed. Cir. 1983) (affirming district court's consolidation of patent and antitrust actions and stay of the antitrust claims). In fact, if Monsanto prevails in the Shah Patent Case, there will be no need for discovery or other proceedings relating to Syngenta's antitrust claims.

## CONCLUSION

For all of these reasons, this Court should dismiss the Amended Complaint on the

ground that the claims are compulsory counterclaims in the Shah Patent Case. If, for any

reason, the Court finds that Syngenta's antitrust claims are not compulsory

counterclaims, then this case should be consolidated with the Shah Patent Case.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Peter E. Moll
John DeQ. Briggs
Scott E. Flick                                  By:
HOWREY SIMON ARNOLD & WHITE, LLP                    Richard L. Horwitz (#2246)
1299 Pennsylvania Ave., N.W.                         Hercules Plaza, 6th Floor
Washington, DC  20004                               1313 N. Market St.
(202) 783-0800                                      Wilmington, DE 19801
(202) 383-6610 facsimile                            (302) 984-6000
                                                    (302) 658-1192 facsimile

John Lynch
Susan Knoll                                     *Attorney for Monsanto Company and*
HOWREY SIMON ARNOLD & WHITE, LLP                *Monsanto Technology LLC*
750 Bering Drive
Houston, TX 77057
(713) 787-1400
(713) 787-1440 facsimile

Kenneth A. Letzler
Jonathan I. Gleklen
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000
(202) 942-5454 facsimile

Dated:  September 28, 2004

652216

- 13 -

TAB

6

RECEIVED

OCT 1 3 2004

IN THE UNITED STATES DISTRICT COURT    MICHAEL W. DOBBINS
FOR THE NORTHERN DISTRICT OF ILLINOIS    CLERK, U. S. DISTRICT COURT
WESTERN DIVISION

| | |
|---|---|
| DEKALB GENETICS CORPORATION, | Civil Action No. 04 C 50323 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SYNGENTA SEEDS, INC. and SYNGENTA BIOTECHNOLOGY, INC., | Judge Philip G. Reinhard |
| Defendants. | Magistrate Judge P. Michael Mahoney |

## DEKALB GENETICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIS CASE

**I.    INTRODUCTION**

Plaintiff, DEKALB Genetics Corporation ("DEKALB") opposes Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.'s ("Defendants'") Motion To Dismiss.[1] Contrary to Defendants' assertions, the allegations of DEKALB's complaint satisfy the Federal Rules of Civil Procedure and the pleading requirements in the Seventh Circuit.

Defendants argue that DEKALB's patent infringement Complaint does not satisfy the notice pleading requirements of the Federal Rules of Civil Procedure, and should therefore be dismissed, because:

(1)    DEKALB does not – purportedly – allege that Defendants use the processes claimed in the process patents-in-suit to make Defendants' glyphosate-resistant corn (Defendants' Motion at 1, 3, 6-7);

(2)    DEKALB has not alleged that Defendants' infringing activity occurred within the United States, an element that DEKALB supposedly needed to plead under § 271(a) of the Patent Code (Defendants' Motion at 8);

---

[1] In addition to those reasons of opposition to Defendants' Motion To Dismiss, which DEKALB sets forth herein, DEKALB also objects to Defendants' Motion for failure to follow Local Rule 5.3(b), which required Defendants to obtain a date of presentment not more than 10 business days following the date the motion was delivered to the court. Defendants filed their Motion on September 20, 2004 and set the date of presentment for October 13, 2004, more than the ten days required by the Local Rule.

(3)     DEKALB has not alleged that Defendants' infringing activity occurred during the term of the patents-in-suit, another element that DEKALB supposedly needed to plead under § 271(a) (Defendants' Motion at 8); and

(4)     DEKALB has not alleged the knowledge, intent and other elements of an inducement and contributory infringement claim under §§ 271(b) and (c), elements that DEKALB supposedly needed to plead under the notice pleading rules of the Federal Rules (Defendants' Motion at 9-14).

Defendants are wrong. They are wrong in what they contend DEKALB has and has not pleaded. More significantly, they are wrong on what the Federal Rules of Civil Procedure require DEKALB to plead to set forth a patent infringement claim.

Moreover, Defendants *know* their arguments summarized above are wrong. As shown later herein, Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. each recently filed separate patent infringement complaints, one against DEKALB and Monsanto and another against Monsanto, wherein they pled even fewer facts than those set forth in DEKALB's Complaint in this case. If Defendants believed that their complaints sufficiently apprised DEKALB (and Monsanto) of the nature of Defendants' patent infringement claims in those other cases so as to satisfy the Federal Rules, then Defendants cannot now, without being disingenuous, feign that they do not have sufficient notice of DEKALB's infringement claims from the allegations of the Complaint in this case.

## II.     STANDARD FOR REVIEWING DEKALB'S COMPLAINT AND DEFENDANTS' MOTION TO DISMISS

Defendants are correct that in reviewing Rule 12(b)(6) motions to dismiss, courts must apply the rules of law of the regional circuit. (Defendants' Motion at 5) *See Phonometrics v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 793 (Fed. Cir. 2000). The law in the Seventh Circuit thus applies in this case.

In the Seventh Circuit, a motion to dismiss "challenges the sufficiency of the complaint", not the merits of the lawsuit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th

Cir. 1998). On a Rule 12(b)(6) motion, the court presumes the allegations in the complaint are true and "must read the complaint liberally, evaluate all well-pleaded allegations, and draw all reasonable inferences in favor of the plaintiff." *Allen v. City of Zion*, 2003 WL 22078374 at *1 (N.D. Ill. 2003) (*citing Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996)); *see also Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 495 (7th Cir. 1993) (in reviewing motion to dismiss, court must take the allegations raised as true). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

As to the sufficiency of the pleaded facts, the Supreme Court has held: "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff can meet this test by pleading conclusions and not facts, so long as the conclusions provide the defendant "with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995).

Finally, the United States Supreme Court in *Conley* specifically suggested that the sample complaint forms attached to the Federal Rules of Civil Procedure meet the pleading standard it enunciated in *Conley*. 355 U.S. at 47 ("The illustrative forms appended to the Rules plainly demonstrate this [the required pleading standard]."). This is consistent with Rule 84 of the Federal Rules of Civil Procedure, which expressly declares that the attached forms to the Federal Rules "are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate."

3

DM_US\8063695.v1

III.   **ARGUMENT**

    A.    **DEKALB's Patent Infringement Complaint Satisfies The Federal Rules Of Civil Procedure And Should Not Be Dismissed Under Rule 12(b)(6)**

        1.    **DEKALB's Complaint Contains The Essential Allegations Of A Patent Infringement Claim**

Defendants are correct that the patents-in-suit contain process or method claims. Defendants are wrong, however, in arguing that DEKALB's Complaint limits the accused infringement only on Defendants' corn products and not also on Defendants' method of making its accused corn products. (Defendants' Motion at 1, 3, 6-7) Defendants further err by arguing that DEKALB's Complaint does not satisfy the pleading standards of the Federal Rules of Civil Procedure. DEKALB will show what its Complaint alleges, and how those allegations satisfy the pleading requirements in the Seventh Circuit.

At its simplest, DEKALB's Complaint asserts the following essential allegations:

*Ownership.* DEKALB's Complaint asserts that DEKALB owns and has the right to bring suit for infringement of the patents-in-suit, U.S. Patent Nos. 5,538,880 ("the '880 patent") and 6,013,863 ("the '863 patent"). (Complaint at ¶¶ 9 and 15)

*Defendants Named.* DEKALB's Complaint names the Defendants, Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc. (Complaint at ¶¶ 2-3)

*Infringed Patents Identified.* DEKALB's Complaint asserts that one or more claims of the '880 patent and the '863 patent are infringed by Defendants. (Complaint at ¶¶ 11, 16, Defendants do not have the right to practice the claims of the patents-in-suit; and ¶¶ 12, 17, Defendants have infringed and continue to infringe one or more claims of the patents-in-suit)

4

*Means of Infringement Stated.*   DEKALB's Complaint asserts the means by which Defendants infringe: infringement through *making and using* corn without a license to the patent claims. (Complaint at ¶¶ 7, 12-13, 17-18)   .

On this point, Defendants are clearly wrong in arguing DEKALB's Complaint does not accuse Defendants' processes of infringing DEKALB's patents. (Defendants' Motion at 1) DEKALB's allegation that the infringement consists in Defendants' *making* glyphosate-resistant corn without a license under the patents-in-suit clearly brings within the scope of the Complaint Defendants' *method* or process of so making the corn. Equally as clear, DEKALB's allegation that the infringement also consists in Defendants' *using* corn made without a license under the patents-in-suit also brings within the scope of the Complaint infringement through use of the corn product itself that was made using the patented processes under 35 U.S.C. § 271(g), a provision that Defendants' Motion completely ignores. *See, e.g., Eli Lilly and Co. v. American Cyanamid Co.,* 82 F.3d 1568, 1572 (Fed. Cir. 1996) (it is an act of infringement to sell or use within the United States a product that is made by a process patented in the United States); *SGS-Thomson Microelectronics, Inc. v. International Rectifier Corp.,* 1994 WL 374529 (Fed. Cir. 1994) (concurring opinion) (it is an act of infringement to import or sell in the United States a product made within or without the United States by a patented process). Both the method of making corn and use of Defendants' corn product are at issue in DEKALB's Complaint.

Defendants also are clearly wrong in arguing that "Syngenta has not and will not use such processes." (Defendants' Motion at 1) As a matter of law, this argument has no place or relevance in a motion to dismiss because the Court must assume the truth of the matters asserted by DEKALB in its Complaint. *See Triad Associates,* 10 F.3d at 495 (in reviewing motion to dismiss, court must take the allegations raised as true). DEKALB has asserted, as shown above,

5

that Defendants infringe by their making – i.e., the methods used in making – and using

glyphosate-resistant corn. For purposes of Defendants' Motion, therefore, Defendants cannot

contest this allegation.[2]

*Patent Laws Cited.* DEKALB's Complaint asserts that Defendants' infringing acts

violate the Patent Laws of the United States, Title 35. (Complaint at ¶ 4) These laws include 35

U.S.C. §§ 271(a) (direct infringement), 271(b) (inducing infringement), 271(c) (contributory

infringement), and 271(g) (direct infringement by using a product made by a patented process).

As shown below, Seventh Circuit law does not require DEKALB to plead anything

beyond the five elements noted above, although DEKALB's Complaint certainly includes

additional facts beyond those needed to raise a patent infringement claim. (Complaint at ¶¶ 6-

19)

### 2.    DEKALB's Infringement Allegations Satisfy Seventh Circuit Law For A Patent Infringement Complaint

Courts in the Seventh Circuit follow the recent Federal Circuit decision of *Phonometrics*

*v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 793 (Fed. Cir. 2000), which outlines the

---

[2] While not necessary to the resolution of Defendants' Motion to Dismiss, DEKALB also notes that Defendants cannot deny their infringement with the simple argument that they did not make the original R0 plant tissue (i.e., the first plant tissue transformed with the gene that conferred glyphosate resistance). This is because the claims in both the '880 patent and the '863 patent not only cover the method of making R0 plant tissue, but also the method of creating glyphosate-resistant progeny corn plants derived from R0 plant tissue. (See, e.g., claim 4 of the '880 patent and claim 5 of the '863 patent) In the prior litigation in this court, brought by DEKALB, Defendants' predecessors Ciba-Geigy and Northrup King argued that the term progeny in the patents-in-suit (including the '880 patent) should be limited to the R1 generation, which was made before the patents-in-suit issued. This Court, however, held that "'progeny' in the claims of the patents in suit, [ ] means the R1 and succeeding generations." (*See* Exhibit 1, Report and Recommendation of Special Master Regarding Claim Construction at 43; Exhibit 2, Order Adopting Recommendation)

Defendants admit that they intend to introduce for commercial sale glyphosate-resistant corn seed in 2005. (Defendants' Motion at 1) This necessarily means that they are now engaged in the process of making glyphosate-resistant progeny in order to produce sufficient quantities of corn seed for commercial sale next year. This constitutes infringement of the patents-in-suit. While the claims of the patents-in-suit may also cover other activities of Defendants, the extent of Defendants' infringement is not relevant to the Motion to Dismiss.

basic allegations needed to state a patent infringement claim. *See One World Technologies, Ltd. v. Robert Bosch Tool Corporation*, 2004 WL 1576696 at *2 (N.D. Ill. July 13, 2004) (following *Phonometrics*); *Jackson v. Illinois Bell Telephone Co.*, 2002 WL 1466796 at *3 (N.D. Ill. July 8, 2002) (same).

Specifically, in the Seventh Circuit, a patent infringement plaintiff need only allege the following "to state a claim for patent infringement" and "to put the defendant on notice":

(1)     ownership of the asserted patent;

(2)     the names of the accused defendants;

(3)     the patent numbers that defendant allegedly infringes;

(4)     the means by which defendants infringe; and

(5)     a statement showing the infringement claim is brought under the patent laws of the United States.

*One World*, 2004 WL 1576696 at *2. *See also Jackson*, 2002 WL 1466796 at *3.

For example, the plaintiff in *One World* alleged the above five elements, and nothing more, in its patent infringement suit. 2004 WL 1576696 at *2. The defendant, Robert Bosch Tool, in a motion to dismiss argued that the complaint was deficient because the only thing the plaintiff alleged under the fourth element (i.e., the means element) was that defendant was "directly infringing, inducing infringement by others, and/or contributorily infringing ... by making, using, selling, and/or offering to sell products falling within the scope of such claims...." *Id.* The court rejected the motion to dismiss, holding that no specific facts were needed to further describe the means of infringement under *Phonometrics*, and that the basic five assertions found in One World's complaint satisfied the Federal Rules for a complaint asserting direct infringement, infringement by inducement and contributory infringement. *Id.*

7

The accused infringer in *Jackson* made the same unsuccessful Rule 12(b)(6) motion against a similar patent infringement complaint. There, the court specifically found that the plaintiff's allegation that the "defendants ...infringed the patent in suit either directly or through acts of contributory infringement or inducement" by selling voice mail systems satisfied the fourth element (i.e., the means element) of the *Phonometrics* test and was sufficient to defeat defendant's Rule 12(b)(6) motion. 2002 WL 1466796 at *2-3. *See also Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2001 WL 184804 at *3 (N.D. Ill. Feb. 20, 2001) (court rejected defendant's argument that plaintiff's failure to state facts supporting an infringement by inducement claim rendered the claim futile; court held plaintiff's assertion of infringement by inducement – albeit a legal conclusion – was sufficient under the federal pleading standards without any further asserted facts).

Defendants do not disagree that – as already outlined above – DEKALB's Complaint contains each of these five *Phonometrics* elements (i.e., DEKALB's Complaint states DEKALB is the owner of the patents-in-suit, names the Defendants, identifies the relevant patent numbers that Defendants infringe, states the means of infringement, and states that the suit is brought under the United States patent laws).

The Syngenta Defendants, however, attempt to side-step the *Phonometrics* test and the guiding *One World* and *Jackson* cases by arguing that (1) these cases do not apply to DEKALB's Complaint because DEKALB is asserting process or method patent claims and the patents involved in One World and Jackson were apparatus, not method, claims, and (2) opinions from other circuits and opinions from older Northern District of Illinois decisions allegedly require a plaintiff to plead facts to support all the elements a patentee must prove at trial to show inducement and contributory infringement. (Defendants' Motion at 7 n.3 & 9-14)

8

DM_US\8063695.v1

Defendants' distinctions are unpersuasive and not controlling. First, asserting a process or method patent instead of an apparatus patent is not a distinction of any relevance to Rule 8 of the Federal Rules of Civil Procedure or to the *Phonometrics* rule. Neither *Phonometrics* nor any other case that DEKALB could find holds that the Federal Rules of Civil Procedure impose a higher burden on a plaintiff patentee when asserting a process patent as opposed to an apparatus patent. That argument raised by Defendants is not persuasive or rational.

Moreover, Defendants know that the apparatus-process patent distinction has no legal merit. They cite in their Motion an older Northern District of Illinois case (decided before *Phonometrics*), *Coolsavings.com v. Catalina Marketing Corp.*, 1999 WL 342431 (N.D. Ill. May 14, 1999), which expressly held that a patent plaintiff sufficiently pleads a case of direct infringement of a process or method patent by simply asserting that defendant infringes such patent by making and using a system – without including all the other factual detail that Defendants would have this Court impose upon DEKALB. (Defendants' Motion at 10 n.5) Clearly, the *Phonometrics* rule applies in the Seventh Circuit, regardless of whether the plaintiff is asserting an apparatus or process patent.

Second, Defendants' argument that cases from other circuits or pre-*Phonometrics* opinions from the Northern District of Illinois requiring a more detailed factual pleading for inducement or contributory infringement claims also do not help Defendants now.[3] As stated earlier, decisions from other circuits do not govern this Court's review of Defendants' 12(b)(6)

---

[3] Defendants cite a District of Minnesota case, a District of Nevada case, a District of Massachusetts case, and an Eastern District of New York as well as older cases from the Northern District of Illinois (*Coolsavings, Ristvedt-Johnson, Inc. v. Peltz*, 1991 WL 255691 (N.D. Ill. 1991) and *Waters v. Solarex Corp.*, 1992 WL 4454 (N.D. Ill. 1992). (Defendants' Motion at 10-13.) Most of these older cases appear to require more detailed allegations of inducement or contributory infringement. The exception, however, is the *Waters* case, which is entirely inapplicable as it concerned the inducement of trademark infringement, not patent infringement.

9

motion and are not controlling. *See Phonometrics*, 203 F.3d at 793 (in reviewing Rule 12(b)(6)

motion, courts should apply law of regional circuit). Further, the standard of apparently more

detailed pleadings for inducement and contributory infringement claims required by the older

Northern District of Illinois cases has been effectively renounced by the more recent Northern

District of Illinois cases issued since *Phonometrics*. Those recent cases have clearly adopted

*Phonometrics'* holding as the law applicable to patent infringement pleadings for inducement

and contributory infringement claims. *Cf. Alexander v. Missouri State Life Ins. Co.*, 68 F.2d 1, 3

(7th Cir. 1933) (where inconsistencies exist between court opinions, the later adjudications

should be followed in preference to the earlier ones).

Thus, this leaves Defendants without any controlling authority to challenge DEKALB's

Complaint, and therefore, this Court should deny Defendants' Motion. This result should

especially apply when considering (1) the patent infringement forms attached to the Federal

Rules of Civil Procedure and approved by the United States Supreme Court and the Federal

Rules of Civil Procedure, and (2) the patent infringement complaints that Defendants themselves

recently filed against DEKALB and Monsanto. These are discussed below.

### B.    Form 16 Of The Federal Rules Of Civil Procedure Further Shows That DEKALB's Complaint Satisfies The Federal Rule Pleading Requirements

As stated earlier, the United States Supreme Court in *Conley* specifically stated that the

sample complaint forms attached to the Federal Rules of Civil Procedure meet the pleading

standard it enunciated in *Conley*. 355 U.S. at 47 ("The illustrative forms appended to the Rules

plainly demonstrate this [the required pleading standard]."). Rule 84 of the Federal Rules of

Civil Procedure expressly says this.

The Federal Rules include Form 16, which is styled "Complaint for Patent Infringement,"

a copy of which is appended below:

10

---

### FORM 16.   COMPLAINT FOR INFRINGEMENT OF PATENT

1.   Allegation of jurisdiction.

2.   On May 16, 1934, United States Letters Patent No. _____ were duly and legally issued to plaintiff for an invention in an electric motor; and since that date plaintiff has been and still is the owner of those Letters Patent.

3.   Defendant has for a long time past been and still is infringing those Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court.

4.   Plaintiff has placed the required statutory notice on all electric motors manufactured and sold by him under said Letters Patent, and has given written notice to defendant of his said infringement.

Wherefore plaintiff demands a preliminary and final injunction against continued infringement, an accounting for damages, and an assessment of interest and costs against defendant.

[Amended January 21, 1963, effective July 1, 1963.]

---

The Court will note that Form 16 is similar to the elements that the Federal Circuit said were sufficient for a patent infringement pleading in *Phonometrics* – except Form 16 does not contain any reference to the U.S. patent laws under which the complaint is filed.  Nor does Form 16 include all of the other allegations that Defendants' Motion argues to be necessary in DEKALB's Complaint, including allegations that Defendants' infringement occurred within the United States, during the term of the patent, or with knowledge and intent, etc.

Nonetheless, Rule 84 of the Federal Rules of Civil Procedure and the United States Supreme Court in *Conley* both support the proposition that Form 16, although barebones in what it alleges, satisfies the Federal Rules pleading requirements.  That being so, DEKALB's more detailed Complaint, which at least contains all the elements found in Form 16, must necessarily also satisfy the Federal Rules.

### C.    Defendants Recently Filed Patent Infringement Complaints Against DEKALB and Monsanto in Other Courts That Were More Sparsely Pleaded Than DEKALB's Complaint

If all of the above were not enough to discredit Defendants' arguments, DEKALB has attached as Exhibits 3 and 4 to this Opposition the complaints filed by Syngenta Biotechnology,

11

Inc. and Syngenta Seeds, Inc., respectively, against Monsanto and DEKALB in Delaware. The Court will observe that in both of these complaints, Defendants' allegations of direct infringement, infringement by inducement, and contributory infringement are sparser than DEKALB's Complaint in this case. In both complaints Defendants recite identical language to assert infringement:

> Upon information and belief, each of the Defendants is directly infringing one or more of the claims of the [patents] by making, using, selling or offering to sell the claimed subject matter, and is contributing to and actively inducing the infringement of one or more claims of the [patents] by others.

(Exhibit 3, First Amended Complaint For Patent Infringement in Civil Action No. 02-1326-GMS, at ¶ 11; Exhibit 4, Complaint for Patent Infringement in Civil Action No. 02-1331, at ¶¶ 16-18)  Indeed, Defendants' complaints do not identify any particular product that relates to the "claimed subject matter" for the patent infringement claim they raise.  They also do not plead that (1) any alleged infringing activity occurred in the United States, (2) the alleged infringing activities occurred during the term of the patents, or (3) the knowledge, intent and other elements a plaintiff must prove at trial for inducement or contributory infringement claims.

The Court will also observe that Defendants asserted method claims in both complaints. (Exhibit 5, U.S. Patent No. 6,051,757, all of claims 1-20; Exhibit 6, U.S. Patent No. 6,075,185, claims 11-12 and 24-25)[4]

If Defendants believed that their allegations in Exhibits 3 and 4 – which asserted infringement of method claims – satisfied the Federal Rules of Civil Procedure, and if Defendants believed that those allegations apprised Monsanto and DEKALB of the nature of Defendants' patent infringement claims in those cases, then Defendants' attack against

---

[4] DEKALB has attached only the first page and the claims of each asserted patent from each case, but has omitted the voluminous other material contained within the patents.

DEKALB's Complaint now can be nothing less than disingenuous. For this additional reason, this Court should deny Defendants' Motion.

## IV.    CONCLUSION

This Court should deny Defendants' Motion to Dismiss. DEKALB has adequately pleaded infringement under Title 35 of the United States Code, including infringement that would fall under §§ 271(a), (b), (c) and (g). DEKALB's infringement allegations *exceed* those required in the Seventh Circuit. Indeed, DEKALB's Complaint has more detailed allegations than the sample patent infringement complaint found in Form 16 to the Federal Rules of Civil Procedure and Defendants' own patent infringement complaints recently filed against DEKALB and Monsanto. In short, Defendants' Motion to Dismiss is legally unsound, at best, and disingenuous, at worst, and should be denied.

Dated:  10/13/04

Respectfully submitted,

By
John J. Holevas
Illinois Bar No. 06193197
WILLIAMS & McCARTHY
321 West State Street
Rockford, IL  61101
(815) 987-8900

John F. Lynch
Thomas A. Miller
Susan K. Knoll
HOWREY SIMON ARNOLD & WHITE, LLP
750 Bering Drive
Houston, TX  77057
(713) 787-1400

ATTORNEYS FOR PLAINTIFF
DEKALB GENETICS CORPORATION

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of DEKALB GENETICS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIS CASE were served on this the 13th day of October, 2004, as follows:

David C. Van Dyke                                  **VIA HAND DELIVERY**
Ronald D. Fiet
CASSIDAY, SCHADE & GLOOR, LLP
20 N. Wacker Drive, Suite 1040
Chicago, IL 60606


Don O. Burley                                      **VIA FEDERAL EXPRESS**
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315

14