**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | 0 5 - 3 5 5 |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04 C 50323 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| SYNGENTA SEEDS, INC. and | ) | Magistrate Judge P. Michael Mahoney |
| SYNGENTA BIOTECHNOLOGY, INC., | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF SYNGENTA'S**
**CONTINGENT MOTION TO TRANSFER**

## I.    INTRODUCTION

Monsanto is now simultaneously pursuing two related patent-infringement cases against

Syngenta—one in Delaware over what are called the "Shah" patents, which Monsanto filed *first*,

and the present case in this district over the "Lundquist" patents.[1]  Had Monsanto filed the Shah

case in this district, Syngenta would not have objected to this Court determining the merits of the

dispute concerning both the Shah and Lundquist patents.  Syngenta, however, *does* object to

having to defend two lawsuits based on the same allegedly infringing activity in two different

courts at the same time.

It was Monsanto, not Syngenta, that first chose Delaware as the forum for this dispute,

and it is thus Delaware where this dispute should be tried.  In DeKalb's Opposition to Syngenta's

Contingent Motion to Transfer ("Opp. Br."), Monsanto does not dispute that (1) Monsanto, and

---

[1] The Shah patents are U.S. Patent Nos. 4,940,835 and 5,188,642 (the '835 and '642

patents).  The Lundquist patents are U.S. Patent Nos. 5,538,880 and 6,013,863 (the '880  and

'863 patents).



not Dekalb, is the real party in interest; (2) that Monsanto voluntarily chose to sue Syngenta in Delaware months *before* filing this lawsuit in Illinois; and (3) that both lawsuits involve *exactly the same allegedly infringing subject matter*—glyphosate-resistant, genetically-modified ("transgenic") GA21 corn.

Rather than offering any explanation why it chose to sue Sygenta for the same allegedly infringing conduct in different jurisdictions, Monsanto opposes Syngenta's transfer motion primarily on three grounds. First, Monsanto argues that it would be much more efficient for the two actions to proceed simultaneously in different courts. On its face, however, this statement makes no sense. To bolster its position, Monsanto argues that if the present case stays in this jurisdiction, discovery will be expedited because of the previous discovery in the *Pioneer* case. Yet Syngenta has requested production in the Delaware case of all the discovery that was taken in the prior *Pioneer* case in this jurisdiction, and there is no reason why such discovery cannot be used in Delaware just as easily as in this forum. Monsanto also argues that the prior claim construction of the '880 patent reached by this Court will expedite the case. The prior claim construction, however, does not resolve, or even address, the key claim construction issues in the instant case. Further, to the extent this Court's prior claim construction is relevant, the Delaware court is free to consider it in light of the relevant issues.

Second, Monsanto argues that while this Court had expertise with one of the patents in suit (the '880 patent) in the previous *Pioneer* case, the Delaware court allegedly has no experience with the technology or the patents at issue. However, transfer should not be based on which court has the greater "expertise" in the technology and patents involved. Having the dispute between the parties before a single court is much more decisive of judicial efficiency than any supposed judicial expertise in particular technology and patents.

Moreover, in all fairness, this Court's last contact with the '880 patent was in 1999—more than five years ago. In contrast, numerous patent cases involving the genetic transformation of crops have been litigated in Delaware since 1999. Just *last month*, in fact, Chief Judge Robinson, who is handling the Shah case with which the present litigation could be consolidated, presided over a two-week patent trial between Monsanto and Syngenta that involved issues concerning the transformation of corn to express a foreign protein (insect resistance in that particular case). Indeed, one of the issues in that trial was the ability to transform corn in the 1980's, and the work of Dr. Lundquist was discussed extensively.

Third, Monsanto argues that the Lundquist patents at issue here are unrelated to the Shah patents, and thus that transfer would not increase judicial efficiency. As demonstrated below, however, this assertion is simply wrong. The underlying technology of the Shah and Lundquist patents is the same, the claims are very similar, and the legal issues concerning the infringement and validity of the patents are closely intertwined. In fact, the evidence of Syngenta's alleged infringing activity will be identical in the two cases. Moreover, as described in detail below, trying both lawsuits in the same jurisdiction would eliminate the very real possibility of conflicting decisions concerning the infringement and validity of the patents at issue in the two jurisdictions.

Clearly, either this Court or the Delaware court is well qualified to address the technical and patent issues presented in this case, and neither should be favored over the other on that basis. Rather, for all the reasons advanced by Syngenta here and in its opening memorandum, the interests of justice strongly favor adjudicating these related disputes in one forum rather than two. Syngenta's motion to transfer this case to the District of Delaware should accordingly be granted.

II.    **ARGUMENT**

    A.    **It Would Be Much More Efficient to Litigate the Present Dispute in One Forum—*Not Two***

        1.    **Transfer to Delaware Would Avoid Inconsistent Rulings**

There is a very real risk that if the Shah and Lundquist cases were tried in two jurisdictions, there would be inconsistent rulings concerning substantive issues. For example, as discussed in detail below (*see* section II(C) at pages 9-11), one of the issues in both cases will be *when* one of ordinary skill in the art could successfully transform corn cells to include genes that enhance glyphosate resistance. There would be a risk of two fact finders making conflicting findings concerning the state of the art, knowledge in the art, the definition of one of ordinary skill, and other questions pertaining to patent validity. Likewise, there could be inconsistent factual determinations concerning conception, diligence, and reduction to practice of the Shah and Lundquist inventions. In addition, as Monsanto concedes, the alleged infringing activity is the same in both litigations. Thus, two different juries will have to determine the scope and nature of Syngenta's activities concerning the marketing of glyphosate-resistant transgenic GA21 corn. The possibility of two different courts (or juries) arriving at different determinations for all of these complex technical issues should be avoided at all costs. If one court were in charge of all the pretrial proceedings, discovery disputes, and trial, the risk of inconsistent judgments would be eliminated. *See, e.g., Conseco Life Ins. Co. v. Reliance Ins. Co.*, No. 99 C 5020, 2001 WL 1631873, at *4 (N.D. Ill. Dec. 14, 2001) (holding that the "transfer of venue of this case would also serve the purpose of avoiding the possibility of inconsistent judgments," and stating that this Court has a "strong policy in favor of transferring a case to a district where a related action is pending") (citations omitted); *Abbott Labs.*, No. 98 C 7102, 1999 WL 162805, at *2 (N.D. Ill. Mar. 15, 1999); *Carus Corp. v. Greater Texas Finishing Corp.*, 1992 WL 22691, *2

(N.D. Ill. Jan. 31, 2002) (relied on by Monsanto and stating that "[f]ailure to transfer this case would result in duplicative judicial effort *requiring two courts* to resolve a number of the same issues.") (emphasis added).  Monsanto's failure to even address these points demonstrates the weakness of its position.[2]

> ## 2.    Discovery in the *Pioneer* Case Could Be Used in Delaware Just As Easily As in This Forum

Monsanto argues that if the case stays in this jurisdiction, discovery will be expedited because of the previous discovery in the *Pioneer* case.  *See* Opp. Br. at 7.  This argument is difficult to understand.  Both Syngenta and Monsanto have already requested production in the Delaware case of all the discovery that was taken in the *Pioneer* case in this jurisdiction, and there is no reason why such discovery could not be used in Delaware just as easily as in this forum.  Indeed, Syngenta and Monsanto have tentatively agreed to a provision in a stipulated protective order that either party in the Delaware action can use discovery from the prior *Pioneer* case, and that it will be covered by the protective order in the Delaware case.

> ## 3.    Claim Construction in the *Pioneer* Case Did Not Resolve, or Even Address, the Primary Claim Construction Issues in the Instant Case

In opposing transfer, Monsanto states that "discovery in this case will be more focused" because "the claims of the '880 patent were construed" in the *Pioneer* case.  *See* Opp. Br. at 8.  However, whichever court presides over the present case will have to construe the '880 claims in

---

[2] Moreover, as Syngenta noted in its opening memorandum (at page 8), there is also the possibility of inconsistent decisions regarding discovery disputes.  The discovery sought by Monsanto in both cases is essentially identical, and much of the discovery is plainly irrelevant to any issue in dispute between the parties.  Further, Monsanto suggests in its opposition paper that it will attempt to restrict Syngenta's ability to take depositions of the individuals involved in the Lundquist family of patents, even though such discovery is relevant to both cases.  Opp. Br. at 7. Thus, it is important that these discovery disputes be adjudicated in one forum, and that only one court determine the permissible scope of discovery.

light of the issues raised by the *current* activity accused as infringing—not the past accusations of infringement, which Monsanto acknowledges are different. *See* Opp. Br. at 7. And Monsanto's opposition simply fails to address the fact that there are decisive claim construction issues that were not addressed, much less resolved, in the *Pioneer* case. *See* Memorandum in Support of Syngenta's Contingent Motion to Transfer ("Syn. Supp. Mem.") at 10-11.

For example, apparently relying on the Special Master's interpretation of the term "progeny," Monsanto argues that at least claim 4 of the '880 patent and claim 5 of the '863 patent cover Syngenta's making of progeny plants, because "Syngenta is now engaged in the process of making glyphosate-resistant progeny plants in order to produce sufficient quantities of corn seed for commercial sale." Opp. Br. at 6 n.1. The definition of progeny, however, *does not control the analysis.*

Claim 4 of the '880 patent and claim 5 of the '863 patent are dependent claims, which depend from and include the limitations of claim 1 of the '880 and '863 patents, respectively. Thus, to infringe those claims, Syngenta would have to carry out each of the steps of the independent *and* dependent claims. Here, however, Monsanto does not even allege that Syngenta ever carried out *any* of the steps recited in claim 1 of either the '880 or '863 patent. Accordingly, Syngenta cannot infringe those claims. This issue was not addressed in the Special Master's Report. Indeed, the '863 patent was not even involved in the *Pioneer* case.[3]

---

[3] Monsanto also improperly relies on the "Report and Recommendation of Special Master Regarding Pioneer's Motion for Summary Judgment That U.S. Patent No. 5,484,956 is Not Infringed." *See* Opp. Br. at 6 n.1. Monsanto argues that merely performing the final step of performing a process after the issuance of the patent is sufficient to find infringement under 35 U.S.C. § 271(g). The patent at issue in that particular summary judgment motion, however, was a product patent, *not a process patent as in suit here. And the difference between product claims and process claims was a point of distinction relied on by the Special Master. See* Opp. Br. Ex. D. Thus, the Special Master was not analyzing the case law on the application of § 271(g) to process claims; he specifically distinguished that situation.

Furthermore, since the claims were construed in the *Pioneer* case over five years ago, there have been numerous cases decided by the Federal Circuit concerning the issue of claim construction. Indeed, the Federal Circuit has recently decided to take *en banc* numerous claim construction issues that may have a direct bearing on this case. Ex. 1. Monsanto's suggestion that a pretrial claim construction made five years ago, which concerned different products (and was never entered as a final judgment), would be dispositive on the issues in this case is simply wrong.

Finally, Syngenta is not trying to evade the prior claim construction, as Monsanto argues. If this case is transferred to Delaware, the Delaware court will no doubt take the prior claim construction report of the Special Master into account, just as this Court would, to the extent it is relevant. Thus, for all the above reasons, the prior claim construction does not warrant having two litigations concerning the same accused product proceed at the same time in two different jurisdictions.

**B.      The Delaware Court Has Familiarity with the Technology and Issues**

Monsanto suggests that this case should not be transferred because the District of Delaware has no experience with the technology or the Lundquist patents. *See* Opp. Br. at 9. Initially, Syngenta notes that transfer should not be based on which court has the greater "expertise" in the technology and patents involved. Having the dispute between the parties before a single court is much more decisive of judicial efficiency.

Further, Monsanto's argument is factually wrong. Less than one month ago, Monsanto and Syngenta had a trial in Delaware concerning patents covering insect-resistant transgenic corn. The trial was completed on December 14, 2004, before Judge Robinson—the same judge now presiding over the Shah case. And one of the issues before the Delaware court involved the

date when it became possible to transform corn. The Delaware court thus possesses extensive recent experience with the parties and corn-transformation technology.

Moreover, and contrary to Monsanto's assertions, Dr. Lundquist's work was the subject of considerable testimony at the Delaware trial.[4] There, Syngenta alleged that Monsanto infringed three Syngenta patents—U.S. Patent Nos. 6,075,185, 6,320,100, and 6,403,865. The jury found that Monsanto infringed the '865 patent, but that the patent was invalid under 35 U.S.C. § 102. Monsanto relied on two pieces of prior art to support its anticipation position: (1) U.S. Patent No. 6,331,665 ("the '665 patent") to *Lundquist* and Walters (assigned to DeKalb) and (2) a PCT publication WO 91/10725 by *Lundquist*, Walters, and Kirihara, entitled "Fertile transgenic corn plants." *See* Ex. 4, Tr. 2767-71.

The specification of the Lundquist '665 patent states that "the invention . . . relates to producing fertile transgenic maize plants via particle bombardment and subsequent selection techniques," and further discusses methods for producing transgenic corn plants by bombardment. Ex. 5, '665 patent, col. 1, lines 16-20. Indeed, the '665 patent and the two Lundquist patents involved here—the '880 and '863 patents—all issued from continuation-in-part applications from the *same* patent application (no. 07/467,983). *See* Ex. 6, Ex. 7. Additionally, the '880 and '863 patents are cited on the face of the '665 patent. Clearly, therefore, the Delaware court has had highly pertinent recent experience with Dr. Lundquist's work and the technology at issue in this case. Accordingly, this Court should reject Monsanto's argument that the Delaware court is "unfamiliar" with the technology at issue.[5]

---

[4] Attached as Ex. 3 are indices pages of the trial transcripts from the Delaware trial that demonstrate the frequency of citation to the work of Lundquist and transformation technology.

[5] The Delaware court is also familiar with glyphosate-resistant corn technology based on its involvement in *Monsanto Co. v. Aventis CropScience S.A.*, No. 00-1013 (D. Del. filed Dec. 4, (continued…)

### C.    The Lundquist and Shah Patents Are Closely Related

Monsanto argues throughout its brief that the legal issues implicated by the Lundquist and Shah patents are distinct and unrelated.  According to Monsanto, the Lundquist patents "focus on the steps for making fertile transgenic corn" while the Shah patents "focus on the components of the claimed chimeric gene."  *See* Opp. Br. at 5, 9-10.  Monsanto thus argues that judicial efficiency would not be increased by having the cases tried in one forum.

Monsanto's position simply makes no sense, however.  In both lawsuits, Monsanto alleges that Syngenta is committing acts of patent infringement through its marketing in the United States of glyphosate-resistant transgenic GA21 corn.  Thus, Monsanto is asserting that the Lundquist and Shah patents all cover the *same* allegedly infringing product.  In view of its own parallel legal assertions in the two cases, Monsanto cannot possibly argue that the Lundquist and Shah patents describe and claim "unrelated" subject matter.

In addition, there are overlapping claim-construction issues.  For example, claim 1 of the Lundquist '863 patent recites a process for producing a fertile transgenic corn plant in which DNA is expressed so as "*to impart glyphosate resistance to said transgenic plant . . . .*"  Ex. 7, col. 30, lines 3-4.  Similarly, claim 1 of the Shah '835 patent recites a gene that includes a promoter adapted to cause sufficient expression of a fusion polypeptide "*to enhance the glyphosate resistance of a plant cell transformed with the gene.*"  Ex. 8, col. 32, lines 46-47.  Thus, both of these asserted patent claims require that the expressed DNA transform the plant

---

(…continued)
2000) (J. Robinson).  There, Monsanto alleged that Aventis infringed U.S. Patent Nos. 4,535,060 and 5,094,945 by making and using glyphosate-resistant corn.  The case settled after nearly three years of litigation.  *See also Monsanto Co. v. Mycogen Plant Sciences, Inc.*, C.A. No. 96-133-RRM (D. Del.).

cells to provide glyphosate resistance. One court, not two, should therefore interpret these closely related patents to avoid the very real possibility of conflicting judgments.

Further, the validity issues concerning the Lundquist and Shah patents are, in fact, closely related. Syngenta has asserted in the Delaware case, for example, that the Shah patents are invalid for lack of enablement under 35 U.S.C. § 112 because it was not technically possible to genetically transform corn until several years after the Shah patents were filed in 1985. The Lundquist patents in suit here support Syngenta's position. In the Lundquist patents—which were not filed until *1990*—DeKalb specifically admits that before Lundquist's discovery, "no technology had been developed which would permit the production of stably transformed *Zea mays* plants [corn] in which the transforming DNA is heritable thereof." '880 patent (Ex. 6), col. 1, lines 37-41; '863 patent (Ex. 7), col. 1, lines 38-41. Thus, the Lundquist patents speak directly to the inability of persons skilled in the art to genetically transform corn before Lundquist's invention and establish the non-enablement of the earlier-filed Shah patents.

Likewise, during a different trial in which Monsanto was attempting to extol the inventive contribution of Drs. Lundquist and Walters, Monsanto argued "that despite scientific efforts which had been successful with things like tomatoes, potatoes, and soybeans, *scientists were unable to transform corn.*" *See* Ex. 9 (opening statement) at 83 (emphasis added). In addition, as mentioned above, about three months ago, the issue again came up again during a *Markman* hearing in the District of Delaware—the court which Monsanto argues here has little experience with the technology at issue in this litigation. *See* Opp. Br. at 2. There, Monsanto argued again that "in 1989 . . . Syngenta . . . had no earthly idea how to transform corn." Ex. 2, Tr. at 149:20-22. Monsanto then argued that it was "Dekalb" (Lundquist and Walters) that was the first party to successfully transform corn. *Id.* at 150:14-24.

10

In short, therefore, there can be no question that the Lundquist and Shah patents are closely related. Indeed, Syngenta expects that Dr. Lundquist's testimony will be important to establishing the invalidity of the Shah patents.

**D.    Monsanto's Choice of Forum Should Be Given Little Weight**

Monsanto argues in its opposition that its decision to bring this suit in DeKalb's home forum should be entitled to substantial weight. *See* Opp. Br. at 11-12 (citing *Gallery House, Inc. v. Yi*, 587 F.Supp. 1036, 1040 (N.D. Ill. 1984), and *Store Decor Division of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd.*, 767 F.Supp. 181 (N.D. Ill. 2003)). *Gallery House* and *Store Decor*, however, are readily distinguishable, since neither case deals with the situation where a defendant moves to transfer to another jurisdiction *where a related case filed by the same plaintiff is already pending*. Instead, *Gallery House* and *Store Decor* address the situation where the defendant moved to transfer the case to a *new* jurisdiction.

This difference is critical. That is, the issue here is not whether weight should be given to the plaintiff's choice of forum, but whether a plaintiff has the right to ignore issues of efficiency and judicial economy and have what is essentially one dispute litigated in two forums rather than one. And the answer to that question should be clear—the plaintiff has no such right. Here, therefore, Monsanto's choice to bring its *second* suit in *this* forum should hold little or no weight because it *first* brought suit, concerning essentially the same subject matter, in Delaware.

Monsanto also twists Syngenta's position in arguing that Syngenta admitted that the District of Delaware is not a more convenient forum than the Northern District of Illinois. *See* Opp Br. at 11. In its opening brief, Syngenta argued that in analyzing the issue of convenience to the parties, it makes little sense to compare the convenience of trying a case in Delaware with the convenience of trying a case in Illinois because, as things stand now, the parties are litigating in *both* districts. *See* Syn. Supp. Mem. at 12-13. Thus, Syngenta argued that if the parties'

dispute could be resolved in one forum, witnesses and documents could be brought to one location instead of two, efficiency would be increased, the litigation costs of both parties would be reduced, and the disruption of both sides' businesses would be minimized. Transferring the present case to Delaware would thus increase the overall convenience of *both* parties. Monsanto fails to refute this argument.

Finally, Monsanto's citation of *Clear Lam Packaging, Inc. v. Rock-Tenn Co.*, No. 02 C 7491, 2003 WL 22012203, at *4 (N.D. Ill. Aug. 22, 2003), for the proposition that where the convenience of the parties and witnesses does not significantly support one venue, deference should be given to the plaintiff's choice of forum (Opp. Br. at 12), should be rejected. The court in *Clear Lam* actually granted transfer to a venue where related patent litigation was pending, finding that "any inconvenience [that the plaintiff] may experience as a result of the transfer of this case is 'relatively insignificant in comparison to the interest of justice served'" by transferring the case to a jurisdiction where related patent litigation was pending. *Id.* at **4-6.

### III.    CONCLUSION

In sum, the interests of justice significantly favor proceeding with respect to the Shah and Lundquist patents in one district rather than two. Accordingly, for all the above reasons, Syngenta respectfully urges that if this Court denies its motion to dismiss, the Court should transfer this action to the District of Delaware.

Respectfully submitted,

CASSIDAY, SCHADE & GLOOR

David C. Van Dyke
Ronald D. Fiet
20 N. Wacker Dr.
Suite 1040
Chicago, Illinois 60606
(312) 641-3100
Attorney No. 6204705

Of counsel:

Don O. Burley
Michael J. Flibbert
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
(202) 408-4000

Attorneys for Defendants
Syngenta Seeds, Inc. and
Syngenta Biotechnology, Inc.

Dated: January 13, 2005

13

27477/10588/DVD/CMW/JH                                                    ARDC# 6230902

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| DEKALB GENETICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04 C 50323 |
| | ) | |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| SYNGENTA SEEDS, INC., et al., | ) | Judge Michael P. Mahoney |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |

## NOTICE OF FILING

TO:    See Attached Service List

**PLEASE TAKE NOTICE** that we have on January 13, 2005 filed Syngenta's Reply Memorandum in Support of Syngenta's Contingent Motion to Transfer with the Clerk of the United States District Court for the Northern District of Illinois, a copy of which is herewith served upon you.

By: _____
One of the Attorneys for SYNGENTA SEEDS, INC. and
SYNGENTA BIOTECHNOLOGY, INC.

David C. Van Dyke
Ronald D. Fiet
CASSIDAY, SCHADE & GLOOR, LLP, LLP
120 W. State Street - Ste. 401
Rockford, Illinois    61101
(815) 962-8301

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF WINNEBAGO )

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn upon oath deposes and states that she served a copy of the foregoing document to whom it is directed via UPS Overnight Mail on January 13, 2005.

27477/10588/DVD/CMW/JH
DeKalb Genetics Corporation v. Syngenta Seeds, Inc. and Syngenta Biotechnology, Inc.

## SERVICE LIST

John J. Holevas, Esq.
Williams and McCarthy
321 West State Street
Rockford IL 61101
(815) 987-8900
(815) 968-0019 (Fax)

Thomas A. Miller
Howrey Simon Arnold
 & Whire, LLP
750 Bering Drive
Houston TX 77057
(713) 787-1400
(713) 787-1440 (Fax)

Michael J. Flibbert
Finnegan, Henderson, Farabow
  Garrett & Dunner, L.L.P.
1300 I STreet, N.W.
Washington DC 20005
(202) 408-4493
(202) 408-4400 (Fax)
E-Mail: michael.flibbert@finnegan.com

6652789 WRANARD.BLANEGRA

TAB

1

# United States Court of Appeals for the Federal Circuit

03-1269,-1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendants-Cross Appellants.

Carl F. Manthei, Attorney at Law, of Boulder, Colorado, filed a petition for rehearing en banc for plaintiff-appellant.

Mark W. Fischer, Faegre & Benson LLP, of Boulder, Colorado, filed a response to the petition for defendants-cross appellants. With him on the response was Scott Holwick.

Appealed from:    United States District Court for the District of Colorado

Judge Marcia S. Krieger

# United States Court of Appeals for the Federal Circuit

03-1269, -1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendants-Cross Appellants.

Before MAYER, Chief Judge, NEWMAN, MICHEL, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.

## O R D E R

A combined petition for panel rehearing and rehearing en banc having been filed by the Plaintiff-Appellant, and a response thereto having been invited by the court and filed by the Defendants-Cross Appellants, and the petition for rehearing having been referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc having been referred to the circuit judges who are in regular active service, and a poll having been taken

IT IS ORDERED THAT:

(1)  the petition for rehearing is denied;

(2)  the petition to rehear the appeal en banc is granted;

(3)  the judgment of the court entered on April 8, 2004, is vacated, and the opinion of the court accompanying the judgment, reported at 363 F.3d 1207 (Fed. Cir. 2004), is withdrawn.

This court has determined to hear this case en banc in order to resolve issues concerning the construction of patent claims raised by the now-vacated panel majority and dissenting opinions. The parties are invited to submit additional briefs directed to these issues, with respect particularly to the following questions:

1. Is the public notice function of patent claims better served by referencing primarily to technical and general purpose dictionaries and similar sources to interpret a claim term or by looking primarily to the patentee's use of the term in the specification? If both sources are to be consulted, in what order?

2. If dictionaries should serve as the primary source for claim interpretation, should the specification limit the full scope of claim language (as defined by the dictionaries) only when the patentee has acted as his own lexicographer or when the specification reflects a clear disclaimer of claim scope? If so, what language in the specification will satisfy those conditions? What use should be made of general as opposed to technical dictionaries? How does the concept of ordinary meaning apply if there are multiple dictionary definitions of the same term? If the dictionary provides multiple potentially applicable definitions for a term, is it appropriate to look to the specification to determine what definition or definitions should apply?

3. If the primary source for claim construction should be the specification, what use should be made of dictionaries? Should the range of the ordinary meaning of claim language be limited to the scope of the invention disclosed in the specification, for example, when only a single embodiment is disclosed and no other indications of breadth are disclosed?

4. Instead of viewing the claim construction methodologies in the majority and dissent of the now-vacated panel decision as alternative, conflicting approaches, should the two approaches be treated as complementary methodologies such that there is a dual restriction on claim scope, and a patentee must satisfy both limiting methodologies in order to establish the claim coverage it seeks?

5. When, if ever, should claim language be narrowly construed for the sole purpose of avoiding invalidity under, e.g., 35 U.S.C. §§ 102, 103 and 112?

6. What role should prosecution history and expert testimony by one of ordinary skill in the art play in determining the meaning of the disputed claim terms?

7. Consistent with the Supreme Court's decision in Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), and our en banc decision in Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448 (Fed. Cir. 1998), is it appropriate for this court to accord any deference to any aspect of trial court claim construction rulings? If so, on what aspects, in what circumstances, and to what extent?

This case will be heard en banc on the basis of the briefs already filed and any additional briefs addressing the questions set forth above. An original and thirty copies of all additional briefs shall be filed, and two copies served on opposing counsel. Such additional briefs shall be filed simultaneously by the parties, sixty days from the date of this Order, and shall not exceed 7,000 words in length.

Amicus curiae briefs may be filed by bar associations, trade or industry associations, government entities, and other interested parties. In particular, the United States Patent and Trademark Office is invited to submit an amicus curiae brief. Amicus briefs shall be limited to 5,000 words, and shall be filed within sixty days from the date

of this Order.  Amicus briefs shall comply with Fed. R. App. P. 29 and Federal Circuit

Rule 29.  In order to reduce the number of redundant briefs, the court requests that,

whenever possible, amicus participants advocating similar positions file a joint brief.

Both the parties' briefs and the amicus briefs shall be limited to the issue of claim

construction, and shall not address the issue of whether the plaintiff-appellant's trade

secret misappropriation claim was barred by the statute of limitations.

Oral argument will be scheduled by a later order.

RADER, Circuit Judge, concurs in a separate opinion.

MAYER, Chief Judge, dissents in a separate opinion.

FOR THE COURT,

July 21, 2004                                      Jan Horbaly
_____                        _____
          Date                                         Jan Horbaly
                                                       Clerk

# United States Court of Appeals for the Federal Circuit

03-1269,-1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendant-Cross Appellants.

RADER, Circuit Judge, concurring in this court's order to rehear the appeal en banc.

To provide completeness in the en banc proceeding, this court should receive commentary on the following question as well:

Is claim construction amenable to resolution by resort to strictly algorithmic rules, e.g., specification first, dictionaries first, etc.? Or is claim construction better achieved by using the order or tools relevant in each case to discern the meaning of terms according to the understanding of one of ordinary skill in the art at the time of the invention, thus entrusting trial courts to interpret claims as a contract or statute?

# United States Court of Appeals for the Federal Circuit

03-1269, -1286

EDWARD H. PHILLIPS,

Plaintiff-Appellant,

v.

AWH CORPORATION,
HOPEMAN BROTHERS, INC., and LOFTON CORPORATION,

Defendants-Cross Appellants.

MAYER, <u>Chief Judge</u>, dissenting.

Until the court is willing to reconsider its holdings in <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995) (en banc), <u>aff'd on other grounds</u>, 517 U.S. 370 (1996), and <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448 (Fed. Cir. 1998) (en banc), that claim construction is a pure question of law subject to <u>de novo</u> review in this court, any attempt to refine the process is futile. Nearly a decade of confusion has resulted from the fiction that claim construction is a matter of law, when it is obvious that it depends on underlying factual determinations which, like all factual questions if disputed, are the province of the trial court, reviewable on appeal for clear error. To pretend otherwise inspires cynicism. Therefore, and because I am convinced that shuffling our current precedent merely continues a charade, I dissent from the <u>en banc</u> order.