IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEKALB GENETIC CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 05-355 (SLR) |
| ) | |
| SYNGENTA SEEDS, INC., SYNGENTA ) | |
| BIOTECHNOLOGY, INC., GARWOOD SEED ) | |
| CO., GOLDEN HARVEST SEEDS, INC., ) | |
| GOLDEN SEED COMPANY, LLC, JC ) | |
| ROBINSON SEEDS, INC., SOMMER BROS. ) | |
| SEED COMPANY, and THORP SEED CO., ) | |
| ) | |
| Defendants. ) | |

**NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANTS**

TO:   DEFENDANTS AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that Plaintiff DEKALB Genetics Corporation ("DEKALB") will take the deposition of defendants Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc. ("Defendants") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  The deposition will take place at FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.'s offices at 901 New York Ave, N.W., Washington, D.C. 20001-4413; Syngenta Seeds, Inc.'s offices at 7500 Olson Memorial Highway, Golden Valley, MN  55427; Syngenta Biotechnology Inc.'s offices at 3054 Cornwallis Road Research Triangle Park, NC 27709-2257; and/or at another mutually agreed upon location.  The deposition will commence on July 21, 2005 at 9:00 a.m. and will continue thereafter day to day until completed.  The subject matter of the deposition is set forth in Attachment A.

Defendants are required to designate, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, one or more officers, directors, employees or other persons who will testify on its behalf regarding the subject matter listed in Attachment A. Defendants are requested to provide DEKALB's counsel, as soon as reasonably possible, but no later than July 13, 2005, a written designation of the name(s) and position(s) of the agent(s) or other person(s) who consent to testify on behalf of Defendants and, for each person designated, the matters set forth in the attached Schedule A as to which he or she will testify.

The deposition will be taken before a qualified Notary Public or before some other officer authorized by law to administer oaths. The deposition will be recorded by audio, video and stenographic means.

|  |  |
|---|---|
| OF COUNSEL:<br><br>John F. Lynch<br>Thomas A. Miller<br>Susan K. Knoll<br>Scott W. Clark<br>HOWREY LLP<br>750 Bering Drive<br>Houston, TX 77057<br>Tel: (713) 787-1400<br><br>Dated: July 6, 2005 | POTTER ANDERSON & CORROON LLP<br><br>By: _____<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson<br><br>*Attorneys for Plaintiff*<br>*DeKalb Genetic Corporation* |

689229 / 28128

# **ATTACHMENT A**

### Definitions

1. DEKALB. For purposes of this notice, the term "DEKALB" means and includes plaintiffs DEKALB Genetics Corporation, and any subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents, partners, and fully or partially owned entities of DEKALB and any other entities or persons acting or purporting to act for or on behalf of the foregoing or who are subject to the direction and control of the foregoing, including, without limitation, any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators and consultants of the foregoing.

2. DEFENDANTS. For purposes of this notice, the terms "Defendants," and "you" or "your" shall mean Syngenta Seeds, Inc., Syngenta Biotechnology, Inc., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc., collectively and individually, as well as corporate parents, subsidiaries, predecessors, affiliates, successors, divisions, departments, other organizational or operational units, officers, directors, employees, agents, servants, representatives, and attorneys.

3. BAYER. For purposes of this notice, the term "Bayer" shall mean Bayer CropScience, as well as corporate parents, subsidiaries, predecessors, affiliates, successors, divisions, departments, other organizational or operational units, officers, directors, employees, agents, servants, representatives, and attorneys.

4. THE GOLDEN HARVEST COMPANIES. For purpose of this notice, the term "the Golden Harvest Companies" shall mean the Golden Harvest group of companies referred to in Syngenta's June 25, 2004 press release [attached as Attachment B], including but not limited

to Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc., collectively and individually, as well as divisions, departments, other organizational or operational units, officers, directors, employees, agents, servants, representatives, and attorneys.

5. PERSON. For purposes of this notice, the term "person" is defined as any natural person or business, corporation, proprietorship, partnership, association, joint venture, or any other legal or governmental entity.

6. IDENTIFY. For purposes of this notice, the terms "identify" and "identity" when used in reference to a "person" (as defined above) means to identify the person as fully as possible in order to permit further contact of and discovery relative to the person, such as providing, for example: the person's name; the person's present or last known address and telephone number; the nature of the person (such as whether the person is a corporation, etc.), and, if an individual, the person's place of employment and position. The terms "identify" and "identity" when used in reference to a "document" (as defined above) means to specify the document in sufficient detail to permit Plaintiffs to locate, identify and retrieve the record, which may include, but is not necessarily limited to, stating: its date, or if it bears no date, the date when it was prepared; the name and address of the person or persons who prepared it; and the present location of the document and the name, address, and telephone number of its custodian.

7. DESCRIBE. For purposes of this notice, the term "describe" means to give a full, frank and accurate account of whatever is the subject of the inquiry.

8. GLYPHOSATE RESISTANT. For purposes of this notice, the term "glyphosate resistant" shall mean genetically modified with the intent to be glyphosate resistant, regardless of the level of glyphosate resistance or tolerance observed.

9. GLYPHOSATE RESISTANT GA21 *ZEA MAYS* PLANTS. For purposes of this notice, the term "glyphosate resistant GA21 *Zea mays* plants" shall mean glyphosate resistant GA21 *Zea mays* plants, plant cells, seeds, plant lines, or any other corn products purported to have a glyphosate resistance trait from the GA21 event.

10. GLYPHOSATE RESISTANT NON-GA21 *ZEA MAYS* PLANTS. For purposes of this notice, the term "glyphosate resistant non-GA21 *Zea mays* plants" shall mean glyphosate resistant *Zea mays* plants, plant cells, seeds, plant lines, or any other corn products purported to have a glyphosate resistance trait from an event other than the GA21 event.

11. DERIVATIVE. For purposes of this notice, the term "derivative" or "derivatives" shall refer to seed obtained from, bred from, having in its lineage, or having as its origin or parentage, a particular identified source.

12. THE '880 PATENT. For purposes of this notice, the term "the '880 patent" shall mean U.S. Patent No. 5,538,880.

13. THE '863 PATENT. For purposes of this notice, the term "the '863 patent" shall mean U.S. Patent No. 6,013,863.

14. GOLDEN HARVEST SEEDS, INC. D & B REPORT. For purposes of this notice, the term "Golden Harvest Seeds, Inc. D & B report" shall mean is the Dunn & Bradstreet report for Golden Harvest Seeds Inc., which is attached as Attachment C.

15. For purposes of this notice, "relate to" or "relating to" shall mean in any way, directly or indirectly, concerning, regarding, pertaining to, discussing, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying, amending, confirming, endorsing, representing,

supporting, qualifying, terminating, revoking, canceling, contradicting or negating, in whole or in part.

16. For purposes of this notice, references to "and" and "or" shall be interpreted in their broadest sense and shall include both the disjunctive and the conjunctive.

17. For purposes of this notice, terms not specifically defined shall be given their ordinary meaning. Should Defendants be unable to understand the meaning of any term, Defendants are invited to immediately seek clarification through Plaintiffs' counsel.

## Topics for Deposition

1. Defendants' acquisition and use of GA21 *Zea mays* or progeny or derivatives thereof from any source, including, but not limited to Bayer, and including, but not limited to the glyphosate resistant GA21 *Zea mays* seed identified by Defendants in response to DEKALB's Interrogatory No. 1, including:

    (a) the identity of each GA21 *Zea mays* inbred and/or hybrid seed acquired, including its Material ID No. and "TT code";

    (b) the source of each GA21 *Zea mays* inbred and/or hybrid seed acquired;

    (c) to the extent applicable, the lineage or "chain of custody" of each GA21 *Zea mays* inbred and/or hybrid seed acquired, as traced back to DEKALB and/or Monsanto;

    (d) when each GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (e) by whom, and from whom, each GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (f) where each GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (g) how and where Defendants have used or intend to use each acquired GA21 *Zea mays* inbred and/or hybrid seed to develop glyphosate resistant corn seed and corn products;

    (h) any agreements relating to Defendants' acquisition and use of GA21 *Zea mays* inbred and/or hybrid seed; and

    (i) the identity and content of all documents related to each GA21 *Zea mays* inbred and/or hybrid seed acquired.

    (j) all of the above information regarding any "new source" or "new donor" of GA21, for example, as referred to in SYN020672 and SYN084613.

2. Defendants' acquisition and use of non-GA21 *Zea mays* or progeny or derivatives thereof from any source, including, but not limited to Bayer, and including, but not limited to the glyphosate resistant non-GA21 *Zea mays* seed identified by Defendants in response to DEKALB's Interrogatory No. 1, including:

    (a) the identity of each non-GA21 *Zea mays* inbred and/or hybrid seed acquired, including its Material ID No. and "TT code";

5

    (b)    the source of each non-GA21 *Zea mays* inbred and/or hybrid seed acquired;

    (c)    to the extent applicable, the lineage or "chain of custody" of each non-GA21 *Zea mays* inbred and/or hybrid seed acquired, as traced back to DEKALB and/or Monsanto;

    (d)    when each non-GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (e)    by whom, and from whom, each non-GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (f)    where each GA21 *Zea mays* inbred and/or hybrid seed was acquired;

    (g)    how and where Defendants have used or intend to use each acquired non-GA21 *Zea mays* inbred and/or hybrid seed to develop glyphosate resistant corn seed and corn products;

    (h)    any agreements relating to Defendants' acquisition and use of non-GA21 *Zea mays* inbred and/or hybrid seed; and

    (i)    the identity and content of all documents related to each non-GA21 *Zea mays* inbred and/or hybrid seed acquired.

3.    Defendants' conversion of germplasm obtained from other companies to include the GA21 event, including:

    (a)    the identity of each company for whom Defendants have initiated or performed a conversion of germplasm to include the GA21 event;

    (b)    the identity of each germplasm line converted, including the Material ID No. and "TT code";

    (c)    the date on which the germplasm was received by Defendants for such conversion;

    (d)    the Defendant company conducting such conversion;

    (e)    the persons conducting such conversion;

    (f)    the date such conversion started;

    (g)    the stage of the conversion to date;

    (h)    the date on which each such converted line was returned to the company from which the germplasm was originally obtained (with an identification of the person at that company to whom the germplasm was shipped, delivered or "handed off");

(i) estimate the volume of GA21 seed produced for each line so converted;

(j) the identity of all persons knowledgeable about such conversion; and

(k) the identity and content of all documents related to such conversion.

4. Defendants' conversion of germplasm obtained from other companies to include a glyphosate resistant non-GA21 event, including:

(a) the identity of each company for whom Defendants have initiated or performed a conversion of germplasm to include a glyphosate resistant non-GA21 event;

(b) the identity of each germplasm line converted, including the Material ID No. and "TT code";

(c) the date on which the germplasm was received by Defendants for such conversion;

(d) the Defendant company conducting such conversion;

(e) the persons conducting such conversion;

(f) the date such conversion started;

(g) the stage of the conversion to date;

(h) the date on which each such converted line was returned to the company from which the germplasm was originally obtained (with an identification of the person at that company to whom the germplasm was shipped, delivered or "handed off");

(i) estimate the volume of glyphosate resistant non-GA21 seed produced for each line so converted;

(j) the identity of all persons knowledgeable about such conversion; and

(k) the identity and content of all documents related to such conversion.

5. The indemnification of Defendants by Bayer for patent infringement relating to GA21 *Zea mays* glyphosate resistant plants or for the acquisition and/or use of GA21 *Zea mays* inbred and/or hybrid seed:

(a) the identity of all persons knowledgeable about such indemnification and any related agreement(s);

7

(b)     the identity and content of all documents related to such indemnification and any related agreement(s).

6. Any and all rights conferred to Defendants by Bayer relating to the GA21 event, including, but not limited to, any patent rights, trade secret rights and/or any other rights to germplasm containing the GA21 event.

7. The content of Defendants' responses to DEKALB Interrogatory No. 1.

8. The content of Defendants' responses to DEKALB Interrogatory No. 2.

9. The content of Defendants' responses to DEKALB Interrogatory No. 13, including, but not limited to:

(a)     whether the party listed as "acquiring or using the GA21 inbred or hybrid line" merely acquired the GA21 inbred or hybrid line, or acquired and used the GA21 inbred or hybrid line, and the types of uses, including, without limitation, uses in the production of seed for regulatory purposes;

(b)     the identity of the specific GA21 inbred involved in hybrid combination, when the source of the GA21 is listed as an inbred involved in hybrid combination (third column of the first table);

(c)     the identity of alternate names of the lines identified, to the extent that such hybrids and/or inbreds have multiple designations;

(d)     the identity of the specific Golden Harvest Company referred (first and second tables), i.e., Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., Sommer Bros. Seed Company, Thorp Seed Co., and/or JC Robinson Seeds, Inc.;

(e)     an explanation as to why the GA21 inbreds denominated SGI943 and RR753 in the first table are not included in the second table; and

(f)     an explanation as to why the GA21 inbred lines denominated CR24 and LH185 in the second table are not included in the first table.

10. The content of Defendants' responses to DEKALB Interrogatory No. 14, including, but not limited to:

(a)     the identification of persons with knowledge of the obtention of the germplasm containing the GA21 event and its introgression into the germplasm of the identified hybrid;

8

 (b) the circumstances surrounding the obtention and introgression, including the receipt of the germplasm, the person who received such germplasm, relevant dates, and persons involved in the introgression;

 (c) the identity and content of documents related to such work;

 (d) the identity and content of the underlying documents used to prepare Defendants' answer to this interrogatory;

 (e) the identity and content of nursery records for the three products identified in Defendants' response;

 (f) the identity and content of documents relating to advertising and promotional material associated with the hybrid lines;

 (g) the identity of persons with knowledge regarding the advertising and promotional material associated with the hybrid lines.

11. The identity of Golden Harvest Seeds, Inc., from January 1, 2004 to the present, including:

 (a) the corporate structure(s) of Golden Harvest Seeds, Inc., and the Golden Harvest Companies;

 (b) the entities that comprise the Golden Harvest Companies;

 (c) the identity of any and all ownership interests in Golden Harvest Seeds, Inc. and the Golden Harvest Companies;

 (c) any change in the relationship of Golden Harvest Seeds, Inc to the Golden Harvest Companies subsequent to the June 25, 2004 Syngenta press release attached as Attachment B;

 (d) the nature of the control, direction and management of Golden Harvest Seeds, Inc., and the Golden Harvest Companies, including, but not limited to:

  (i) the identity of the officers, directors, executives and board members of Golden Harvest Seeds, Inc. and the Golden Harvest Companies;

  (ii) the location of all offices or other locations where business is regularly conducted by or for Golden Harvest Seeds, Inc. and the Golden Harvest Companies;

 (e) whether any corporate functions, including but not limited to administrative, manufacturing and research development functions, are or were performed by Golden Harvest Seeds, Inc. on behalf of the Golden Harvest Companies or by any of the Golden Harvest Companies on behalf of Golden Harvest Seeds, Inc.;

(f) the extent of the involvement of owners, officers, managing agents, employees, directors or board members of Golden Harvest Seeds, Inc. in the governance, management or operation of the Golden Harvest Companies or the extent of the involvement of owners, officers, managing agents, employees, directors or board members of the Golden Harvest Companies in the governance, management or operation of Golden Harvest Seeds, Inc.;

(g) with respect to the Golden Harvest Seeds, Inc. D & B report, an explanation of and the factual basis for:

  (i) the statement that the Golden Harvest Companies "are related through common ownership of and financial interest in Golden Harvest Seeds, Inc.";

  (ii) the statement that Golden Harvest Seeds, Inc. "[o]perates as a coordination center for research, development, quality control, advertising and marketing of hybrid corn ....";

  (iii) the representation that Golden Harvest Seeds, Inc. maintains its headquarters in Bloomington, IL; and

  (iv) the representation in the Golden Harvest Seeds, Inc. D & B report that Golden Harvest Seeds, Inc. has five (5) employees at its headquarters in Bloomington, IL.

12. The current status of the foreign regulatory submissions, applications and/or approvals for Defendants' glyphosate resistant GA21 *Zea mays* plants, including, but not limited to, the European Union, Japan, Argentina and Brazil.

13. Defendants' efforts to independently develop glyphosate resistant *Zea mays* plants, including, but not limited to, Defendants' TT8500 event, including:

(a) the status of such efforts;

(b) the related research, development, field trials, growing, testing, evaluation, and breeding.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on July 6, 2005, the attached document was hand-delivered to the following person(s) and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, L.L.P.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

I hereby certify that on July 6, 2005, I have Federal Expressed the foregoing document(s) to the following non-registered participants:

Michael J. Flibbert
Don O. Burley
Howard W. Levine
Finnegan, Henderson, Farabow,
   Garrett & Dunner, L.L.P.
901 New York Ave., NW
Washington, DC 20001-4413

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

687937